# **EXHIBIT F**

Dukes v. Sai Fort Myers B, LLC, Not Reported in F.Supp.3d (2015)

2015 WL 3650804
Only the Westlaw citation is currently available.
United States District Court, M.D. Florida,
Fort Myers Division.

David DUKES, Jr., Plaintiff,
v.
SAI FORT MYERS B, LLC, Defendant.

No. 2:14–cv–287–FtM–38DNF.
|
Signed June 11, 2015.

**Attorneys and Law Firms**

Frank Michael Malatesta, Malatesta Law Office, Venice, FL, for Plaintiff.

Edmund J. McKenna, Ogletree Deakins Nash Smoak & Stewart, P.C., Tampa, FL, for Defendant.

**ORDER**[1]

SHERI POLSTER CHAPPELL, District Judge.

**\*1** This matter comes before the Court on Defendant SAI Fort Myers B, LLC's Motion to Dismiss and Compel Arbitration (*Doc.# 19* ) filed on May 11, 2015. Although given an opportunity, Plaintiff David Dukes, Jr. has not responded to Defendant's motion, and the time to do so has expired. Thus, this matter is ripe for review.

**BACKGROUND**

This action arises from Plaintiff's former employment with Sonic BMW, a car dealership owned by Defendant in Lee County, Florida. (*Doc. # 1 at ¶ 15* ). Plaintiff started as a sales manager on June 1, 2009, and was later promoted to pre-owned sales manager. (*Id. at ¶¶ 13, 15–16* ). Despite the promotion, Plaintiff alleges his former manager, Paul Cullinan, regarded him with "extreme animus" and subjected him to adverse employment actions because of his age (fifty-three (53)), race (African–American), and color (black). (*Id. at ¶¶ 33–34* ). Plaintiff claims that he observed younger employees being hired and grew concerned that Cullinan associated him with "the old way of doing things" and was targeting him for dismissal. (*Id. at ¶ 35* ).

On November 10, 2011, Plaintiff reported Cullinan's alleged discriminatory behavior to upper management. (*Id. at ¶¶ 37–39* ). The following week, Plaintiff met with the general store manager, the human resources representative, and Cullinan to discuss his complaint. (*Id. at ¶¶ 40–44* ). To Plaintiff's disappointment, Defendant allegedly took no remedial action against Cullinan. (*Doc. # 1 at ¶ 45* ).

Following the meeting, Cullinan allegedly displayed a hostile demeanor toward Plaintiff, held him to unreasonable work expectations, changed his job duties, and disciplined him for petty offenses. (*Id. at ¶¶ 46, 52–62* ). Over the next month, Plaintiff reported Cullinan's alleged retaliatory behavior on several occasions. (*Id. at ¶¶ 47–52* ). Defendant's investigation into Plaintiff's complaints was closed without any remedial action taken. (*Id. at ¶ 68* ). Defendant then discharged Plaintiff on January 19, 2012, supposedly because of "staff and customer complaints." (*Doc. # 1 at ¶¶ 63–67* ).

Sometime thereafter, Plaintiff filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC"). (*Id. at ¶ 3* ). According to the EEOC's Dismissal and Notice of Rights letter dated February 26, 2014, the agency was unable to find any violations of the ADEA and Title VII based on the information in his charge. (*Doc.# 1–1* ).

Armed with the EEOC's letter, Plaintiff commenced this action on May 27, 2014. (*Doc.# 1* ). He asserts discrimination and retaliation claims under the Age Discrimination in Employment Act, as amended ("ADEA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), and the Civil Rights Act of 1991 ("CRA"). (*Id. at 12–14* ). In response, Defendant moves to compel arbitration and dismiss the Complaint. (*Doc.# 19* ).

**DISCUSSION**

**\*2** Under the Federal Arbitration Act ("FAA"), any party aggrieved by the failure or refusal of another to arbitrate

under a written agreement may petition the court to direct arbitration. *9 U.S.C. § 4*. When deciding a motion to compel arbitration, courts consider three factors: "(1) whether a valid written agreement to arbitrate exists, (2) whether an arbitrable issue exists, and (3) whether the right to arbitration has been waived." *Zahm v. OneWest Bank, N.A.*, No. 8:15–cv–765–T–30TBM, 2015 WL 2095644, at *1 (M.D.Fla. May 5, 2015) (citing *Cuningham Hamilton Quiter, P.A., 776 So.2d 940, 942 (Fla. 3d DCA 2000)* ). In addition, Supreme Court precedent establishes a "healthy regard for the federal policy favoring arbitration," resolving any doubts as to the scope of arbitrable issues in favor of arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)*.

"The FAA reflects the fundamental principle that arbitration is a matter of contract." *Rent–A–Ctr., W., Inc. v. Jackson, 561 U.S. 63, 67, 130 S.Ct. 2772, 177 L.Ed.2d 403 (2010)* (citations omitted). Section 2 of the FAA states,

> [a] written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

*9 U.S.C. § 2*; cf. *Wash v. Mac Acquisition of Delaware, LLC*, No. 6:14–CV–1424, 2014 WL 5173504, at *2 (M.D.Fla. Oct.14, 2014) (explaining the FAA "is the substantive law controlling the validity and enforcement of arbitration agreements" (citation omitted)). "The FAA thereby places arbitration agreements "on an equal footing with other contracts ... and requires courts to enforce them according to their terms[.]" *Rent–A–Ctr., W., 561 U.S. at 67–68* (internal citations omitted). "Like other contracts, arbitration agreements are still subject to invalidation by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.' " *Id. at 68* (quoting *Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996)* ). "State law governs whether an arbitration agreement is enforceable." *Delano v. Mastec, Inc.*, No. 8:10–cv–320–T–27–MAP, 2010 WL 4809081, at *2 (M.D.Fla. Nov.18, 2010) (citation omitted). Here, Florida law applies.

During the course of Plaintiff's employment, he signed six (6) binding arbitration agreements with "BMW of Fort Myers," which is a fictitious name of Defendant.[2] (Doc. # 19 at 3; Doc. # 20–2; Doc. # 20–3 ). The most recent of which he signed on January 1, 2012. (Doc.# 20–3 ). It reads, in pertinent part, that,

> [e]mployee and the Company, on behalf of their affiliates, successors, heirs, and assigns, agree that all disputes and claims between them, including those relating to Employee's employment with the Company and any separation therefrom, and including claims by Employee against the Company's parent, subsidiaries, affiliates, directors, employees, or agents, shall be determined exclusively by final and binding arbitration before a single, neutral arbitrator as described herein, and that judgment upon the arbitrator's award may be entered in any court of competent jurisdiction. Claims subject to arbitration under this Agreement include without limitation claims for discrimination, harassment, or retaliation (including without limitation such claims based upon Title VII of the Civil Rights Act of 1964, ... Age Discrimination in Employment Act[.]

**\*3** (*Doc.# 20–3* ).

Upon consideration of the above arbitration provision and in light of the relevant law, the Court will compel arbitration in this case. Since Plaintiff does not dispute the making, content, validity, or enforceability of the agreement, the Court finds the parties entered into a valid arbitration agreement. *See Lemmon v. Lincoln Prop. Co., 307 F.Supp.2d 1352, 1355 (M.D.Fla.2004)* (holding an arbitration agreement, once entered into, is a binding agreement that neither party can avoid). In addition, the arbitration agreement at issue governs Plaintiff's former employment with Defendant and specifically lists claims under the ADEA and Title VII as arbitrable matters. (*Doc.# 20–3* ). Thus, Plaintiff's claims fall squarely within the scope of the arbitration agreement. Finally, neither party has waived the right to arbitrate. *See In re Checking Account Overdraft Litig., 754 F.3d 1290, 1294 (11th Cir.2014)* ("Waiver occurs when both: (1) the party seeking arbitration substantially participates in litigation to a point inconsistent with an intent to arbitrate; and (2) this participation results in prejudice to the opposing party.").

In conclusion, the Court finds the parties entered a valid, enforceable arbitration agreement that covers the dispute in this case.

Accordingly, it is now

**ORDERED:**

1. Defendant SAI Fort Myers B, LLC's Motion to Dismiss and Compel Arbitration (*Doc.# 19* ) is **GRANTED.** The parties shall proceed to **arbitration.**

2. All proceedings in this action are **STAYED** until notification by the parties that arbitration has been

completed and that the stay is due to be lifted, or the case is due to be dismissed. The parties shall notify the Court of such matters within **seven (7) days** of the conclusion of the arbitration proceedings.

3. The parties are **DIRECTED** to file a joint written status report regarding the status of arbitration on or before **September 9, 2015,** and every ninety (90) days until the conclusion of the arbitration proceedings.

4. The Clerk is **DIRECTED** to add a stay flag. **DONE** and **ORDERED.**

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 3650804

Footnotes

1   Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other Web sites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the Court has no agreements with any of these third parties or their Web sites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

2   *See* Fla. Dep't Of State, Div. of Corps., http:// www.sunbiz.org/script s/ficidet.exe?action=DETREG & docnum=G09007900115 & rdocnum=G09007900115 (last visited June 11, 2015).

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.