# **<u>EXHIBIT H</u>**

Case 1:25-cv-00002-JPW   Document 5-7   Filed 02/04/25   Page 2 of 6

Hine v. LendingClub Corporation, Not Reported in Fed. Supp. (2022)

2022 WL 16950409
Only the Westlaw citation is currently available.
United States District Court, W.D. Pennsylvania, Pittsburgh.

Nicole HINE, Individually and on Behalf of All Others Similarly Situated, Plaintiff,
v.
LENDINGCLUB CORPORATION, Defendant,

2:22-CV-00362-CRE
|
Signed November 15, 2022

**Attorneys and Law Firms**

Kevin Abramowicz, East End Trial Group, LLC, Pittsburgh, PA, for Plaintiff.

Justin G. Weber, Troutman Pepper Hamilton Sanders LLP, Harrisburg, PA, Victoria D. Summerfield, Troutman Pepper Hamilton Sanders LLP, Pittsburgh, PA, for Defendant.

**MEMORANDUM OPINION**[1]

CYNTHIA REED EDDY, United States Magistrate Judge.

### I. INTRODUCTION

*1 This civil action was initiated in the Court of Common Pleas of Westmoreland County, Pennsylvania and removed to this Court by Defendant LendingClub Corporation ("LendingClub"). In this action, Plaintiff Nicole Hine alleges that Lending Club violated the Pennsylvania Loan Interest and Protection Law, 41 Pa. Stat. Ann. § 101 et seq. ("LIPL"), the Pennsylvania Consumer Discount Company Act, 7 Pa. Stat. Ann. § 6201, et seq. ("CDCA"), and the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. Ann. § 201 et seq., when it allegedly charged an impermissibly high simple annual interest rate on Plaintiff's loan. Plaintiff seeks class treatment of her claims.

Presently before the Court is a motion to compel arbitration by LendingClub pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 4). The motion is fully briefed and ripe for consideration. (ECF Nos. 5, 10, 12, 12, 14, 18). For the reasons that follow, LendingClub's motion to compel arbitration is denied without prejudice and LendingClub may refile its motion upon the completion of limited discovery related to the arbitrability of Plaintiff Hine's claims.

### II. BACKGROUND

**LendingClub's Operations**

LendingClub operates an online lending platform through which it accepts loan applications. Compl. (ECF No. 1-1) at ¶¶ 16-17. After LendingClub evaluates a consumer's creditworthiness and makes an offer, it requests WebBank to issue the loan to the consumer. *Id.* at ¶ 18. Thereafter, WebBank sells the loan to LendingClub or one of its non-bank entities that LendingClub controls. *Id.* at ¶ 19. The loans issued through LendingClub's online platform are simple interest loans and most if not all the loans are high interest, with interest rates reaching up to 36% simple interest per year. *Id.* at ¶¶ 20-21. The loans also include an origination fee, which is generally a percentage of the loan's principal balance. *Id.* at ¶ 22. Origination fees are often in the hundreds to thousands of dollars. *Id.* at ¶ 23. When consumers default on a loan, LendingClub sells the loan to a debt buyer and by doing so, Plaintiff alleges that LendingClub can turn a profit even when consumers are unable to pay the high interest rates and origination fees that LendingClub charges. *Id.* at ¶¶ 24-25. When LendingClub sells a loan, it sells all rights, title and interest in and to the loans to the debt purchaser. *Id.* at ¶ 26.

**Plaintiff Nicole Hine's Lending Club Loan**

In June 2015, LendingClub issued a personal loan to Plaintiff Hine that was used for personal, family and/or household purposes. *Id.* at ¶¶ 27-28. The loan was issued in the amount of $16,000, but Plaintiff Hine only received $15,200.00 of actual money because LendingClub

Case 1:25-cv-00002-JPW   Document 5-7   Filed 02/04/25   Page 3 of 6

Hine v. LendingClub Corporation, Not Reported in Fed. Supp. (2022)

charged and deducted an $800.00 "origination fee." *Id.* at ¶¶ 29-30. Plaintiff Hine was also charged interest on the loan and the interest and fees were charged at an annual percentage rate of close to 19%. *Id.* at ¶¶ 31-32. Plaintiff Hine made payments on the loan, and at a certain point the loan was charged-off. *Id.* at ¶¶ 33-34. After the loan was charged-off, LendingClub allegedly sold all rights and interests in the loan to a debt buyer, called Oliphant Financial, LLC ("Oliphant"). *Id.* at ¶ 35. After buying the loan, Oliphant attempted to collect the loan by suing Plaintiff Hine in Westmoreland County Court of Common Pleas. *Id.* at ¶ 36. Plaintiff Hine hired an attorney to defend the lawsuit and eventually Oliphant dismissed its case with prejudice. *Id.* at ¶¶ 36-37.

**\*2 Plaintiff Hine's Claims against LendingClub**

Plaintiff Hine contends that LendingClub and its non-bank designees are non-banks without CDCA licenses and as such, it is not authorized under any law to charge interest above the LIPL's 6% interest rate cap on any loan for which LendingClub seeks to charge interest on behalf of itself or its non-bank designees. *Id.* at ¶¶ 39-40. Plaintiff Hine maintains that the CDCA prohibits LendingClub from charging, collecting, contracting for, or receiving interest and fees that aggregate in excess of 6% simple interest per year, yet it routinely issues loans with interest and fees that aggregate in excess of 6% simple interest per year and it charges, collects, contracts for, or received such interest and fees from Pennsylvania consumers. *Id.* at ¶¶ 41-42. Plaintiff alleges that LendingClub cannot charge, collect, contract for, or receive most of the interest and fees it charges, collects, contracts for, or received because LendingClub and its non-bank designees do not have the license to do so and that LendingClub partners with WebBank in an attempt to circumvent the CDCA and the LIPL. *Id.* at ¶¶ 43-44. Plaintiff maintains that although banks like WebBank may lawfully charge interest and fees at the rates and amounts charges on LendingClub's loans, LendingClub cannot take advantage of the rights granted to banks once a loan is sold, WebBank is not the true lender of the loans at issue because the loans are not made by a bank and the LendingClub/WebBank partnership is an attempt to evade Pennsylvania law. *Id.* at ¶¶ 45-47. Plaintiff Hine alleges that these actions make loans more expensive, increase the risk of default and make the consequences of default much worse and by example, she paid more than she would have paid had LendingClub charged interest and fees at the lawful rates and amounts, her monthly payments would have been much less making it easier for her to repay the loan and decreasing the chance of her default. *Id.* at ¶¶ 48-55.

Plaintiff Hine seeks class treatment of her claims and seeks to certify the following class: "All persons who obtained a loan from LendingClub with a Westmoreland County address and paid interest and fees that aggregated in excess of 6% simple interest per year within the applicable statute of limitations." *Id.* at ¶ 58.

Plaintiff Hine asserts the following claims against LendingClub:

1. A violation of the LIPL (Count I);

2. A violation of the CDCA (Count II); and

3. A violation of the UTPCPL (Count III).

LendingClub moves to compel arbitration of Plaintiff Hine's claims and argues that her loan is subject to an arbitration agreement. According to LendingClub, Plaintiff Hine applied for and obtained a loan from WebBank through LendingClub's website and to obtain this loan, she electronically signed a Borrower Membership Agreement by checking a box indicating her electronic signature and acceptance. Def's Br. (ECF No. 5 at 7). LendingClub asserts that these agreements are often referred to as "clickwrap" agreements which appear on an internet webpage and require that a user consent to any terms or conditions by clocking on a dialog box on the screen in order to proceed with the internet transaction. According to LendingClub, the clickwrap agreements included an arbitration agreement in which Plaintiff Hine agreed to binding arbitration for disputes "relating to ... the activities ... that involve, lead it, or result from" the agreement, loan, or relationship with LendingClub. *Id.* at 8. The Arbitration Agreement provides as follows:

> **\*3** 18. Arbitration
>
> a. Either party to this Agreement, or WBK [WebBank], may, at its sole election, require that the sole and exclusive forum and remedy for resolution of a Claim be final and binding arbitration pursuant to this section 18 (the "Arbitration Provision"), unless you opt out as provided in section 18(b) below. As used in this Arbitration Provision, "Claim" shall include any past, present, or future claim, dispute, or controversy involving you (or persons claiming through or connected with you), on the one hand, and us and/or WBK (or persons claiming through or connected with us and/or WBK), on the other hand, relating to or arising out of this Agreement, any Note, the Site, and/or the activities or relationships that involve, lead to, or result from any of the foregoing, including

Case 1:25-cv-00002-JPW   Document 5-7   Filed 02/04/25   Page 4 of 6

Hine v. LendingClub Corporation, Not Reported in Fed. Supp. (2022)

(except to the extent provided otherwise in the last sentence of section 18(f) below) the validity or enforceability of this Arbitration Provision, any part thereof, or the entire Agreement. Claims are subject to arbitration regardless of whether they arise from contract; tort (intentional or otherwise); a constitution, statute, common law, or principles of equity; or otherwise. Claims include matters arising as initial claims, counter-claims, cross-claims, third-part claims, or otherwise. The scope of this Arbitration Provision is to be given the broadest possible interpretation that is enforceable.

\* \* \*

f. ... NO ARBITRATION SHALL PROCEED ON A CLASS, REPRESENTATIVE, OR COLLECTIVE BASIS (INCLUDING AS A PRIVATE ATTORNEY GENERAL ON BEHALF OF OTHERS), EVEN IF THE CLAIM OR CLAIMS THAT ARE THE SUBJECT OF ARBITRATION HAD PREVIOUSLY BEEN ASSERTED (OR COULD HAVE BEEN ASSERTED) IN A COURT AS A CLASS REPRESENTATIVE, OR COLLECTIVE ACTION IN A COURT....

g. This Arbitration Provision is made pursuant to a transaction involving interstate commerce and shall be governed by and enforceable under the FAA....

h. This Arbitration Provision shall survive (i) suspension, termination, revocation, closure, or amendments to this Agreement and the relationship of the parties and/or WBK; (ii) the bankruptcy or insolvency of any party or other person; and (iii) any transfer of any loan or Note or any other promissory note(s) which you owe, or any amounts owed on such loans or notes, to any other person or entity. If any portion of this Arbitration Provision other than section 18(f) is deemed invalid or unenforceable, the remaining portions of this Arbitration Provision shall nevertheless remain valid and in force. If an arbitration is brought on a class, representative, or collective basis, and the limitations on such proceedings in section 18(f) are finally adjudicated pursuant to the last sentence of section 18(f) to be unenforceable, then no arbitration shall be had. In no event shall any invalidation be deemed to authorize an arbitrator to determine Claims or make awards beyond those authorized in this Arbitration Provision.

THE PARTIES ACKNOWLEDGE THAT THEY HAVE A RIGHT TO LITIGATE CLAIMS THROUGH A COURT BEFORE A JUDGE OR JURY, BUT WILL NOT HAVE THAT RIGHT IF ANY PARTY ELECTS ARBITRATION PURSUANT TO ARBITRATION PROVISION. THE PARTIES HEREBY KNOWINGLY AND VOLUNTARILY WAIVE THEIR RIGHTS TO LITIGATE SUCH CLAIMS IN A COURT BEFORE A JUDGE OR JURY UPON ELECTION OF ARBITRATION BY ANY PARTY.

**\*4** Borrower Membership Agreement at ¶ 18 (ECF No. 5-1 at 11-12).

The Borrower Membership Agreement further provided that Plaintiff Hine had thirty days to opt out of the Arbitration Agreement, but according to LendingClub, Plaintiff Hine did not do so. The Arbitration Agreement also expressly precluded arbitration of a class. Def's Br. (ECF No. 5 at 9).

### III. STANDARD OF REVIEW

*a. Motion to Compel Arbitration*

While LendingClub argues that the standard set forth in Federal Rule of Civil Procedure 12(b)(6) should be applied to decide this motion to compel arbitration, when determining whether a valid arbitration agreement exists, courts must initially determine whether to apply the standard set forth in Rule 12(b)(6) or the summary judgment standard set forth in Rule 56. *Guidotti v. Legal Helpers Debt Resol., L.L.C.*, 716 F.3d 764, 771–76 (3d Cir. 2013). In so deciding, courts apply the following framework:

> [W]hen it is apparent, based on "the face of a complaint, and documents relied upon in the complaint," that certain of a party's claims "are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay." But if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then "the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question." After limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard.

*Guidotti,* 716 F.3d at 776 (citations omitted). "The centerpiece of that framework is whether the existence of

Case 1:25-cv-00002-JPW   Document 5-7   Filed 02/04/25   Page 5 of 6

Hine v. LendingClub Corporation, Not Reported in Fed. Supp. (2022)

a valid agreement to arbitrate is apparent from the face of the complaint or incorporated documents." *Singh v. Uber Techs. Inc.*, 939 F.3d 210, 218 (3d Cir. 2019) (citing *Guidotti*, 716 F.3d at 774–76). While "the enforceability of web-based agreements will often depend on a 'fact-intensive inquiry,' the Court may determine that a web-based agreement to arbitrate exists where notice of the agreement was 'reasonably conspicuous and manifestation of assent unambiguous as a matter of law.'" *HealthplanCRM, LLC v. AvMed, Inc.*, 458 F. Supp. 3d 308, 331 (W.D. Pa. 2020) (quoting *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 76 (2d Cir. 2017)).

b. Discussion

LendingClub argues that because the Membership Agreement contained an Arbitration Agreement that Plaintiff Hine agreed to and Plaintiff Hine did not opt out of the agreement to arbitrate within thirty days, that her claims must be compelled to arbitration. In so arguing, LendingClub included as an exhibit to its brief a Declaration of Jeremy Carlson its Principal Electronic Discovery Manager who testifies regarding Plaintiff Hine's purported execution of the Borrower Membership Agreement and agreement to the Arbitration Provision. LendingClub further attaches as exhibits to its motion the Borrower Membership Agreement and the Loan Agreement and screen grabs from LendingClub's purported webpages. Notably, no document attached by LendingClub includes any specific reference to Plaintiff Hine, her loan amount, or any specific loan terms. LendingClub also includes an "exemplar" dialog screen with an electronic check box and accompanying text that it claims Plaintiff Hine "would have been presented with" as she accepted the terms of her loan. Carlson Dec. (ECF No. 5-1 at ¶ 10).

**\*5** Plaintiff Hine responds that LendingClub's online platform failed to provide her with reasonable notice of the arbitration agreement and the agreement process "actively misled" Plaintiff Hine "to believe she was not agreeing to limit her legal rights." Pl. Resp. (ECF No. 10 at 6). Plaintiff Hine argues that the Arbitration Agreement was contained in nondescript hyperlinks to the Membership Agreement and the main webpage with the material terms of Plaintiff Hine's loan did not mention arbitration, and therefore misled her, and any reasonable user, to believe that arbitration was not a term of the loan transaction. *Id.* Plaintiff Hine further responds that LendingClub has failed to prove that the Agreements it supplies in support of its motion are the same ones to which she assented and fails to prove that the screenshot it provides is an accurate portrayal of the webpage presented to Hine because neither provided Agreement is signed by Plaintiff Hine and are "devoid of information tying the documents to Hine or the loan transaction at issue." Pl.'s Resp. (ECF No. 10 at 15).

In the instant matter, the summary judgment standard must apply to the motion to compel arbitration because it is not apparent from the face of the complaint, nor documents relied upon in the complaint that a valid arbitration agreement exists. Plaintiff Hine has raised additional sufficient facts to place the agreement to arbitrate in issue. Specifically, the documents attached by LendingClub to its motion to dismiss purporting to be the Agreements that Plaintiff Hine executed to obtain her loan are only exemplars of the type of agreement Plaintiff Hine could have executed and do not include her signature or any specific information regarding her loan including loan amounts, interest rates, effecting dates, etc., and while LendingClub includes a declaration from its corporate representative to prove that the exemplar agreements attached to the motion to dismiss would have been of the type that Plaintiff Hine signed – and they may be – it would be improper for the Court to consider this testimony without affording Plaintiff Hine the opportunity to conduct discovery as to the veracity of LendingClub's assertions.[2] The Court cannot make the determination that as a matter of law that the notice of the Arbitration Agreement was "reasonably conspicuous and [Plaintiff's Hine's] manifestation of assent unambiguous as a matter of law" without the benefit of limited discovery into what Arbitration Agreement was entered into or how the Arbitration Agreements were presented to Plaintiff Hine. *Meyer*, 868 F.3d at 76. Moreover, this conclusion is supported by several other courts who have also concluded that materials attached to a motion to compel arbitration should not be considered under the Rule 12(b)(6) standard. *Nicasio v. L. Offs. of Faloni & Assocs., LLC*, No. 2:16-0474 (WJM), 2016 WL 7105928 at \*2 (D.N.J. Dec. 5, 2016); *Hosang v. Midland Credit Mgmt., Inc.*, No. 19CV21740BRMJAD, 2020 WL 8366284, at \*3 (D.N.J. Dec. 15, 2020), report and recommendation adopted, No. 219CV21740BRMJAD, 2021 WL 307544 (D.N.J. Jan. 29, 2021); *Powell v. Midland Credit Mgmt., Inc.*, No. CV2119836KMWMJS, 2022 WL 3681257, at \*4 (D.N.J. Aug. 25, 2022). "Because the question of arbitrability cannot be resolved without considering evidence extraneous to the pleadings, it would be inappropriate to apply a Rule 12(b)(6) standard in deciding the instant motion." *Torres v. Rushmore Serv. Ctr., LLC*, No. CV189236SDWLDW, 2018 WL 5669175, at \*2 (D.N.J. Oct. 31, 2018). But see *Liptak v. Accelerated Inventory Mgmt., LLC*, No. 2:20-CV-967, 2021 WL 650514, at \*2 (W.D. Pa. Feb. 19, 2021) (finding that a "clickwrap" arbitration agreement was enforceable as a matter of law under Rule 12(b)(6) and compelling arbitration). Therefore, the parties should be afforded the opportunity to conduct discovery to determine the

Case 1:25-cv-00002-JPW   Document 5-7   Filed 02/04/25   Page 6 of 6

Hine v. LendingClub Corporation, Not Reported in Fed. Supp. (2022)

arbitrability of this matter.

### IV. CONCLUSION

**\*6** Based on the foregoing, LendingClub's motion to compel arbitration is denied without prejudice to refile once the parties have completed limited discovery on the arbitrability of Plaintiff Hine's claims. An appropriate Order follows.

**All Citations**

Not Reported in Fed. Supp., 2022 WL 16950409

Footnotes

| | |
|---|---|
| 1 | Motions to compel arbitration are non-dispositive motions under 28 U.S.C. § 636(b). See *Virgin Islands Water & Power Auth. v. Gen. Elec. Int'l Inc.*, 561 F. App'x 131, 133–34 (3d Cir. 2014). |
| 2 | For example, Plaintiff Hine calls into question the veracity of the documents attached to LendingClub's motion and correctly indicates that timestamps on those documents indicate that the documents were created in 2019, whereas Plaintiff Hine's claims arose in 2015. Pl.'s Resp. (ECF No. 10 at 15). LendingClub responds that the documents were created in 2015, but were captured and timestamped in 2019, that the Court should consider those documents as emblematic of the type of agreement Plaintiff Hine would have signed and includes another Declaration from Jeremy Carlson to support that assertion. Def.'s Reply (ECF No. 12 at 6-9). While the documents attached to the motion by LendingClub may very well be the type of document Plaintiff Hine encountered and assented to, the Court cannot make that determination as a matter of law under Rule 12(b)(6) where one party is asking the Court to rely on unauthenticated documents and declarations of witnesses that are extraneous to the pleadings. |

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.