# **EXHIBIT J**

Case 1:25-cv-00002-JPW   Document 5-9   Filed 02/04/25   Page 2 of 7

Zakresky v. Graduate School of Figurative Art of New..., 24 Misc.3d 1245(A)...
899 N.Y.S.2d 64, 2009 N.Y. Slip Op. 51884(U)

24 Misc.3d 1245(A)
Unreported Disposition
(The decision of the Court is referenced in a table in the New York Supplement.)
Supreme Court, New York County, New York.

Laura ZAKRESKY, as the Executrix of the Estate of John R. Blumatte, a/k/a Robert Angona, a/k/a John Blue, Plaintiff,
v.
The GRADUATE SCHOOL OF FIGURATIVE ART OF the NEW YORK ACADEMY OF ARTS, Defendant.

No. 604121/07.
|
Sept. 8, 2009.

**Attorneys and Law Firms**

J. Joseph Bainton, Esq., Smith Gambrell & Russell, LLP, New York, for Plaintiff.

Bennette D. Kramer, Esq., Andrew S. Harris, Esq., Schlam Stone & Dolan LLP, New York, for Defendant.

**Opinion**

MICHAEL D. STALLMAN, J.

**\*1** Decedent John R. Blumatte, who was hired as defendant's former comptroller under an alias, was allegedly permitted to resign from his employment, and thereafter pled guilty to charges of stealing from defendant. Nevertheless, decedent's estate asserts causes of action to recover the remaining salary under Blumatte's contract with defendant and to recover for allegedly unpaid services on a separate contract assigned to Blumatte. Pursuant to CPLR 3211(a)(7), defendant New York Academy of Art s/h/a The Graduate School of Figurative Art of the New York Academy of Art (the Academy) moves for an order dismissing the complaint on the ground that it fails to state a claim upon which relief can be granted.

This motion was previously decided by decision and order dated November 26, 2008. By a separate order of the same date, the Court also transferred the case to the Civil Court of the City of New York, pursuant to CPLR 325(d). However, the Court recalled and vacated its decision upon learning, after the decision and orders were issued, that decedent had died in May 2008 while the motion was *sub judice.* By decision and order dated February 26, 2009, the Court permitted decedent's daughter, appointed executrix, to be substituted as the plaintiff and the caption to be amended accordingly, and the motion was restored to the motion calendar. The parties have submitted supplemental papers on the motion.

**BACKGROUND**

The Academy asserts that Blumatte is a career criminal who, using an alias to avoid detection for violation of federal probation in New Jersey, convinced the Academy in 2002 to engage his services as controller. In 2004, Blumatte was arrested for stealing from the Academy. He pled guilty to grand larceny and served time in prison. He was then incarcerated for violation of his federal probation.

The Academy points out that Blumatte still does not disclose his true name, suing instead under three different names. According to the Academy, Blumatte arranged to furnish his services to the Academy through corporations set up by his wife, in order to avoid providing his social security number and disclosing his real name.

The Academy explains that, on April 12, 2007, Blumatte sued the Academy and 18 of its former and current trustees in federal court by filing a complaint with allegations very similar to those in the instant action. *Blumatte v. Quinn,* U.S. Dist Ct, SD NY, 07 Civ 2944, Rakoff, J., 2007 (the Federal Action). All of the claims in the Federal Action were dismissed on substantive grounds with prejudice, except for the breach of contract claim, which was dismissed for lack of diversity jurisdiction. The breach of contract claim is reasserted herein as the only cause of action in the instant complaint.

According to the Academy, most of the allegations in the complaint in the instant action have nothing to do with the contracts upon which Blumatte bases his breach of contract cause of action. The Academy contends that, instead, the allegations relate to Blumatte's theory that his conviction for grand larceny for stealing from the Academy arose from a fraudulent conspiracy by former and current Academy trustees, who were named as

Case 1:25-cv-00002-JPW    Document 5-9    Filed 02/04/25    Page 3 of 7

Zakresky v. Graduate School of Figurative Art of New..., 24 Misc.3d 1245(A)...
899 N.Y.S.2d 64, 2009 N.Y. Slip Op. 51884(U)

defendants in the Federal Action. The Academy maintains that Blumatte's claim of a greater fraud encompassing him was the basis for his fraud claim in the Federal Action, which was dismissed based on the collateral estoppel effect of Blumatte's guilty pleas.

**\*2** The Academy states that, for purposes of the instant motion, it accepts the truth of Blumatte's allegations, as it must on a motion to dismiss pursuant to CPLR 3211(a)(7).

According to the complaint, Blumatte was convicted of felonies by the United States and the State of New Jersey, and, in 1998, he unlawfully left the supervision of the United States Probation Department. Cmplt., at 17 and 18.

Thereafter, Blumatte adopted a variety of aliases, ultimately settling on the name Robert Angona, which is the name of an incarcerated acquaintance of Blumatte. Cmplt., at 24. Blumatte caused his wife to set up two New York corporations, First Manhattan Group, Inc. (First Manhattan) and Empire Solutions Inc. (Empire). As the only full-time employee of the two corporations, Blumatte provided accounting and financial services to a number of companies until 2004.

Through First Manhattan, Blumatte began providing his services to the Academy in April 2002. The Academy states that he refused to sign its standard employment contract because of his convictions and his need to hide his true name. According to the complaint, the Academy accepted Blumatte's form of agreement, which was signed on or about June 14, 2002, and which was supplemented by a letter agreement for additional services on June 20, 2002.

Blumatte alleges that he discovered various accounting discrepancies at the Academy, some of which he believed to be fraudulent. In 2003, First Manhattan and the Academy entered into a new contract for Blumatte's services as controller (the 2003 Controller Agreement). Also in 2003, Blumatte, through Empire, entered into another letter agreement with the Academy to provide services related to the Academy's computer systems (the Empire Agreement).

The Academy states that, according to the complaint, Blumatte ended his services to the Academy for two reasons. First, in 2004, newspaper articles suggested that "Robert Angona," Blumatte's alias at the Academy, was associated with organized crime, thereby complicating Blumatte's efforts to avoid disclosure of his probation violations. Second, the trustees allegedly refused Blumatte's advice to restate the Academy's financial statements or to change various practices that he had criticized. As a result, Blumatte allegedly resigned in March 2004. Blumatte alleges that Stephen Farthing (Farthing), then the Executive Director of the Academy and a member of its Board of Trustees, orally agreed to pay Blumatte the lump sum payment called for by the 2003 Controller Agreement, minus the amount Blumatte owed for various personal credit card charges.

The Academy states that several of its trustees contacted the Manhattan District Attorney's Office, resulting in Blumatte's arrest and indictment for grand larceny. After his arrest, the federal government issued a warrant for his detention for probation violations.

On October 8, 2004, Blumatte pled guilty to a class C felony for grand larceny for theft from the Academy. Blumatte was sentenced to four to eight years in prison. On December 1, 2006, with the consent of the Manhattan District Attorney's Office, Blumatte withdrew his prior guilty plea and pled guilty to a class D felony, for which he was re-sentenced to two and a half to five years.

**DISCUSSION**

**\*3** The Academy argues that plaintiff's breach of contract claim is unenforceable and must be dismissed. It contends that Blumatte's theft from the Academy was a breach of contract that relieved it from any further contractual obligations to Blumatte. It argues that Blumatte's assertion that he performed under the 2003 Controller's Agreement, and therefore deserves to have his claim for severance pay enforced, is undermined by his guilty plea. The Academy argues that the theft breached the covenant of good faith and fair dealing in the course of performance that is implied in all New York contracts.

The Academy also contends that Blumatte's contract claim is unenforceable as against public policy because it is an illegal contract. One of the terms of Blumatte's probation was that he report his employment to his probation officer. Blumatte did not report his employment with the Academy to his probation officer, thereby, according to the Academy, making his performance of the 2003 Controller Agreement illegal. According to the Academy, Blumatte lied about his identity and signed all contracts with the Academy in a fictitious name to avoid detection for violation of his probation.

The complaint suggests that the 2003 Controller Agreement and the Empire Agreement are enforceable

Case 1:25-cv-00002-JPW   Document 5-9   Filed 02/04/25   Page 4 of 7

Zakresky v. Graduate School of Figurative Art of New..., 24 Misc.3d 1245(A)...
899 N.Y.S.2d 64, 2009 N.Y. Slip Op. 51884(U)

because the Academy entered into them with full knowledge of Blumatte's criminal history.

Plaintiff contends that the Academy is entitled to set-off against its contractual obligations to Blumatte the amount of monies he charged on a credit card bearing the names of Blumatte and the Academy that were personal expenses of his which were paid by the Academy. Plaintiff estimates that these expenses are approximately $11,968.58. Blumatte states, however, that the Academy owes him approximately $200,000, which he calculates as the difference between what the Academy owes him and what Blumatte owes the Academy for credit card charges based upon his guilty plea.

Plaintiff points out that, on a motion to dismiss pursuant to CPLR 3211(a)(7), the Court must accept as true the allegations in the complaint and must give the plaintiff the benefit of all possible favorable inferences. The complaint alleges that Empire and First Manhattan completely performed their obligations under the Empire Agreement and the 2003 Controller Agreement, respectively, and that the Academy breached its payment obligations under both contracts.

Plaintiff argues that there is nothing fraudulent or illegal about the two contracts at issue. The complaint alleges that the terms of Blumatte's probation did not preclude him from working in the accounting and financial services field, and that Blumatte disclosed to Farthing and to the Academy's chairman that he could not sign the Academy's standard form of contract "because of his prior federal and state convictions about which he provided considerable detail to Farthing." Cmplt., at 32. According to the complaint, after deciding to hire Blumatte, the Academy's then chairman instructed Blumatte not to share his past with anyone else at the Academy, including the other trustees. *Id.* at 35.

**\*4** Finally, plaintiff argues that punitive damages should be awarded because the Academy's breaches were committed in the furtherance of a public fraud and a scheme to benefit the Academy and its trustees at the expense of Blumatte, the federal government and donors to the Academy. The Academy contends that plaintiff is not entitled to punitive damages because the complaint fails to adequately allege a fraud on the public.

The complaint, which is 46 pages long, contains many allegations related to alleged financial improprieties by the Academy, and also contains allegations describing an alleged scheme by various parties to destroy Blumatte and his business. Those allegations, whether true or not, are not relevant to the instant motion, which seeks dismissal of the complaint, and its single cause of action, sounding in breach of contract. Thus, the Court need not address those allegations.

As to the legality of the contracts at issue,

> "Illegal contracts are, as a general rule, unenforceable. However, the violation of a statute that is merely malum prohibitum will not necessarily render a contract illegal and unenforceable. If the statute does not provide expressly that its violation will deprive the parties of their right to sue on the contract, and the denial of relief is wholly out of proportion to the requirements of public policy * * * the right to recover will not be denied."

*Benjamin v. Koeppel,* 85 N.Y.2d 549, 553 (1995). Here, defendant does not contend that its contracts with Blumatte to provide services as a controller violated a statute. That is, defendant does not contend that the agreements have an illegal object. Rather, defendant argues that Blumatte's probation violations rendered the contracts illegal. In the complaint, Blumatte acknowledges that his failure to inform his probation officer of his employment with the Academy after the contracts were executed violated the terms of his probation.

Defendant has not submitted any documentary evidence conclusively establishing that the terms of Blumatte's probation specifically barred him from providing accounting services for defendant.[1] Neither has defendant submitted any documentary evidence conclusively establishing that Blumatte's employment was subject to his probation officer's approval. Therefore, on this motion, defendant has not shown that any limitation or restriction upon Blumatte's capacity to enter into the contracts with defendant. Even assuming that the probation violations were a defense to the contracts, it cannot be determined whether the probation violations are malum prohibitum, without further information regarding the alleged requirements of Blumatte's probation.

As defendant points out, "a party will be denied recovery even on a contract valid on its face, if it appears that he has resorted to gravely immoral and illegal conduct in accomplishing its performance." *Prote Contr. Co. v. Board of Educ. of the City of NY,* 230 A.D.2d 32, 40 (1st Dept 1997) citing *McConnell v. Commonwealth Pictures Corp.,* 7 N.Y.2d 465 (1960). However, defendant does not explain how Blumatte resorted or would have resorted to illegal conduct to provide accounting services to defendant as set forth in the parties' contract.

**\*5** Blumatte entered into the contracts using the name Robert Angona. Defendant therefore argues that there was no true meeting of the minds between the parties as to an

Case 1:25-cv-00002-JPW   Document 5-9   Filed 02/04/25   Page 5 of 7

Zakresky v. Graduate School of Figurative Art of New..., 24 Misc.3d 1245(A)...
899 N.Y.S.2d 64, 2009 N.Y. Slip Op. 51884(U)

essential terms of the parties' contracts, i.e., who was to be the controller. This somewhat creative argument cannot be decided in defendant's favor on a motion to dismiss, because it raises the factual question of what the parties knew, and not what is alleged in the complaint. The complaint alleges that Blumatte presented himself to defendant as Robert Angona, and performed the services himself as Robert Angona. Whether defendant engaged Blumatte because of the reputation, skills, or ability of the real Robert Angona (i.e., of someone else other than Blumatte) is a factual matter that would require discovery.

"In the absence of a statute or judicial adjudication to the contrary, nothing in the law prohibits a person from taking or assuming another name, so long as he or she does not assume the name for a fraudulent purpose." 79 N.Y. Jur 2d, Names § 41 (footnotes omitted); *Matter of Zanger,* 266 N.Y. 165 (1935). "Because the name of a person serves simply as a means of identification, a party may contract under a fictitious or assumed name, and may thereafter bring suit in such name, at least in the absence of fraud or statutory restriction." 79 N.Y. Jur 2d, Names § 42 (footnotes omitted); *Sheppard v. Ridgewood Grove,* 126 N.Y.S.2d 761 (Sup Ct, Kings County 1953). Thus, Blumatte's use of the name Robert Angona in the contracts with defendant, does not, in itself render the contracts void. Defendant's allegations of Blumatte's fraud and concealment require discovery.

The Academy contends that Blumatte's theft from the Academy was a breach of the contracts between them, in that it violated the covenant of good faith and fair dealing. In New York, such a covenant is implicit in all contracts, and a violation of the covenant in the course of performance of the contract is a breach of the contract itself. *See Dalton v. Educational Testing Serv.,* 87 N.Y.2d 384, 389 (1995). This implied covenant "prevent[s] a party from doing anything to destroy or injure the right of the other party to receive the fruits of the contract." *Gray v. Wallman & Kramer,* 184 A.D.2d 409, 412 (1st Dept 1992). However, the implied covenant of good faith and fair dealing does not impose obligations that would be inconsistent with the express terms of the contract itself. *See Dalton,* 87 N.Y.2d at 396.

Section 6 of Blumatte's Employment Contract provides, in relevant part:

> "**(A) Termination by the Academy:** This Agreement shall terminate on June 30, 2005, or at which time as the services of Angona and/or the Group are without purpose, in which case all compensation under Section 5 will become due and payable.
>
> **(B) Termination by Mutual Agreement.** This Agreement may terminate upon mutual agreement upon which Angona and/or the Group will be paid in one lump sum Angona's then current Base Salary for the remainder of the contract term together with an amount equal to 10% of the remaining contract amount.

\* \* \*

> *6 **(D) Termination by Angona for Good Cause.** Angona shall have the right to terminate his employment for "Good Cause"... In the event of Termination by Angona for Good Cause the Academy shall pay to Angona and/or the Group in one lump sum Angona's then current Base Salary for the remainder of the Contract Term or Twelve (12) Months, whichever is longer together with an amount equal to 10% of the remaining contract amount, following Angona's actual separation date, as well as any then accrued portion of Angona[']s Benefits."

Cmplt, Ex F.In all three scenarios, whether defendant, Angona, or the both parties agreed to terminate the employment agreement, Angona would be entitled to receive some compensation in event of his termination. Blumatte alleges that he resigned in March 2004, with the understanding that he "had struck a deal with the Academy regarding his departure." (Cmplt ¶ 130). Blumatte's guilty plea to theft does not alter the agreement that the parties made regarding Blumatte's termination. That is, it would appear that, if the parties agreed to terminate Blumatte's employment, which was alleged here, then section 6.B. would apparently apply, even if the impetus of the parties' mutual agreement was that defendant believed that Blumatte had stolen from the company. In essence, section 6 of the employment agreement gives Blumatte a small parachute in the event of Blumatte's termination in the circumstances cited above, which were pleaded. However distasteful this may be, defendant has not demonstrated on this motion that the employment agreement is unenforceable, or that Section 6 of the agreement is not applicable.[2]

In supplemental papers, defendant contends that the faithless servant doctrine precludes plaintiff from recovering any additional compensation from the Academy. In supplemental papers in opposition, plaintiff argues that the allegations of the complaint plainly contradict defendant's claims that Blumatte stole from it, and that Blumatte pled guilty to a Class C felony under the circumstances of fear and pain resulting from the threats of the law enforcement officials. Plaintiff argues that defendant's motion should be denied because the

Case 1:25-cv-00002-JPW   Document 5-9   Filed 02/04/25   Page 6 of 7

Zakresky v. Graduate School of Figurative Art of New..., 24 Misc.3d 1245(A)...
899 N.Y.S.2d 64, 2009 N.Y. Slip Op. 51884(U)

truth of the complaint's allegations must be assumed and plaintiff must be given the benefit of all possible favor on this motion.

Under the faithless servant doctrine, which has long been the law of New York, an employee

> "is prohibited from acting in any manner inconsistent with his agency or trust and is at all times bound to exercise the utmost good faith and loyalty in the performance of his duties. Not only must the employee or agent account to his principal for secret profits, but he also forfeits his right to compensation for services rendered by him if he proves disloyal."

*Lamdin v. Broadway Surface Adv. Corp.,* 272 N.Y. 133, 138 (1936). Thus, a faithless employee may be held to have forfeited all salary and other compensation in light of the extent of the employee's faithless acts. *See e.g Matter of Blumenthal,* 32 AD3d 767, 768 (1st Dept 2006).

**\*7** The Court agrees with defendant that Blumatte's acts were faithless, as a matter of law, and that the extent of the faithless acts warrants forfeiture of the remainder of the salary which plaintiff seeks to recover. "One who owes a duty of fidelity to a principal and who is faithless in the performance of his services is generally disentitled to recover his compensation, whether commissions or salary. Nor does it make any difference that the services were beneficial to the principal, or that the principal suffered no provable damage as a result of the breach of fidelity by the agent." *Feiger v. Iral Jewelry,* 41 N.Y.2d 928, 929 (1977) (citation omitted). Here, the complaint alleges that Blumatte pled guilty to stealing from the Academy during the period when he was serving as the Academy's comptroller. Cmplt ¶¶ 253, 256, 258. "Where, as here, [the employees] engaged in repeated acts of disloyalty, complete and permanent forfeiture of compensation, deferred or otherwise, is warranted under the faithless servant doctrine." *William Floyd Union Free School Dist. v. Wright,* 61 AD3d 856, 859 (2d Dept 2009)(former treasurer and former assistant superintendent who plead guilty to grand larceny forfeited retirement insurance benefits).

Plaintiff's arguments are unavailing.

> "Although on a motion addressed to the sufficiency of a complaint, the facts pleaded are presumed to be true and accorded every favorable inference, allegations consisting of bare legal conclusions, as well as factual claims that are inherently incredible or flatly contradicted by documentary evidence, are not entitled to such consideration."

*Kaisman v. Hernandez,* 61 AD3d 565, 566 (1st Dept 2009). "In order to open the door for even a colorable claim of innocence, criminal defendants must free themselves of the conviction, for the conviction precludes those potential plaintiffs from asserting innocence in a civil suit." *Britt v. Legal Aid Socy.,* 95 N.Y.2d 443, 447 (2000).

As to plaintiff's breach of contract claim on the Empire Contract (*see* Cmplt ¶ 281), defendant argues that plaintiff is collaterally estopped from recovering on the Empire Contract due to Blumatte's guilty plea. However, defendant has not adequately shown identity of the issues in the guilty plea that would bar plaintiff's claim here. Defendant has not explained how, in establishing the elements of his claim on the Empire Contract here, plaintiff must necessarily take a position which is factually or legally inconsistent with Blumatte's guilty plea or inconsistent with prior court determinations for which Blumatte had a full and fair opportunity to litigate.

Nevertheless, the portion of plaintiff's complaint which seeks to recover $7,500 for breach of the Empire Contract is dismissed. Defendant allegedly entered into an agreement with Empire Solutions for services billed at hourly rates. *See* Cmplt, Ex G. As defendant points out, an Inventory History Report annexed as Exhibit M to the Complaint, which covers invoices from July 2003 to April 2004, apparently indicates a zero balance for Empire Solutions. Although Blumatte claims to be an assignee for monies due under that agreement (Cmplt ¶ 281), the complaint does not adequately plead what services were provided and when the services were provided, so as to give defendant notice of the transactions at issue. CPLR 3013.

**\*8** Because the complaint is dismissed, the Court need not address whether plaintiff is entitled to seek punitive damages. In any event, plaintiff would not be entitled to punitive damages. Punitive damages generally are not available in breach of contract actions, unless there is an indication that the breach was committed in furtherance of a "gross and wanton fraud upon the public'." *Jacobson v. New York Prop. Ins. Underwriting Assn.,* 120 A.D.2d 433, 434–35 (1st Dept 1986), quoting *Walker v. Sheldon,* 10 N.Y.2d 401, 406 (1961); *see also J.G. S., Inc. v. Lifetime Cutlery Corp.,* 87 A.D.2d 810 (2d Dept 1982). The allegations pertaining to the breach of contract claim do not involve any type of public fraud, and therefore punitive damages are not available in the instant action.

Accordingly, it is ORDERED that the motion to dismiss by defendant The Graduate School of Figurative Arts of the New York Academy of Arts is granted, the complaint is dismissed, and the Clerk is directed to enter judgment in defendant's favor accordingly.

**Zakresky v. Graduate School of Figurative Art of New..., 24 Misc.3d 1245(A)...**
899 N.Y.S.2d 64, 2009 N.Y. Slip Op. 51884(U)

| **All Citations** | 2870054, 2009 N.Y. Slip Op. 51884(U) |

24 Misc.3d 1245(A), 899 N.Y.S.2d 64 (Table), 2009 WL

Footnotes

| 1 | Defendant cites the complaint that Blumatte filed in the federal action, wherein Blumatte states that he was motivated for violating his probation because his probation officer was unwilling to permit him to be employed in accounting and financial services. Blumatte's understanding of the actions of the probation officer in the complaint does not conclusively establish the existence of a work restriction that was a condition of Blumatte's probation. |

| 2 | As defendant itself recognizes, an employment agreement could easily have included a provision that provides that an employee forfeits severance payments in the event of fraud, embezzlement, or misappropriation of company funds. *See Faberge Intl. v. Di Pino,* 109 A.D.2d 235, 238 (1st Dept 1985). |

**End of Document**   © 2025 Thomson Reuters. No claim to original U.S. Government Works.