# EXHIBIT B

2013 WL 5977361
Only the Westlaw citation is currently available.
United States District Court, D. New Jersey.

Nadine Hemy and Nancy CONNER, Plaintiffs,
v.
PERDUE FARMS, INC., et al., Defendants.

Civil Action No. 11–888 (MAS)(LHG).
|
Nov. 7, 2013.

**Attorneys and Law Firms**

David M. Wacksman, Hasbrouck Heights, NJ, for Plaintiffs.

Liza M. Walsh, Rukhsanah L. Singh, Connell Foley, LLP, Roseland, NJ, for Defendants.

*ORDER*

LOIS H. GOODMAN, United States Magistrate Judge.

**\*1** This matter comes before the Court by way of a case management issue in dispute between the parties. In this putative class action, Plaintiffs Nadine Hemy and Nancy Conner ("Plaintiffs") allege that Defendant Perdue Farms, Inc. ("Perdue") made false and/or misleading representations on the labels of Perdue's Harvestland brand chicken by stating that the products were "Humanely Raised" and "USDA Process Verified." At the heart of the present dispute is whether Plaintiffs are entitled to discovery concerning Perdue's actual chicken-raising practices for purposes of the class certification motion, or whether discovery should be bifurcated. The Court considers the dispute on the papers, without oral argument, pursuant to Fed.R.Civ.P. 78. For the following reasons, Defendant's request to bifurcate discovery is **GRANTED.**

**I. BACKGROUND**
On or around November 29, 2010, Plaintiffs filed a proposed class action complaint in New Jersey Superior Court—Monmouth Division alleging violations of the New Jersey Consumer Fraud Act, as well as common law claims for Fraud and Negligent Misrepresentation, arising from the marketing of Perdue "Harvestland" brand chickens. [Docket Entry No. 1–1]. Plaintiffs seek to represent a class of "all persons who purchased any Harvestland product labeled 'Humanely Raised' and/or 'USDA Process Verified' during the period September 2009 to present in the State of New Jersey." Compl. ¶ 55. On February 17, 2011, Perdue removed the matter to this Court. [Docket Entry No. 1].

In April 2011, Perdue filed a Motion to Dismiss, which was granted in part and denied in part. [Docket Entry Nos. 29 and 30]. The Honorable Freda L. Wolfson, U.S.D.J., permitted Plaintiffs to replead certain allegations relating to their "Humanely Raised" and "USDA Process Verified" claims. Thereafter, on February 13, 2012, Plaintiffs filed a Second Amended

Conner v. Perdue Farms, Inc., Not Reported in F.Supp.2d (2013)

Complaint [Docket Entry No. 32], and on April 27, 2012, Plaintiffs sought leave to file a Third Amended Complaint [Docket Entry No. 34], which was granted on July 27, 2012. [Docket Entry No. 40, 42]. Defendant subsequently filed a Motion to Dismiss Plaintiffs' Third Amended Complaint [Docket Entry No. 45], which was denied by the Honorable Michael A. Shipp, U.S.D.J., on March 31, 2013.

On June 7, 2013, the Court held an initial Rule 16 conference with counsel for the parties. During the conference, the parties raised the issue of bifurcation of discovery. Defendant suggested that the Court bifurcate discovery into two distinct phases—a "class" phase during which the parties would "focus on discovery of information relating exclusively to class certification issues" and a subsequent "merits" phase during which the parties would engage in discovery relating to the substantive allegations made in the Third Amended Complaint, including whether the Harvestland brand chickens are raised in a humane fashion. Joint Discovery Plan ("JDP" at 7). Plaintiffs opposed bifurcation. Specifically, in the JDP, Plaintiffs argued that they would need merits-based discovery including, in relevant part, discovery into Perdue's chicken-raising practices, during the class certification stage. JDP at 4, 11–13. Following the Rule 16 conference, and pursuant to an Order dated June 10, 2013, the parties simultaneously submitted moving and responsive briefs concerning bifurcation of discovery on June 21 and July 8, 2013. Perdue submitted an additional letter on September 30, 2013 and Plaintiffs submitted a response on October 3, 2013.

**\*2** In its papers, Perdue contends that bifurcation will: (1) expedite a decision on class certification; (2) protect against abusive discovery practices; and (3) be practicable since class and merits issues are severable. Perdue contends that for purposes of class certification, Plaintiffs need only establish that common issues predominate, and, specifically, that "there is a uniform understanding of the phrase 'Humanely Raised' across the class, as used in the challenged advertising." Perdue July 8 Letter at 2. To establish this, Perdue argues that Plaintiffs do not need discovery into Perdue's actual chicken raising practices because Perdue's "treatment of Harvestland chickens would be common to all Harvestland products sold to New Jersey consumers ..." Perdue June Letter at 16. Indeed, Perdue contends that "[h]ow Perdue actually raises its chickens is relevant only to the merits of Plaintiffs' claims, and thus, discovery into this issue ... is not necessary unless and until the merits phase of discovery." Perdue June Letter at 16. Further, Perdue contends that although Plaintiffs "will likely need to submit expert consumer perception testimony and survey evidence to establish how the ordinary reader interprets the challenged advertising ... they do not need information about how Perdue raises its chickens to formulate their survey questions ... [i]nstead, Plaintiffs' survey should test whether the putative class of consumers shares Plaintiffs' interpretation of the 'Humanely Raised' and 'USDA Process Verified' labels." *Id.* at 17.

In response, Plaintiffs contend that bifurcation will not be more efficient, Pls' July 8 Letter at 6–7, asserting that even if class certification is denied, they intend to litigate on behalf of the individual Plaintiffs, so merits discovery is inevitable. *Id.* In addition, Plaintiffs note that Perdue's bifurcated schedule includes nine months for completion of class only discovery, the same amount of time Plaintiffs propose for completion of all discovery. *Id.* Further, Plaintiffs contend that bifurcation may result in having to depose witnesses several times and could result in multiple rounds of motions to compel. *Id.*

More substantively, Plaintiffs argue that bifurcation is improper because class and merits discovery is intertwined. Pls' June Letter at 3. Plaintiffs argue that Perdue has already stated that it will challenge any motion for class certification on the basis of a lack of common understanding about what "humanely raised" means. *Id.* Thus, Plaintiffs argue that Perdue is trying to have its cake and eat it too by, on the one hand, arguing that discovery concerning how Perdue actually raises its chickens is immaterial to a Rule 23 analysis, while, on the other hand, stating that Perdue intends to oppose certification "because of a lack of common understanding among consumers" regarding the relevant labels and whether they are misleading. Pls' July Letter at 3. In other words, Plaintiffs argue that by seeking bifurcation, Perdue is attempting to position itself so that it "can argue that Plaintiffs have failed to show a 'common' understanding of the term 'humanely raised' in the abstract, while at the same time depriving Plaintiffs of the ability to develop potentially relevant to whether such a 'common' understanding exists in the context of this case." Pls' June Letter at 2. Thus, Plaintiffs contend that they need to

> **\*3** be prepared to prove the reasonableness of their label understanding *vis a vis* that of other class members. To do that, Plaintiffs would need to compare Perdue's actual practices to consumer perception of the term 'humanely raised.' In other words ... Plaintiffs need to develop a factual record of what Perdue's practices actually are, so that Plaintiffs can demonstrate ... to the Court that those practices are indeed inconsistent with the term 'humane.'

JDP at 14.

On July 24, 2013, the undersigned reached out to counsel to clarify whether Perdue intended to oppose Plaintiff's class

Conner v. Perdue Farms, Inc., Not Reported in F.Supp.2d (2013)

certification motion with evidence based on its actual chicken-raising practices. In a letter that same day, Perdue confirmed that it does not intend to present such evidence at the class certification stage. Perdue July 24 Letter. On July 26, 2013, Plaintiffs filed a letter with the Court advising that regardless of what Perdue does in its opposition, Plaintiffs expect to proffer evidence regarding Perdue's actual practices in their reply to the class certification motion. Pls' July 26 Letter.

## II. STANDARD OF REVIEW

The Federal Rules of Civil Procedure give Magistrate Judges broad discretion in resolving discovery disputes. This discretion extends to decisions concerning whether to bifurcate discovery. *Weiss v. First Unum Life Ins. Co.,* Civil Action No. 02–4249, 2008 WL 755958, at *1 (D.N.J. March 19, 2008).

Although the Federal Rules of Civil Procedure do not explicitly provide for bifurcated discovery, the 2003 Advisory Committee Notes to Rule 23 recognize that bifurcation "is appropriate to conduct controlled discovery ... limited to those aspects relevant to making the certification decision on an informed basis." Fed.R.Civ.P. 23 Advisory Committee's Notes. Courts generally postpone class-wide discovery on the merits of the claims when bifurcation serves the interests of "fairness and efficiency." *In re Plastics Additives Antitrust Litigation,* 2004 WL 2743591, at *2 (E.D.Pa. Nov.29, 2004) (quoting *Williamson Tobacco Corp.,* 959 F.2d 1566, 1570–71 (11th Cir.1992); *see also* Manual for Complex Litigation § 11.213 at 40 ("discovery may proceed concurrently if bifurcating class discovery from merits discovery would result in significant duplication of effort and expense to the parties"). Nonetheless, courts have recognized that "the distinction between merits-based discovery and class-related discovery is often blurry, if not spurious." *In re Plastics Additives Antitrust Litigation,* 2004 WL 2743591, at *3; *see also* Manual for Complex Litigation § 21.14, at 255 ("generally, application of the Rule 23 criteria requires the judge to examine the elements of the parties' substantive claims and defenses in order to analyze commonality, typicality, and adequacy of representation under Rule 23(a)"). Accordingly, the Manual suggests that the prime considerations in whether bifurcation is efficient and fair include whether merits-based discovery is sufficiently intermingled with class-based discovery and whether the litigation is likely to continue absent class certification.

## III. ANALYSIS

### 1. Fairness and Efficiency

**\*4** Initially, the Court considers fairness and efficiency in deciding whether bifurcation is warranted. Here, Plaintiffs seek discovery regarding the marketing and sale of Harvestland brand chicken, as well as discovery concerning Perdue's chicken-raising practices including information "relating to procedures at each Harvestland facility, ... evaluations and audits that have been conducted at those facilities, and other evidence of Perdue's actual practices at those facilities, including video records." JDP at 4. In addition, Plaintiffs seek discovery relating to National Chicken Counsel guidelines and how Perdue's practices compare to those of other chicken producers. In this regard, the Court notes that proceeding with merits discovery at this early stage may involve the production and review of large numbers of documents not directly related to the issues of class certification and may delay the parties' submission of briefing on the class certification issue.

Moreover, in the JDP, Plaintiffs suggested a fact discovery end date almost four months before an expert discovery end date, and the filing of a motion for class certification several weeks after the close of expert discovery. JDP at 8. Conversely, Defendants propose a narrower schedule with an end date for class certification discovery within a month of the filing of the motion for class certification. Based on these proposed dates, and in light of the mandate set forth in the Federal Rules, requiring that class certification must be made as soon as possible after commencement of the action, *see* Fed.R.Civ.P. 23(c)(1) & (3), the Court is wary of permitting additional delays in the motion for class certification. For these reasons, the Court finds that reasons of fairness and efficiency counsel in favor of bifurcating discovery.

2. *Economy*

Plaintiffs contend that bifurcating discovery may result in having to depose witnesses several times and could result in rounds of motions to compel. In addition, Plaintiffs assert that even if class certification is denied, they intend to litigate on behalf of individual Plaintiffs.

In response, Defendant argue that the wide-ranging discovery sought by Plaintiffs would cost Defendants several millions of dollars and take years to complete. In addition, Defendant contends that postponing merits discovery until a decision on class certification could narrow discovery—if a class is certified, there may be incentive to settle; if a class is not certified, Plaintiffs may be unable to continue the litigation. That said, Defendant suggests that even if class certification were denied, and Plaintiffs litigated on behalf of individual Plaintiffs, the scope of discovery might be limited.

At this stage, based on what is set forth in the JDP, Plaintiffs are seeking substantial discovery relating not only to the labels of the relevant products but also relating to Perdue's chicken raising and slaughtering practices, as well as discovery of National Chicken Counsel guidelines and how Perdue's practices compare to those of other chicken providers. As discussed at greater length below, not only does such discovery have little, if any, relevance to the class certification issues, but Defendant is being asked to bear the cost of producing this extensive discovery. If a class is not certified, these costs will be expended needlessly. Indeed, even considering Plaintiffs' counsels' representation that they will litigate on behalf of individual Plaintiffs, the scope of discovery in a litigation on behalf of one or two individuals will likely be narrower than discovery in a litigation on behalf of a class. For these reasons, the Court finds that reasons of economy counsel in favor of bifurcation in this matter.

3. *Severability*

**\*5** Plaintiffs argue that class and merits discovery is tightly intertwined in this matter, making bifurcation of discovery improper. Specifically, Plaintiffs contend that they cannot seek to certify a class without the ability to create a closed-ended survey that compares the challenged advertising with Perdue's actual chicken-raising practices. This is so, Plaintiffs argue, because Perdue has stated that it will proffer evidence that consumers do not perceive a uniform message from the challenged advertising in opposition to Plaintiff's class certification motion. Thus, Plaintiffs contend that to properly rebut Perdue's opposition, they would need to put forth consumer perception evidence concerning whether the humanely-raised claim is inconsistent with specific, actual treatment practices. In that regard, Plaintiffs suggest that "[i]f consumers uniformly find an inconsistency between Perdue's marketing claim and the reality of how the chickens are treated, that uniformity would bind the class together ..." Pls July 26, 2013 Letter at 1. The Court does not agree with Plaintiff's assessment of what is needed at the class certification stage in this matter.

The Third Circuit has concluded that a party seeking class certification must prove by a preponderance of the evidence each fact necessary to meet the requirements of Federal Rule of Civil Procedure 23. *In re Hydrogen Peroxide,* 552 F.3d at 320. The district court, in deciding a class certification motion, must conduct a "thorough examination of the factual and legal allegations," and the court "may consider the substantive elements of the plaintiffs' case in order to envision the form that a trial on those issues would take." *Id.* at 317 (citations omitted). Thus, some inquiry into the merits may be appropriate at the class certification stage to the extent that the merits overlap with the criteria of Rule 23. *Id.* at 317 n. 17. The Third Circuit noted, however, that the district court should not conduct a merits inquiry "that is not necessary to determine a Rule 23 requirement." *Id.* at 317.

Discovery relevant to class certification focuses on the prerequisites for class actions provided by Fed.R.Civ.P. 23(a): (1) numerosity of party plaintiffs; (2) commonality of questions of law and fact; (3) typicality of the representative parties' claims and defenses to those of the class; and (4) adequacy of the representation. Fed.R.Civ.P. 23(a). Commonality requires that "there are questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). The threshold for establishing commonality is straightforward: "[t]he commonality requirement will be satisfied if the named plaintiffs share at least one

question of fact or law with the grievances of the prospective class." *Baby Neal v. Casey,* 43 F.3d 48, 56 (3d Cir.1994). The typicality requirement ensures that the class representatives are sufficiently similar to the rest of the class—in terms of legal claims, factual circumstances and their stake in the litigation—so that certifying those individuals to represent the class will be fair to the rest of the proposed class. *In re Schering Plough Corp., ERISA Litigation,* 589 F.3d 585, 598–99 (3d Cir.2009). Indeed, as the Third Circuit has counseled, "the proper consideration[s] in assessing typicality" include whether: "(1) the claims of the class representative [are] generally the same as those of the class in terms of both (a) the legal theory advanced and (b) the factual circumstances underlying that theory." *Id.*

**\*6** Under the NJCFA, an advertisement must have "the capacity to mislead the average consumer." *Union Ink Co., Inc. v. AT & T Corp.,* 352 N.J.Super. 617, 644, 801 A.2d 361 (App.Div.2002). New Jersey courts have held that "[e]ven if an advertisement is literally true, it may be actionable if 'the overall impression [it] create [s] ... is misleading and deceptive to an ordinary reader.' " *Id.* (citation omitted). Indeed, "a claim of literal truth will not constitute a defense to a charge that the overall impression created by an advertisement is misleading and deceptive to an ordinary reader." *Miller v. American Family Publishers,* 284 N.J.Super. 67, 87, 663 A.2d 643 (Ch.Div.1995). Thus, even a finding of literal accuracy will not bar a conclusion that a misleading or deceptive statement violates the Consumer Fraud Act. *See id.* at 85, 663 A.2d 643. In that regard, the *Miller* Court explained,

> To determine whether an advertisement or solicitation makes a false or misleading representation, *the court must consider the effect that the advertisement, taken as a whole, would produce on one with an ordinary and unsuspecting mind.* A court must consider the implications of an advertisement because, if it is designed to deceive the reader, an advertisement 'may be completely misleading' even if 'every sentence separately considered is literally true.' ... Taking an advertisement or solicitation as a whole means considering not only what it states literally, but also what it reasonably implies."

*Id.* (citations omitted) (emphasis added).

Initially, the Court notes that Plaintiffs have expressly stated that they may likely prevail on the issue of class certification without evidence of Perdue's actual practices and do not intend to use such evidence other than on reply. Pls' Letter June 21 Letter at 3; Pls' July 26 Letter. Plaintiffs' asserted need to present evidence of Perdue's actual chicken-raising practices in reply to Perdue's opposition to a class certification motion is, at best, speculative. Pls' July 26, 2013 letter. At worst, it is an effort to avoid the rules by introducing new evidence at the reply stage. This is especially so where, as here, Perdue has expressly represented to the Court that it will not present evidence of or argument on whether its chickens are in fact humanely raised in its opposition. Perdue July 24 Letter.

Indeed, the Court is at a loss to understand how the actual chicken-raising practices will be implicated at the class certification stage. One of the threshold questions in deciding a case under the NJCFA is whether a statement has the capacity to mislead the average or reasonable consumer. Plaintiffs must establish at the class certification stage that the class members share a uniform understanding of the phrases "Humanely Raised" and "USDA Process Verified" based on the labels themselves. *See Miller,* 284 N.J.Super. at 85, 663 A.2d 643; *see also Barry v. Arrow Pontiac, Inc.,* 100 N.J. 57, 69, 494 A.2d 804 (1985) (The question under the NJCFA is "whether the ad itself is misleading to the average consumer ..."). This is so because consumers would not know of the actual underlying practices and would have only the alleged misrepresentations before them.

**\*7** Statements may be actionable under the NJCFA even if they are true. Thus, Plaintiffs may have a viable cause of action under the NJCFA regardless of Perdue's practices, i.e., even if Perdue's chickens are "Humanely Raised," as long as Plaintiffs can show that the ads themselves are misleading. The Court therefore finds that discovery into Perdue's actual practices is not relevant or necessary at this early stage of litigation.

Finally, the Court is not persuaded that Plaintiffs' need merits discovery to craft a closedended survey regarding Perdue's actual-practices for purposes of class certification. *See, e.g.,* Pl' June 21 Letter at 4–6. The Court has already determined that Perdue's actual chicken-raising practices need not be implicated at the class certification stage since under the NJCFA Plaintiffs must establish a common understanding of the "Humanely Raised" and USDA Process Verified" labels based on consumer perception of the labels themselves. *See supra* at 12. Thus, any survey that Plaintiffs intend to rely on for purposes of class certification should similarly relate to the consumer perception of the labels.

**IV. CONCLUSION**

For the reasons set forth above, and for good cause shown,

**IT IS on this 7th day of November, 2013,**

**ORDERED** that discovery in this matter shall be bifurcated into two phases: (1) discovery limited to issues necessary to address whether class certification is appropriate (the "class phase"); and (2) discovery on the substantive matters regarding the merits of the parties' claims and defenses (the "merits phase"); and it is further

**ORDERED** that a telephone status conference will be held before the undersigned on **November 26, 2013 at 11:30 a.m.** Plaintiffs shall initiate the call; and it is further

**ORDERED** that the parties shall meet and confer on appropriate discovery and class certification briefing schedules in conformance with this Order and submit the schedule to the Court three days prior to the telephone status conference.

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 5977361

**End of Document**                                 © 2025 Thomson Reuters. No claim to original U.S. Government Works.