# EXHIBIT Q

2012 WL 686709
Only the Westlaw citation is currently available.
United States District Court,
N.D. Illinois,
Eastern Division.

Mike HARRIS and Jeff Dunstan, individually and on behalf of a class of similarly situated individuals, Plaintiffs,
v.
COMSCORE, INC., a Delaware Corporation, Defendant.

No. 11 CV 5807.
|
March 2, 2012.

**Attorneys and Law Firms**

Jay Edelson, Ari Jonathan Scharg, Chandler Randolph Givens, Rafey S. Balabanian, Steven W. Teppler, Edelson McGuire, LLC, William Charles Gray, Chicago, IL, for Plaintiffs.

Andrew H. Schapiro, Stephen A. Swedlow, Quinn Emanuel Urquhart & Sullivan, LLP, Amanda S. Williamson, Emanuel Urquhart & Sullivan LLP, David Zev Smith, Leonard Ernest Hudson, Reed Smith LLP, Mark William Wallin, Paul F. Stack, Stack & O'Connor Chartered, Chicago, IL, Michael G. Rhodes, Ray A. Sardo, Whitty Somvichian, Cooley Godward Kronish LLP, San Francisco, CA, for Defendant.

**MEMORANDUM OPINION and ORDER**

YOUNG B. KIM, United States Magistrate Judge.

*1 In this putative class action, Plaintiffs Mike Harris and Jeff Dunstan allege that comScore, Inc. ("comScore") improperly collected and disseminated personal information belonging to them and a class of similarly situated individuals. They claim that comScore violated the Stored Communications Act, 18 U.S.C. § 2701(a) (1) and (2), the Electronic Communications Privacy Act, 18 U.S.C. § 2511(1)(a) and (d), the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(2)(C), the Illinois Consumer Fraud and Deceptive Practices Act, 815 Ill. Comp. Stat. Ann. 505/1 (2007), and was unjustly enriched by its actions. This matter is before the court on the motion of comScore to bifurcate discovery into two phases—the first relating to class certification, and the second relating to the merits—and to stay discovery on the merits until further order of the court. For the following reasons, the motion is granted:

**Facts and Procedural History**

Plaintiffs allege that comScore, an Internet market research company, induces individuals to download and install its software by "bundling" it with free items such as screensavers, games, and third-party computer applications like CD burning software or greeting card templates. (R. 1, Compl.¶¶ 13, 33.) After a user installs the comScore software, the software surreptitiously

collects information about the user's online activity, scans some of the user's computer files, and transmits the information to comScore's servers. (*Id.* at ¶¶ 5, 9.) comScore then aggregates the data it mines from the individual users for the purpose of developing market research reports, which it sells to its clients. (*Id.* at ¶ 25.)

Plaintiffs allege that they, as well as a class of similarly situated individuals, were misled by comScore's Terms of Service ("ToS"). (*Id.* at ¶ 37.) They allege that in some cases, comScore's ToS display screens do not refer to comScore's full license agreement (*Id.* at ¶ 38), and in other cases, do not adequately alert consumers to a link containing comScore's license agreement (*Id.* at ¶ 40). They further allege that comScore's ToS and Privacy Policy are incomplete because they fail to disclose pertinent information such as the types of modifications that the comScore software will make to the user's computer settings, the breadth of personal data that the software will collect from the user's computer, and the possibility that the installation of the software will result in comScore scanning files on computers found on the user's local networks. (*Id.* at ¶¶ 7, 10, 11, 37, 51.) Moreover, Plaintiffs allege that the comScore software, once installed, is difficult to remove. (*Id.* at ¶¶ 57, 58.)

Approximately two million internet users have installed comScore's software. (*Id.* at ¶¶ 31, 67, 70.) Harris alleges that when he downloaded a free screensaver, he unwittingly installed comScore's software, but did not agree to comScore's ToS or understand that the screensaver was bundled with comScore's software. (*Id.* at ¶¶ 67–69.) Harris alleges that he was able to uninstall the comScore software from his Macintosh computer but only after "conducting hours of diligent research." (*Id.* at ¶ 68.) Dunstan alleges that when he downloaded a free greeting card template it was secretly bundled with comScore's software. (*Id.* at ¶ 70.) Dunstan alleges that his computer, which ran the Windows operating system, was "debilitated" by the comScore software. (*Id.* at ¶¶ 70, 71.) Dunstan alleges that he had to purchase and use a $40 anti-virus software to remove the comScore software and restore his computer's functionality. (*Id.* at ¶ 73.)

**\*2** Pursuant to Federal Rules of Civil Procedure 23(b)(2) and (b) (3), Plaintiffs brought this action on behalf of themselves and all other persons similarly situated. They seek to represent a class consisting of "all individuals and entities in the United States that have had comScore's surveillance software ("Surveillance Software") installed on their computer(s) and a Subclass of all individuals and entities in the United States that have incurred costs in removing the Surveillance Software." (R. 2, Pls.' Mot. to Certify Class at 2.)

Harris[1] propounded his first set of interrogatories and document requests to comScore in December 2011. (R. 67–1, 67–2.) comScore characterizes these requests as "sweeping and intrusive ... encompassing virtually all aspects of comScore's business." (R. 67, Def.'s Mem. in Support of Bifurcation at 1.) comScore seeks to delay responding to these requests except as they relate to class certification issues. (*Id.* at 11.) To that end, comScore has agreed to respond to the interrogatories and requests for production that it believes relate to class certification issues. It has already produced the source code for the software in dispute, including the source code for its "RK Verify" software, which comScore describes as the software "that confirms that consumers have viewed and agreed to comScore's Terms of Service before installing the software." (*Id.* at 2.)

**Analysis**

comScore argues that it would be inefficient and wasteful to conduct merits discovery before the assigned District Judge rules on the pending class certification motion. comScore predicts that if class certification is denied, Plaintiffs will settle or voluntarily withdraw their complaint because the statutory damages at issue—maximum $1,000 for Harris and $1,040 for Dunstan—are meager. In that event, any merits discovery already performed would be a wasted, expensive effort. If, on the other hand, the court certifies a class or classes, the certification order will clarify the issues to be litigated on the merits and will thereby narrow the scope of merits discovery. comScore suggests that the court might certify a class limited to Macintosh users or limited to Windows users because the comScore software for the two operating systems differs for at least two reasons: (1) comScore sold the data it collected from Windows users, but not the data collected from Macintosh users (*see* R. 59, Ans. at ¶ 38); and (2) comScore's software for Windows did not authorize data collection from local networks, though its software for Macintosh did allow limited connection to computers networked with its Macintosh users (*see id* .¶ 10). comScore suggests that if the court certifies a class limited to either group of users, discovery on the merits relating to the other group would be rendered irrelevant and wasteful.

Harris v. comScore, Inc., Not Reported in F.Supp.2d (2012)

Plaintiffs disagree. They argue that bifurcated discovery will delay the litigation. They are particularly sensitive to any delay induced by comScore because of comScore's repeated praise of the "rocket docket" of Virginia, its preferred venue. Secondly, they argue that bifurcation will require increased judicial supervision because the parties will disagree about the permissible scope of class certification discovery. Third, they argue that comScore has not met its burden of establishing "good cause" for a protective order delaying merits discovery.

**\*3** "The Federal Rules of Civil Procedure give magistrate judges broad discretion in resolving discovery disputes." *Heyman v. Beatrice Co., Inc.,* No. 89 C 7381, 1992 WL 245682, at \*2 (N.D.Ill. Sept.23, 1992). That discretion extends to decisions to bifurcate discovery. *See Ocean Atlantic Woodland Corp. v. DRH Cambridge Homes, Inc.,* No. 02 C 2523, 2004 WL 609326, at \*2 (N.D.Ill. March 23, 2004) ("[w]hether to bifurcate discovery is a matter committed to the discretion of the trial court"). Though the Federal Rules of Civil Procedure do not explicitly provide for bifurcated discovery, the 2003 Advisory Committee Notes to Rule 23 recognize that bifurcation is often appropriate: "it is appropriate to conduct controlled discovery ... limited to those aspects relevant to making the certification decision on an informed basis." Fed.R.Civ.P. 23 Advisory Committee's Notes. In deciding motions to bifurcate merits discovery from class certification discovery, courts consider the following factors: (1) expediency, meaning whether bifurcated discovery will aid the court in making a timely determination on the class certification motion, *see Plummer v. Chicago Journeyman Plumbers' Local Union No. 130, U . A.,* 77 F.R.D. 399, 402 (N.D.Ill.1977); (2) economy, meaning "the potential impact a grant or denial of certification would have upon the pending litigation," *see Gonzalez v. Pepsico, Inc.,* No. 06–2163–KHV, 2007 WL 1100204, at \*3 (D.Kan. April 11, 2007), and whether the definition of the class would "help determine the limits of discovery on the merits," *see American Nurses' Assoc. v. State of Illinois,* 1986 WL 10382, at \*3 (N.D.Ill. Sept.12, 1986); and (3) severability, meaning whether class certification and merits issues are closely enmeshed, *see Gray v. First Winthrop Corp.,* 133 F.R.D. 39, 41 (N.D.Cal.1990).

An evaluation of these factors leads to the conclusion that bifurcation of discovery is the more sensible approach to discovery in this particular case. Proceeding with merits discovery, which may well involve the review of millions of documents not directly relevant to the issues of class certification, may delay the parties' submission of supplemental briefing on the class certification issue. Any delay would frustrate the court's effort to certify the action as a class action "[a]t an early practicable time," as is mandated by Rule 23(c)(1)(A). For this reason, the Manual for Complex Litigation counsels that "[d]iscovery relevant only to the merits delays the certification decision and may ultimately be unnecessary." Manual for Complex Litigation (Fourth) § 21.14 (2011). Regarding this expediency concern, Plaintiffs do not address whether bifurcation will result in a speedier determination of the class certification issue, but rather counter that bifurcation will significantly delay the resolution on the merits. This argument fails because bifurcated discovery will not take significantly more time than would non-bifurcated discovery. The parties' report of their Rule 26(f) planning meeting specifies that non-bifurcated discovery should take 10 months. (R. 60, Report of the Pty.'s Planning Meeting at 3.) This is approximately the same total length of time as comScore envisions for bifurcated discovery, excluding the pause while the assigned District Judge considers the fully-briefed class certification motion-a required pause before reaching the merits of the case. Moreover, if a class is certified, the definition of "that class should help determine the limits of discovery on the merits," *American Nurses' Assoc.,* 1986 WL 10382 at \*3, which will save time as the parties move forward with the litigation. Overall, the potential for a modest delay in reaching resolution on the merits does not outweigh the court's obligation under Rule 23(c) to resolve the class certification issue 7F'at an early practicable time."

**\*4** Secondly, considerations of economy weigh in favor of bifurcating discovery in this case. As comScore points out, the limited statutory damages available to Plaintiffs are likely an insufficient motivation to litigate in the absence of class certification. Notably, Plaintiffs do not argue that they would pursue the merits as individual plaintiffs. Instead, they argue that economy is not an appropriate consideration before the court. (R. 70, Pls.' Resp. at 7.) Two treatises disagree with Plaintiffs on this point. According to the Manual for Complex Litigation, "in cases that are unlikely to continue if not certified, discovery into aspects of the merits unrelated to certification ... can create extraordinary and unnecessary expense and burden." Manual for Complex Litigation at § 21.14. Similarly, McLauchlin on Class Actions summarizes that "[c]ourts are more likely to decline requests to stay pure merits discovery when the nature of the putative representative's claims suggests that it would continue to prosecute individual claims if certification is denied," which suggests that courts are indeed more likely to grant requests to stay merits discovery when the nature of the putative representative's claims indicates that the claimant would *not* pursue their claims if certification is denied. *See* McLauchlin on Class Actions (Eighth) § 3:10 (2011). In this case, bifurcation of discovery will be economical not only if certification is denied, but also if it is approved. As discussed above, if comScore's averments about the differences between its Macintosh and Windows software are borne out by discovery, the court might certify a limited class. Waiting until the court has made that determination may avoid needless discovery into issues that are ultimately not relevant to the litigation.

Harris v. comScore, Inc., Not Reported in F.Supp.2d (2012)

The final factor—the severability of class certification issues from merits issues—also points towards bifurcation of discovery. Though the "boundary between a class determination and the merits may not always be easily discernible," *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130, U.A.,* 657 F.2d 890, 895 (7th Cir.1981), it is possible to draw general lines in this case. Discovery relevant to class certification will focus on the prerequisites for class actions provided by Rule 23(a): (1) numerosity of party plaintiffs; (2) commonality of questions of law and fact; (3) typicality of the representative parties' claims and defenses to those of the class; and (4) adequacy of representation. Fed.R.Civ.P. 23(a). Regarding numerosity, the inquiry is whether "a class approach would be useful to avoid the practical problems of trying to join many named plaintiffs or otherwise clog the docket with numerous individual suits," *Eggleston,* 657 F.2d at 895, so certification discovery will seek to determine the approximate number of potential members of the class. Regarding commonality, the inquiry is whether "there appear to be common questions of law or fact." *Id.* Here, the commonality prong will likely turn on whether the putative class members' consent, and the scope of consent, is subject to evaluation on a class-wide basis, and whether comScore's adherence to the scope of consent is subject to analysis on a class-wide basis. The third prong, typicality, "requires a showing, not unrelated to commonality, that others suffer from similar alleged grievances" of Plaintiffs. *Id.* at 896. Here, the typicality prong will turn on whether Harris' and Dunstan's alleged experiences downloading and removing the comScore software are similar to those of the putative class. Lastly, the adequacy prong asks whether "the named parties are qualified and capable of fully pursuing the common goals of the class without collusion or conflicts of interests." *Id.*

**\*5** In this case, the following issues are not relevant to the class certification analysis because they do not touch on any of the four prongs of Rule 23(a): (1) the development of the comScore software; (2) internal comScore emails; (3) comScore's relationships with its bundling partners (excluding comScore's agreements with bundling partners to obtain consent from prospective comScore users); and (4) comScore's relationships with its clients. To the extent that class certification matters are tightly intertwined with merits discovery, comScore must produce the information and/or documents requested so that Plaintiffs may develop their arguments relevant to class certification. While Plaintiffs are likely correct that bifurcation will result in more active judicial supervision, that alone is not sufficient to deny comScore's motion.

Turning now to the specific interrogatories and requests for production currently at issue, this court concludes that comScore must answer the following requests as they pertain to the certification issues: (1) Interrogatories 1–5, 11 (with limitation), 15–17, and 22; and (2) Requests for Production ("RFP")1.[2] Interrogatories 1–5 and RFP 1 seek general information about comScore's process of answering interrogatories and RFPs. comScore must respond to these requests to the extent they relate to the Interrogatories and RFPs that comScore has agreed to answer and is ordered to answer.

Interrogatory 11 seeks discovery about the types of data that third-party entities purchased, specified by the purchasers. Plaintiffs argue that this discovery is necessary to establish "whether the class members suffered damages and, if so, whether such damages predominate ... or are incidental." (R. 70, Pls.' Resp. at 10.) This court agrees that whether the members of the proposed classes suffered similar damages is relevant to the issue of commonality, and further agrees that whether comScore sold similar types of panelist data is relevant to the issue of whether comScore's alleged breach of the putative class members' scope of consent is subject to evaluation on a class-wide basis. But, the identities of comScore's clients are not relevant to the class certification analysis. Defendant is ordered to answer this interrogatory without having to identify the third-party purchasers.

Interrogatory 15 seeks information about comScore's source code control and source code library retention policies and practices. comScore argues that the source code it has agreed to produce to Plaintiffs will allow them to "test their core allegations on the merits while also addressing the central issues on class certification." (R. 67, Def.'s Mem. in Support of Bifurcation at 2 .) But the information sought by Interrogatory 15 may be necessary to assess the integrity of comScore's source code.

Interrogatories 16 and 17[3] ask comScore to identify and describe each type of information that the comScore software "monitors, collects, retains, and/or transmits" from the Windows and Macintosh panelists. Whether comScore collected the same, or substantially the same, types of content from the panelists is relevant to the commonality prong of the class certification analysis. Interrogatory 22 seeks factual information relating to comScore's position that class certification is inappropriate in this case. This interrogatory clearly seeks information directly related to the class certification issues.

**\*6** The remaining interrogatories (9, 10 and 18–21) and RFPs (3–12, 14, 16, 17, 19, 20, 29–33, 36–39 and 44–45) are outside

the scope of class certification discovery and are stayed pending resolution of the class certification issues. Interrogatories 9 and 18 and RFPs 4, 9–12, 31–33, and 37, seek discovery about comScore's "bundling partners" and its "Trees for the Future" program. comScore's bundling partners are the entities that offer comScore's software in conjunction with their own free software applications. (R. 1, Compl. at ¶ 13.) comScore's Trees for the Future program induces Internet users to become panelists in exchange for having trees planted. (R. 70, Pls.' Resp. at 12.) comScore's relationships with third-parties are not relevant to the issues of numerosity, commonality, typicality, and adequacy of representation. To the extent that Plaintiffs believe that responses to these Interrogatories and RFPs would address issues of consent for the panelists who obtained the comScore software through a bundling partner or the Trees for the Future program, they are unnecessary because comScore has already agreed to produce that information in response to Interrogatories 13 and 14 and RFPs 15 and 24–26. (R. 67, Def.'s Mem. in Support of Bifurcation at 11 n. 6.) Plaintiffs will also be able to explore comScore's methods of obtaining consent from prospective panelists by examining the source code and RK Verify software.

Interrogatory 10 seeks discovery about the purchasers of comScore's market research data. Plaintiffs argue that this discovery is necessary to establish "whether the class members suffered damages and, if so, whether such damages predominate ... or are incidental." (R. 70, Pls.' Resp. at 10.) As stated earlier this court agrees that whether the members of the proposed classes suffered similar damages is relevant to the issue of commonality but the identities of comScore's clients are not relevant to the certification analysis.

Interrogatory 19 and RFP 8 seek information related to comScore's investigation and termination of its Macintosh panel. Plaintiffs argue that they need this discovery to establish whether injunctive relief is appropriate. But these requests are overly broad for that purpose. For example, Interrogatory 19 requests that comScore describe its "investigation of the MAC PANEL, INCLUDING the reasons for its ultimate termination, and IDENTIFY ALL DOCUMENTS RELATING TO such investigation." Similarly, RFP 8 requests all documents and ESI relating to the investigation and termination of the Macintosh panel. How comScore investigated its Macintosh panel and its reasons for terminating it are not relevant to the appropriateness of injunctive relief in this case. If Plaintiffs need discovery to verify comScore's termination of the Macintosh panel, they should propound a more limited request to that end.

Interrogatory 20 and RFP 44 seek discovery about comScore's public relations response to the litigation. comScore's efforts to manage its public relations are not relevant to the Rule 23 prerequisites for class certification. Interrogatory 21, which seeks discovery about comScore's affirmative defenses, goes to the merits and is not relevant to class certification.

**\*7** RFPs 3, 5–7, and 14 seek information about comScore's development of its software. This request is unduly burdensome and unlikely to yield discovery relevant to the certification issues. The members of the putative class were not impacted by the development of comScore's software, but by the software itself.

RFPs 16, 17, 19, 20, 28,[4] 36, and 38 seek communications between comScore and its employees on a variety of topics. At this stage in the litigation, Plaintiffs need to establish that comScore's software impacted the putative class members in a common manner. comScore's internal communications are less relevant to that issue than how the software actually impacted the putative class. Plaintiffs have access to the source code, which, in conjunction with the discovery responses mandated in this order, should demonstrate how the software impacted the members of the putative class.

RFPs 27,[5] 29, and 30 seek documents, ESI, and communications relating to comScore's use and sale of information personal to Harris and other panelists. This court agrees with Plaintiffs that whether comScore sold similar types of personal information of other panelists is relevant to commonality, and whether comScore sold Harris's personal information is relevant to typicality. However, as framed, the scope of these requests are overly broad as they would include comScore's contracts and contract negotiations with its clients, neither of which is relevant to the Rule 23 analysis. Furthermore, comScore's answer to Interrogatory 11 should provide Plaintiffs with information on the types of personal data comScore sold to others.

RFP 45, which seeks information about comScore's liability insurance, is also not relevant to the class certification issues. However, based on the parties' joint statement in their Report of the Parties' Planning Meeting, comScore should have produced a copy of the relevant policies on December 7, 2011, pursuant to Federal Rule of Civil Procedure 26(a)(1)(A)(iv).[6] (R. 60 at 1.)

**Conclusion**

For the foregoing reasons, comScore's motion to bifurcate discovery is granted. Discovery on the merits is stayed until after the court rules on Plaintiffs' motion to certify the action as a class action. comScore is ordered to respond to the written discovery requests as detailed herein by March 23, 2012.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 686709

Footnotes

| | |
|---|---|
| 1 | The record does not explain why Dunstan's name does not appear on the written requests for discovery but this ruling applies to all parties in this case. |
| 2 | comScore has agreed to respond to Interrogatories 6–8, and 12–14, and Requests for Production 2, 13, 15, 18, 21–26, 34, 35, and 40–42. (R. 67, Def.'s Mem. in Support of Bifurcation at 10 n. 5 and 11 n. 6.) The parties have also agreed to a process for addressing Interrogatory 23 and RFP 43, which relate to expert reports and discovery. (*Id.* at 15 and R. 70, Pls.' Resp. at 13 n. 5.) |
| 3 | According to comScore, its commitment to produce the relevant source code "addresses Plaintiffs' Requests for Production Nos. 2, 27–28, and Interrogatories 16 and 17." (R. 67, Def.'s Mem. in Support of Bifurcation at 10 n. 5.) This court disagrees in regards to Interrogatories 16 and 17. While the source code would likely enable Plaintiffs to access the information sought by Interrogatories 16 and 17, Plaintiffs suggest that having to "go fish" through the code is burdensome. (R. 70, Pls.' Resp. at 14.) Because Interrogatories 16 and 17 clearly relate to class certification issues, Plaintiffs are entitled to that discovery now. |
| 4 | According to comScore, its commitment to produce the relevant source code "addresses Plaintiffs' Requests for Production ... 27–28." (R. 67, Def.'s Mem. in Support of Bifurcation at 10 n. 5.) Because RFP 28 also requests communications between comScore and its employees, the source code is not responsive. |
| 5 | According to comScore, its commitment to produce the relevant source code "addresses Plaintiffs' Requests for Production ... 27–28." (R. 67, Def.'s Mem. in Support of Bifurcation at 10 n. 5.) In fact, RFP 27 requests documents and ESI relating to agreements between comScore and the panelists. The source code, alone, is therefore not responsive to RFP 27. |
| 6 | Because the parties have not provided the court with substantive arguments regarding RFP 39, the court is unable to determine whether this request is relevant to the class certification or merits issues. The parties should meet and confer in regard to RFP 39. |

End of Document                          © 2025 Thomson Reuters. No claim to original U.S. Government Works.