UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| LEON WEINGRAD, individually and on behalf of a class of all persons and entities similarly situation )<br><br>Plaintiff, )<br><br>v. )<br><br>QUOTEWIZARD.COM, LLC )<br><br>Defendant. ) | C.A. NO. 1:25-cv-00002-YK<br>Judge: Hon. Jennifer P. Wilson |

## <u>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT QUOTEWIZARD.COM, LLC'S MOTION TO COMPEL ARBITRATION</u>

Defendant QuoteWizard.com, LLC ("QuoteWizard") submits this memorandum of law in support of its Motion to Compel Arbitration. QuoteWizard moves this Court to compel Plaintiff Leon Weingrad's ("Plaintiff") claims to arbitration and dismiss and/or stay this action.

1

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................II

I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY...................1

II.  QUESTIONS PRESENTED: ..........................................................5

III.  LEGAL ARGUMENT...................................................................6

IV.  ARGUMENT.............................................................................8

    A.  Plaintiff's Claims are Subject to Mandatory Arbitration. ....................8

    B.  Plaintiff entered a Valid and Enforceable Agreement. .......................10

    C.  The Arbitration Agreement Contains a Valid Delegation Clause. .....14

    D.  Plaintiff's Claims Fall Within the Scope of the Arbitration Agreement. ...............................................................................15

    E.  Arbitration is Required to Proceed on an Individual Basis, and Plaintiff's Class Claims Must be Dismissed. .....................................17

    F.  Plaintiff manufactured his own harm, and therefore cannot recover from QuoteWizard.................................................................19

V.  CONCLUSION...........................................................................20

# TABLE OF AUTHORITIES

## Cases

*Ackley v. Cheesecake Factory Restaurants, Inc.*,
CV 20-5983, 2021 WL 3161487 (E.D. Pa. July 26, 2021) ..................................8

*Alexander v. Anthony Int'l, L.P.*,
341 F.3d 256 (3d Cir. 2003) .................................................7

*Am. Eagle Outfitters v. Lyle & Scott Ltd.*,
584 F.3d 575 (3d Cir. 2009) ...............................................13

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011)..............................................6, 9, 17

*Bekele v. Lyft, Inc.*
199 F. Supp. 3d 284 (D. Mass. 2016), aff'd, 918 F.3d 181 (1st Cir.
2019) .....................................................................12

*Blair v. Scott Specialty Gases*,
283 F.3d 595 (3d Cir. 2002) ................................................7

*Carroll v. Sparks*,
218 A.2d 517 (D.C. 1966) ...............................................14

*Chilutti v. Uber Techs., Inc.*,
300 A.3d 430 (Pa. Super. Ct. 2023), *appeal granted*, 325 A.3d 446
(Pa. 2024).................................................................10

*Clapper v. Amnesty Int'l USA*,
133 S.Ct. 1138 (2013)......................................................19

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985)........................................................7

*Dukes v. Sai Fort Myers B, LLC*,
No. 2:14-CV-287-FTM-38, 2015 WL 3650804 (M.D. Fla. June 11,
2015) .....................................................................13

*Epic Systems Corp. v. Lewis*,
584 U.S. 497 (2018)..................................................................................6

*First Options of Chicago, Inc. v. Kaplan*,
514 U.S. 938 (1995)................................................................................10

*Gilmer v. Interstate/Johnson Lane Corp.*,
500 U.S. 20 (1991)................................................................................6, 7

*Happy v. Marlette Funding, LLC*,
No. CV 23-265, 2024 WL 3744234 (W.D. Pa. Aug. 9, 2024)...........................13

*HealthplanCRM, LLC v. AvMed, Inc.*,
458 F.Supp.3d 308 (W.D. Pa. 2020)....................................................10, 11, 13

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
586 U.S. 63 (2019)..................................................................................9

*Hine v. LendingClub Corp.*,
No. 2:22-CV-00362-CRE, 2022 WL 16950409 (W.D. Pa. Nov. 15, 2022) ........................................................................................................10

*Lamps Plus, Inc. v. Varela*,
587 U.S. 176 (2019)................................................................................18

*Liptak v. Accelerated Inventory Mgmt., LLC*,
2021 WL 650514 (W.D. Pa. 2021)............................................................12

*Lukens Steel Co. v. United Steelworkers of Am. (AFL-CIO)*,
989 F.2d 668 (3d Cir. 1993) .....................................................................17

*Mastrobuono v. Shearson Lehman Hutton, Inc.*,
514 U.S. 52 (1995)..................................................................................16

*Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983)................................................................................7, 9

*Rent-A-Center, West, Inc. v. Jackson*,
561 U.S. 63 (2010)..................................................................................9

*Singh v. Uber Techs. Inc.*,
939 F.3d 210 (3d Cir. 2019) .....................................................................15

*Somerset Consulting, LLC v. United Cap. Lenders, LLC*,
    832 F. Supp. 2d 474 (E.D. Pa. 2011) ...................................................18

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
    559 U.S. 662 (2010)................................................................................6, 17

*Stoops v. Wells Fargo Bank, N.A.*,
    197 F. Supp. 3d 782 (W.D. Pa. 2016)..................................................19

*Thibodeau v. Comcast Corp.*,
    912 A.2d 874 (Pa. Super. 2006) ...........................................................8, 18

*Waters v. Express Container Servs. of Pittsburgh, LLC*,
    284 A.3d 1217 (Pa. Super. Ct. 2022).....................................................8

*Zakresky v. Graduate Sch. of Figurative Art of New York Acad. of
    Arts*,
    24 Misc.3d 1245(A), 899 N.Y.S.2d 64 (N.Y. Sup. Ct. 2009) ...........13

**Statutes**

9 U.S.C. § 2 .......................................................................................6, 9

9 U.S.C. § 3 .......................................................................................7

9 U.S.C. § 4 .......................................................................................7

47 U.S.C. § 227(b)(1)(A)(iii) ...........................................................4

47 U.S.C. § 227(C)(5), & ..................................................................4

FAA .....................................................................................................6

**Other Authorities**

47 C.F.R. § 64.1200(c)......................................................................4

## I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On December 13, 2024, Plaintiff visited QuoteWizard's website: https://ratekick.com/form/ (the "Website").  Plaintiff entered certain information into Rate Kick's Website to receive insurance quote information.  To receive quotes, Plaintiff was required to enter a telephone number ("Phone Number") on the Website to receive calls and text messages from QuoteWizard and its affiliates. Plaintiff entered the Phone Number into the Website.  Before submitting his information on the Website, Plaintiff was required to click the "Get My Auto Quotes" button. Below the "Get My Auto Quotes" button is a disclaimer that states:

> By clicking "Get My Auto Quotes" above, I provide my express written consent to receive calls and text messages, including for marketing purposes, from the companies selected above and any party calling or texting on their behalf at (503) 755-6495, including …using automated means…even if my number is listed on any company-specific, state, or federal Do-Not-Call list. I understand such calls and texts may transmit insurance quotes or seek additional insurance-related information from me.

*See* Declaration of Brock Thompson ("Decl."), ¶ 8; Decl. Exhibit A, Certificate of Authenticity for Web Leads.  The disclaimer further states "By clicking 'Get My Auto Quotes,' I am acknowledging that I have read, understand, and agree to this Web site's Privacy Policy and Terms of Use ." Decl. ¶ 9.   The words "Terms of Use" and "Privacy Policy" were active hyperlinks to the full text of the Website's Privacy Policy and Terms of Use policy, setoff by blue font. *See* Decl, ¶10; Decl. Exhibit B, Screenshot of Screenshot of Session Replay.  When Plaintiff filled in his

information, including his Phone Number, and clicked "Get My Auto Quotes" he

agreed to the following Terms of Use:

**Dispute Resolution, Governing Law, Waivers and Limitations**

YOU AGREE THAT ANY DISPUTE BETWEEN YOU AND US, INCLUDING WITHOUT
LIMITATION DISPUTES RELATING TO THE WEBSITES, CONTENT OR SERVICES
("DISPUTE"), SHALL BE FINALLY AND EXCLUSIVELY RESOLVED BY BINDING
INDIVIDUAL ARBITRATION ADMINISTERED BY THE AMERICAN ARBITRATION
ASSOCIATION ("AAA") IN ACCORDANCE WITH ITS CONSUMER ARBITRATION RULES.
DISPUTES WILL BE ARBITRATED AT A HEARING CONDUCTED IN CHARLOTTE, NORTH
CAROLINA; THE ARBITRATOR(S) SHALL HAVE NO AUTHORITY TO DEVIATE FROM THE
LAW, AND THE ARBITRATOR(S) SHALL MAKE ALL REASONABLE EFFORTS TO
EXPEDITE THE ARBITRATION PROCEEDINGS AND TO LIMIT DISCOVERY. **THIS MEANS
THAT YOU WILL NOT BE ABLE TO LITIGATE ANY SUCH DISPUTE IN COURT, AND
THAT YOU AGREE TO WAIVE YOUR RIGHT TO A JURY TRIAL.** YOU AGREE THAT
ANY DISPUTE WILL BE GOVERNED BY THE LAWS OF THE STATE OF NORTH CAROLINA
WITHOUT REGARD TO ANY CONFLICTS OF LAWS PROVISIONS. IF ANY MATTER
PROCEEDS IN COURT, INCLUDING POST-ARBITRATION CONFIRMATION
PROCEEDINGS, YOU AGREE TO THE EXCLUSIVE PERSONAL JURISDICTION BY, AND
VENUE IN, THE STATE AND FEDERAL COURTS LOCATED IN MECKLENBURG COUNTY,
NORTH CAROLINA, AND YOU WAIVE ANY OBJECTION TO SUCH JURISDICTION OR
VENUE.

You agree that no arbitration under this agreement shall be joined to an arbitration involving any
other party subject to this agreement. Arbitration must be on an individual basis. You may not join or
consolidate claims in arbitration or litigate in court or arbitrate any claims as a representative or
member of a class or in a private attorney general capacity.

You agree that any dispute or disagreement regarding the enforceability, applicability or
interpretation of any provision of this Agreement, including the provisions regarding dispute
resolution and arbitration, is a Dispute subject to the arbitration provisions herein and shall be
resolved by an arbitrator.

You also agree that any dispute or cause of action arising out of or related to the Websites, Services
or Content must be commenced within one year from the later of (1) when the dispute or cause of
action accrues or, (2) through the exercise of reasonable diligence you should have known about the
accrual of the cause of action. Otherwise, such cause of action is permanently barred.

*See* Decl., ¶¶ 9-13; Decl. Exhibit C, Terms of Use Agreement, pp. 2-3.

The "Dispute Resolution, Governing Law, Waivers and Limitations"

provision provides detailed information about the arbitration agreement including

the rules and governing law of the arbitration, how to initiate arbitration, location and procedures. *Id*.

In response to Plaintiff's Website submission, QuoteWizard contacted Plaintiff on December 13, 2024, using the Phone Number that Plaintiff provided on the Website. *See* Decl., ¶ 18. As part of QuoteWizard's recordkeeping, QuoteWizard utilizes ActiveProspect's TrustedForm.com to store the recorded session replay of users activity on the Website, to store the consent language generated after a user clicks "Get My Auto Quote," and to store the date and time that a website user visited the Website. *See* Decl., ¶ 14; Decl. Exhibit A. Per the Session replay—a screenshot of which is depicted below—Plaintiff entered the name Gary Williams into the Website. Plaintiff entered his Phone Number and clicked "Get My Auto Quotes." Under the "Get My Auto Quotes" button, the following disclaimer was provided: "By clicking 'Get My Auto Quotes' above, I provide my express written consent to receive calls and text messages, including for marketing purposes, from the companies selected above and any party calling or texting on their behalf at (503) 755-6495 including calls and texts made using automated means…even if my number is listed on any company-specific, state, or federal Do-Not-Call list."



Decl. Ex. B.

Plaintiff filed his complaint on January 2, 2025 ("Complaint"). *See* ECF 1. Plaintiff alleged that he did not provide QuoteWizard with his Phone Number—despite QuoteWizard's internal records proving that the Phone Number, which Plaintiff confirmed was his, was listed on his December 13, 2024 Website submission. *Id.* at ¶¶ 28, 34 & 55. Plaintiff further alleged that QuoteWizard violated 47 U.S.C. § 227(b)(1)(A)(iii), 47 U.S.C. § 227(C)(5), & 47 C.F.R. § 64.1200(c), by "sending or causing to be sent calls to the cellular telephones and other protected telephones of Plaintiff and [class] members…without their prior express written consent." *Id.* at ¶¶ 77 & 82

As part of QuoteWizard's investigation into Plaintiff's allegations, it confirmed that QuoteWizard contacted Plaintiff's Phone Number in response to a December 13, 2024 submission made on the Website. *See* Decl., ¶ 18. In the recorded call, Plaintiff initially identified himself as Joseph Arnold, then he revealed he was Leon Weingrad. Then, when the QuoteWizard representative asked again if this was Gary Williams, Plaintiff responded that his true name was Joseph Arnold. *See* Decl., ¶ 19.

Plaintiff is a professional plaintiff. He has filed **<u>eleven</u>** other TCPA cases in both the United States District Court for the Eastern District of Pennsylvania and the United States District Court for the Middle District of Pennsylvania. *See* Exhibit D, Weingrad Lawsuits Consecutively Paginated. Regarding Plaintiff's nine Eastern District of Pennsylvania cases, Plaintiff alleges his residential phone number begins with (267). *See,* e.g., *id.* at pg. 5, ¶ 20. In Plaintiff's two other cases venued in the Middle District of Pennsylvania, Plaintiff claims his residential phone number begins with (503). *See,* e.g., *id.* at pg. 111, ¶ 19.

## II.      <u>QUESTIONS PRESENTED:</u>

**Question**:   Should Plaintiff be compelled to arbitrate these claims on an individual basis pursuant to the valid, binding arbitration agreement contained in the applicable Terms of Use and Privacy Policy that Plaintiff executed on December 13, 2024?

*Suggested Answer: Yes.*

**Question**:    Should Plaintiff's claims be dismissed because Plaintiff manufactured his own harm and as a matter of law cannot recover from QuoteWizard?

*Suggested Answer:        Yes.*

## III.    <u>LEGAL ARGUMENT</u>

The Federal Arbitration Act ("FAA") codifies a strong federal policy in favor of enforcing arbitration agreements, including agreements to arbitrate statutory claims. *See* 9 U.S.C. § 2; *Epic Systems Corp. v. Lewis*, 584 U.S. 497, 505 (2018) ("The [FAA], this Court has said, establishes 'a liberal federal policy favoring arbitration agreements.'"); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24-25 (1991); *see AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (noting that the FAA's "principle purpose . . . is to ensure that private arbitration agreements are enforced according to their terms").

"[I]n Congress's judgment arbitration ha[s] more to offer than courts recognized – not least the promise of quicker, more informal, and often cheaper resolutions for everyone involved." *Epic Systems*, 138 S. Ct. at 1621; *see Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 685 (2010). Thus, "by agreeing to arbitrate a statutory claim, a party does not forego the substantive rights

afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Gilmer*, 500 U.S. at 26.

The FAA authorizes parties to compel arbitration by motion when adversary refuses to arbitrate as required by a valid arbitration agreement. 9 U.S.C. §§ 3, 4. The FAA "leaves no place for the exercise of discretion by a [trial] court but instead mandates that [trial] courts shall direct the parties to proceed to arbitration" on all claims covered under the agreement. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

Any doubts concerning the scope of arbitrable issues "should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). Courts, therefore, should "move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Id*. at 22.

Principles of state contract law control whether a valid arbitration agreement exists. *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 264 (3d Cir. 2003). "A federal court must generally look to the relevant state law on the formation of contracts to determine whether there is a valid arbitration agreement under the FAA." *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002). "Pennsylvania law concerning the enforceability of arbitration agreements is in accordance with Federal

law, requiring that arbitration agreements be enforced as written and allowing an arbitration provision to be set aside only for generally recognized contracted defenses such as duress, illegality, fraud and unconscionability" *Thibodeau v. Comcast Corp.*, 912 A.2d 874, 880 (Pa. Super. 2006). "Both Pennsylvania and federal law impose a strong public policy in favor of enforcing arbitration agreements." *Waters v. Express Container Servs. of Pittsburgh, LLC*, 284 A.3d 1217, 1221 (Pa. Super. Ct. 2022). "Pennsylvania applies the following two-part test to determine whether a claim must be arbitrated: 1) the court must first determine whether a valid agreement to arbitrate exists; and 2) if a valid agreement to arbitrate exists, the court must determine whether the dispute falls within the scope of the arbitration agreement." *Id.*

Where the right to a class proceeding or collective proceeding has been waived as part of an agreement to arbitrate, the FAA requires enforcement of that class waiver. *See Ackley v. Cheesecake Factory Restaurants, Inc.*, CV 20-5983, 2021 WL 3161487 (E.D. Pa. July 26, 2021).[1]

## IV.    <u>ARGUMENT</u>

### A.    Plaintiff's Claims are Subject to Mandatory Arbitration.

Under the FAA, an agreement to arbitrate, like the one in QuoteWizard's "Terms of Use", "shall be valid, irrevocable, and enforceable, save upon such

---

[1] Referenced unpublished decisions are attached hereto as Exhibits E-J

grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *Moses,* 460 U.S. at 24.  The FAA reflects "the 'fundamental principle that arbitration is a matter of contract.'" *AT&T*, 563 U.S. at 339 (quoting *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010)).  Because "arbitration is a matter of contract, courts must enforce arbitration contracts according to their terms." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 63 (2019).

The Supreme Court emphasized that "parties may agree to have an arbitrator decide gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy.  *Schein,* 586 U.S. at 67-68 (quoting *Rent-A- Center,* 561 U.S. at 68-69). "[I]f a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Schein,* 586 U.S. at 69.  To determine if there is a valid delegation, the court undertakes a limited inquiry into whether the parties "clearly and unmistakably" delegated the power to decide arbitrability to the arbitrator. *Id*.

Here, Plaintiff entered a valid Arbitration Agreement. The arbitration provision in the Terms of Use clearly delegates questions of the Arbitration Agreement's applicability and enforceability to the arbitrator (*i.e.* the AAA). Accordingly, Plaintiff should be compelled to arbitrate his claims against

QuoteWizard on an individual basis before the appropriate forum—AAA—and this case should be dismissed.

### B.    Plaintiff entered a Valid and Enforceable Agreement.

In determining the validity of arbitration agreements subject to the FAA, courts generally apply ordinary state law principles governing the formation of contracts. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). "While the enforceability of web-based agreements will often depend on a 'fact-intensive inquiry,' the Court may determine that a web-based agreement to arbitrate exists where notice of the agreement was reasonably conspicuous and manifestation of assent unambiguous as a matter of law." *Hine v. LendingClub Corp.,* No. 2:22-CV-00362-CRE, 2022 WL 16950409, at *4 (W.D. Pa. Nov. 15, 2022).

Concerning "browsewrap" agreements, like the type used by QuoteWizard, such arbitration agreements are enforceable where "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Chilutti v. Uber Techs., Inc.,* 300 A.3d 430, 444 (Pa. Super. Ct. 2023), *appeal granted,* 325 A.3d 446 (Pa. 2024).

In *HealthplanCRM, LLC,* the court found an arbitration agreement contained in browsewrap agreement was enforceable, provided conspicuous notice of the terms

of the agreement where the link was under the website's login boxes and the blue hyperlink to access the full "End-User Agreement" stood out against the white background of the log-in page, and appeared in a sentence which straightforwardly advised the user that "[u]se of [the website] constitutes acceptance" of the linked agreement. *See HealthplanCRM, LLC v. AvMed, Inc.*, 458 F.Supp.3d 308, 333 (W.D. Pa. 2020).

Here, the Website's Terms of Use, which contains the arbitration agreement, is reasonably conspicuous. Like the website layout in *Healthplan CRM, LLC*, the Terms of Use were in blue font against a bright white background immediately below the "Get My Auto Quotes" button. The non-hyperlinked text uses black font making it clear that the Terms of Use were hyperlinked. *See* Decl. ¶ 10; Decl. Exhibit B. Plaintiff affirmatively indicated that he had read, understood, and agreed to the Website's Terms of Use by clicking "Get My Auto Quotes." *Id.*

The Terms of Use containing the arbitration agreement was not "hidden" or "buried" on another screen: the disclosure language below the "Get My Auto Quotes" button conspicuously apprised Plaintiff by clicking "Get My Auto Quotes" he "acklowledge[d] that [he] ][had] read, underst[ood], and agree[d] to this Website's Privacy Policy and Terms of Use." *See* Dec, ¶ 9. The Terms of Use link opens to a page stating in large, capitalized font under the heading "Dispute Resolution, Governing Law, Waivers and Limitations," "YOU AGREE THAT

ANY DISPUTE BETWEEN YOU AND US…SHALL BE FINALLY AND EXCLUSIVELY RESOLVED BY BINDING INDIVIDUAL ARBITRATION…" It continues stating in large capitalized bold font "**THIS MEANS THAT YOU WILL NOT BE ABLE TO LITIGATE ANY SUCH DISPUTE IN COURT, AND THAT YOU AGREE TO WAIVE YOUR RIGHT TO A JURY TRIAL**." *See* Dec., ¶¶ 12-13. Ex. C, pp. 2-3. *See Liptak v. Accelerated Inventory Mgmt., LLC,* 2021 WL 650514, at *1 (W.D. Pa. 2021) (a borrower agreement not visible on the webpage but available through an un-underlined green hyperlink was reasonably conspicuous to enforce arbitration agreement contained in the hyperlinked documents); *see also Bekele v. Lyft, Inc.*, 199 F. Supp. 3d 284, 296–97 (D. Mass. 2016), aff'd, 918 F.3d 181 (1st Cir. 2019) (an arbitration agreement was prominently communicated where it displayed on a user's screen and, on the second page of the terms of service, the arbitration provision was set off by a large bold heading). Therefore, Plaintiff was provided reasonable notice of the Terms of Use, which required the arbitration of any claims against QuoteWizard.

As to the second test prong, Plaintiff also affirmatively accepted the Terms of Use and the agreement to arbitrate therein. Before clicking the "Get My Auto Quotes" button, Plaintiff represented that he "acknowledg[ed] that [he] [has] read, underst[ood], and agree[d] to this Website's Privacy Policy and Terms of Use." *See* Decl., ¶¶ 8-9; Decl. Exhibit B. Regardless of whether Plaintiff actually opened the

hyperlink to read the Terms of Use, Plaintiff is bound by them. "[I]n assessing whether a party manifested an intent to enter a web-based contract, the Court looks not to inward, subjective intent but, rather to the intent a reasonable person would apprehend in considering the parties' behavior." *HealthplanCRM*, *LLC*, 458 F. Supp. 3d at 334 (quoting *Am. Eagle Outfitters v. Lyle & Scott Ltd*., 584 F.3d 575, 582 (3d Cir. 2009)).  "An internet user need not actually read the terms and conditions or click on a hyperlink that makes them available as long as she has notice of their existence…whether the user actually reads the terms to which she assents is immaterial." *See Happy v. Marlette Funding, LLC,* No. CV 23-265, 2024 WL 3744234, at *6 (W.D. Pa. Aug. 9, 2024)(quotations omitted). By clicking the "Get My Auto Quotes" button, Plaintiff agreed to the Terms of Use—and the agreement to arbitrate contained therein.

While Pennsylvania and the Third Circuit are silent on the issue, other jurisdictions have found that a party to a contract who uses a fictitious name does not render the contract void. *See Zakresky v. Graduate Sch. of Figurative Art of New York Acad. of Arts*, 24 Misc.3d 1245(A), 899 N.Y.S.2d 64 (N.Y. Sup. Ct. 2009)("Blumatte's use of the name Robert Angona in the contracts with defendant, does not, in itself render the contracts void."); *Dukes v. Sai Fort Myers B, LLC*, No. 2:14-CV-287-FTM-38, 2015 WL 3650804 (M.D. Fla. June 11, 2015) (finding arbitration agreement enforceable even though defendant used a fictitious name in

13

the arbitration agreement); *Carroll v. Sparks*, 218 A.2d 517, 518 (D.C. 1966) ("A contract entered into under an assumed, fictitious, or representative name is generally valid and binding.").

Plaintiff submitted his information on the Website under the fictitious name Gary Williams. *See* Decl., ¶ 5. Plaintiff later used the false name Joseph Arnold twice when QuoteWizard called him in response to his submission through the Website. *See* Decl., ¶ 19. The facts are clear – Leon Weingrad (or Gary, or Joseph, or another false name) knowingly induced QuoteWizard into calling him by spoofing his IP Address to obscure his real location, submitting a fake name to the Website, and immediately brought suit against QuoteWizard in an attempt to receive compensation under the TCPA. Plaintiff cannot avoid the arbitration agreement contained in the Terms of Use by alleging the arbitration agreement was entered into using a fictitious name. When Plaintiff entered his Phone Number and fake name on the Website and clicked the "Get My Auto Quotes" button, Plaintiff entered a valid and binding arbitration agreement contained in the Terms of Use.

### C. The Arbitration Agreement Contains a Valid Delegation Clause.

Where there is "clear and unmistakable" evidence that the parties agreed to arbitrate arbitrability, the court cannot decide gateway questions unless a party specifically challenges the delegation clause and the court concludes that it is not enforceable. *See Singh v. Uber Techs. Inc.*, 939 F.3d 210, 215 (3d Cir. 2019).

Here, the arbitration agreement contained in the Terms of Use clearly contemplates issues of arbitrability being decided by the arbitrator, explicitly providing as follows: "You agree that any dispute or disagreement regarding the enforceability, applicability or interpretation of any provision of this Agreement, including the provisions regarding dispute resolution and arbitration, is a Dispute subject to the arbitration provisions herein and shall be resolved by an arbitrator." *See* Decl. ¶ 12; Decl. Exhibit C.

The Terms of Use evidence a clear intent to delegate the issue of arbitrability through its plain language. Because the arbitration agreement within the Terms of Use contains a delegation clause giving the arbitrator exclusive authority to decide issues relating to the applicability and enforcement of the arbitration agreement, it transfers the Court's power to decide arbitrability questions to the arbitrator. This should conclude the analysis in this forum, as questions regarding the scope of the arbitration agreement and its applicability to this dispute should be decided by the arbitrator.

### D. Plaintiff's Claims Fall Within the Scope of the Arbitration Agreement.

Notwithstanding the delegation clause, there is no serious dispute that the arbitration agreement covers Plaintiff's TCPA allegations. Plaintiff rests on his consent to be contacted at the Phone Number that he provided to QuoteWizard. The disclosure on QuoteWizard's website states "By clicking Get My Auto Quotes…I

consent to calls and text messages transmitting insurance quotes, or seeking related additional information from me, using an Automatic Telephone Dialing System or prerecorded or artificial voices." Plaintiff alleged that QuoteWizard called and texted his number in violation of the TCPA.  However, without admitting any liability for the alleged calls at issue, the only way QuoteWizard could have obtained Plaintiff's number is via Plaintiff consenting to being contacted by entering his number on the website and clicking the "Get My Auto Quotes" button after affirmatively clicking the "Select All" button to consent to contact by QuoteWizard, among others.  Therefore, Plaintiff's purported TCPA claims against QuoteWizard arise directly from his use of QuoteWizard's Website as contemplated by the Terms of Use he agreed to.

In evaluating the scope of validity and enforceable arbitration agreements, federal policy dictates that courts should strongly favor compelling arbitration. *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62 (1995).  Courts in the Third Circuit will compel arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *Lukens Steel Co. v. United Steelworkers of Am. (AFL-CIO)*, 989 F.2d 668, 672 (3d Cir. 1993). An arbitration clause is broad if it covers "all disputes arising out of a contract" and is a narrow clause if it covers only specific types of disputes.  Under a broad

arbitration provision—like the one here—a presumption of arbitrability applies and "only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *AT&T*, 475 U.S. at 649.

Plaintiff's TCPA claims directly arise out of his contacts with the QuoteWizard's website. They are accordingly within the scope of the arbitration agreement that Plaintiff accepted. This Court should dismiss this case and compel the parties to arbitration.

### E. Arbitration is Required to Proceed on an Individual Basis, and Plaintiff's Class Claims Must be Dismissed.

"Parties to an arbitration agreement may specify the issues they choose to arbitrate, may agree on a set of procedural rules to use during the arbitration, and may limit with whom they choose to arbitrate their disputes." *Stolt-Nielsen S.A.,.,* 559 U.S. 662, 664.. Consequently, "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party **agreed to do so**." *Stolt-Nielsen S.A.*, 559 U.S. at 664 (**emphasis added**). The Supreme Court held that "[c]ourts may not infer from an ambiguous agreement that parties have consented to arbitrate on a classwide basis." *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 189 (2019).

Here, although Plaintiff seeks class treatment in his Complaint, the arbitration agreement states:

"[y]ou agree that no arbitration under this agreement shall be joined to an

arbitration involving any other party subject to this agreement. Arbitration must be on an individual basis. You may not join or consolidate claims in arbitration or litigate in court or arbitrate any claims as a representative or member of a class or in a private attorney general capacity.."

*See* Decl., ¶¶ 12-13; Decl. Exhibit C.  Dismissal is the most efficient path forward.

*See Somerset Consulting, LLC v. United Cap. Lenders, LLC*, 832 F. Supp. 2d 474 (E.D. Pa. 2011) (granting motion to compel arbitration and dismissing case).

While Pennsylvania courts invalidate class action waivers contained in arbitration agreements where the clause would be unconscionable and class action litigation would be the only effective remedy, that is not the circumstance here. *See Thibodeau,*912 A.2d 874. There is nothing so unique about Plaintiff's claims against QuoteWizard that would warrant the invalidation of the class waiver and force QuoteWizard into a class action.  Plaintiff's claim is a consumer protection complaint against QuoteWizard for what Plaintiff alleges are unconsented calls and texts. AAA is well-suited to handle such complaints. Further, the TCPA awards up to $500 per violation, therefore, Plaintiff's damages are not so minor that Plaintiff is prohibited from presenting his claims in court or in arbitration on an individual basis. *Id.* Invalidating the class waiver that Plaintiff explicitly assented to would contradict the rules of the FAA and controlling case law, while unnecessarily clogging the docket and impeding what could be an expeditious, but equitable, ruling.

**F.    Plaintiff manufactured his own harm, and therefore cannot recover from QuoteWizard**

Plaintiff has filed **eleven** other TCPA actions. *See* Exhibit D. At minimum, he has two separate phone numbers on the do-not-call list, a number beginning with (267), and a number beginning with (503). Further, Plaintiff has a history of using fake names. During Plaintiff's call with QuoteWizard, he repeatedly claimed to have different names during the same call. At first, Plaintiff represented that he was not Gary Williams, and that his name was Joseph Arnold. Then he told the QuoteWizard he was Leon Weingrad.   When the QuoteWizard representative asked for clarification, he stated his name again was Joseph Arnold. *See* Decl., ¶ 19.  "It is well settled that a plaintiff cannot manufacture standing by choosing to make expenditures based on hypothetical future harm that is not certainly impending." *Stoops v. Wells Fargo Bank, N.A.*, 197 F. Supp. 3d 782, 801 (W.D. Pa. 2016) (quoting *Clapper v. Amnesty Int'l USA*, 133 S.Ct. 1138 (2013)). Where a plaintiff takes action to manufacture TCPA lawsuits, the plaintiff has not suffered an injury-in-fact and cannot recover. *Id.* at 801 (plaintiff lacked standing where, plaintiff had multiple cellphones used solely to receive telemarketing calls to recover money through TCPA lawsuits). Here, Plaintiff has used multiple phone numbers to manufacture TCPA cases. He also submitted his information on the Website using a false name and spoofed his IP address to obscure his real location likely to induce QuoteWizard into calling him in order to bring a TCPA action. *Id.*. ¶¶ 5 & 17. Since

Plaintiff manufactured his own harm by requesting that QuoteWizard call him, and has a history of using multiple phone numbers to generate TCPA actions, this case should be dismissed as Plaintiff has not suffered an injury-in-fact.

## V.      <u>CONCLUSION</u>

For the foregoing reasons, QuoteWizard respectfully requests this Court compel Plaintiff's claims to arbitration.

Respectfully submitted,

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

<u>*/s/ Elyse Cohen*</u>
Elyse Cohen (PA Bar Id. No. 320787)
Elyse.Cohen@nelsonmullins.com
Kevin Polansky (*Pro Hac Vice* forthcoming)
kevin.polansky@nelsonmullins.com
1000 Westlakes Drive, Suite 275
Berwyn, PA 19312
(610) 943-5354

*Counsel for Defendant QuoteWizard.com LLC*

Dated:  February 4, 2025

## <u>CERTIFICATE OF CONCURRENCE</u>

This Motion is made following the conference of counsel pursuant to L.R. 7-1, on February 3, 2025, via email where <u>concurrence</u> was denied by Plaintiff's counsel.

Dated: February 4, 2025          */s/ Elyse Cohen*
                                                Elyse Cohen

## <u>CERTIFICATE OF WORD COUNT COMPLIANCE</u>

This Motion complies with Local Rule 7.8(b), it contains 4,982 words.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this date.

Dated:          February 4, 2025                    */s/ Elyse Cohen*
                                                              Elyse Cohen