## **EXHIBIT D**

## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEON WEINGRAD, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| v. | |
| QUOTELAB, LLC. D/B/A DIRECTHEALTHINSURANCE | |
| Defendant. | |

## PLAINTIFF'S CLASS ACTION COMPLAINT

Plaintiff Leon Weingrad ("Mr. Weingrad"), by his undersigned counsel, for this class action complaint against Defendant QuoteLab, LLC d/b/a DirectHealthInsurance, as well as its present, former and future direct and indirect parent companies, subsidiaries, affiliates, agents and related entities, alleges as follows:

## I.    INTRODUCTION

1.    <u>Nature of Action</u>: "Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers,' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms,' *id.* § 2(9)." Krakauer v. Dish Network, L.L.C., 925 F.3d 643, 649 (4th Cir. 2019).

2.    "[T]he law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.'). . . . [P]rivate suits can seek either monetary or injunctive relief. [47 U.S.C. § 227(c)(5)]. . . . This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Id.* at 649-50.

3.    Plaintiff, individually and as class representative for all others similarly situated, brings this action against Defendant for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") for making telemarketing calls to numbers on the National Do Not Call Registry, including his own.

4.    Because telemarketing campaigns generally place calls to thousands or even millions of potential customers *en masse*, Plaintiff brings this action on behalf of a proposed

**Page 2**

nationwide class of other persons who received illegal telemarketing calls from or on behalf of Defendant.

## II.     PARTIES

5.   Plaintiff Weingrad is an individual who resides in the Eastern District of Pennsylvania.

6.   Defendant QuoteLab, LLC d/b/a DirectHealthInsurance is a Delaware LLC registered to do business in Pennsylvania.

## III.     JURISDICTION AND VENUE

7.   Jurisdiction. This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. 47 U.S.C. § 227; *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) because Plaintiff's claim for violations of the Pennsylvania Telemarketer Registration Act relates to the same telemarketing campaign as the TCPA claim.

8.   Personal Jurisdiction: The Court has general personal jurisdiction over Defendant QuoteLab, LLC d/b/a DirectHealthInsurance because it is a corporation registered by the Pennsylvania Secretary of State to do business in Pennsylvania. *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122 (2023).

9.   Venue: Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims—namely, the illegal telemarketing at issue—was sent into this District.

## IV.    FACTS

**A.    The Enactment of the TCPA and its Regulations**

10.    In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

11.    Section 227(c) of the TCPA requires the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

12.    The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

13.    A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

14.    The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are made. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

**B.    The Pennsylvania Telemarketer Registration Act**

15.    Realizing the particular harm to Pennsylvania residents that unsolicited telemarketing calls to them poses, the General Assembly passed Sections 2241 through 2249 of section 73 of the Pennsylvania Consolidated Statutes, which requires all "telemarketing businesses" and "telemarketers" to register as such with the Pennsylvania Attorney General at least 30 days prior to "offering for sale consumer goods or services through any medium." It is

4

unlawful for a telemarketer to initiate a telephone call to a consumer without registering with the Office of Attorney General. 73 PA. CONS. STAT. § 2243.

16.    Insurance services are services covered by the statutory definition of "telemarketing" for which there is no exemption for being a "telemarketer." *Id*. § 2242.

17.    A violation of the Telemarketer Registration Act is also a violation of the Unfair Trade Practices and Consumer Protection Law (UTP/CPL). *Id*. § 2246(a). The UTP/CPL provides for a private right of action for violations thereof, for either attorneys fee's and costs, together with actual damages or statutory damages of $100, which can be up to trebled. 73 PA. CONS. STAT. § 201-9.2(a).

18.    Upon information and belief, the Defendant is not registered with the Pennsylvania Office of Attorney General.

**C.    Unsolicited Telemarketing to Plaintiff**

19.    Plaintiff Weingrad is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

20.    Plaintiff's residential telephone number is (267)-XXX-XXXX, is on the National Do Not Call Registry, and has been for more than a year prior to the calls at issue.

21.    Mr. Weingrad uses the number for personal, residential, and household reasons.

22.    Plaintiff Weingrad never consented to receive calls from Defendant.

23.    Plaintiff Weingrad never did business with the Defendant.

24.    Despite this, Plaintiff received a total of at least 4 automated text messages from Defendant's number 818-650-1443 as part of a telemarketing campaign. The texts were sent between on December 13, 2023 and December 14, 2023 and solicited him to sign up for health insurance.

5

**Page 5**

25.    Under the TCPA, a text message is treated as a call. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016).

26.    The calls were unwanted.

27.    The first text message was sent on Wednesday, December 13, 2023 at 1:29 PM and included a picture of Defendant's logo:



28.    The second text message was also sent at the same date and time. It stated, "Welcome to DirectHealthInsurance. Thank you for signing up. Call 8449122958 to speak with an agent about the best plans available now! Reply HELP for help, or STOP to opt out. Msg&Data rates may apply."

29.    Despite the text of this message, Plaintif Weingrad never "sign[ed] up" to receive any communications from the Defendant and indeed had no prior business with them whatsoever.

30.    The messages continued. On Thursday December 14, 2023 Plaintiff received a message with the logo for United Healthcare:



31.    The fourth text message was also sent at the same date and time. It stated,

"Finding the right coverage can be difficult. Call 8773604495 to get more info

about affordable healthcare options like UnitedHealthcare Short-Term plans

today. Press 3, or Reply, "stop" to opt-out."

32.    Plaintiff's privacy has been violated by the above-described telemarketing

messages.

33.    Plaintiff never provided his consent or requested these messages.

34.    Plaintiff and all members of the Class, defined below, have been harmed by the

acts of Defendant because their privacy has been violated and they were annoyed and harassed.

In addition, the calls occupied their telephone lines, storage space, and bandwidth, rendering

them unavailable for legitimate communication, including while driving, working, and

performing other critical tasks.

## V.    CLASS ACTION ALLEGATIONS

35.    <u>Class Definition</u>. Pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiff brings

this case on behalf of the Classes (the "Classes") defined as follows:

> **National Do Not Call Registry Class**: All persons in the United States whose (1)
> telephone numbers were on the National Do Not Call Registry for at least 31
> days, (2) but who received more than one telemarketing call or text message from
> or on behalf of QuoteLab, (3) within a 12-month period, (4) at any time in the
> period that begins four years before the date of filing this Complaint to trial.

> **Pennsylvania Telemarketer Registration Act Class**: All persons in the
> Commonwealth of Pennsylvania who (1) received a telephone call from or on
> behalf of QuoteLab, (2) at any time during which QuoteLab was acting as a
> "telemarketer" but not licensed as a "telemarketer" with the Pennsylvania Office
> of Attorney General, (3) at any time in the period that begins two years before the
> date of filing this Complaint to trial.

36.    Excluded from the Classes are counsel, Defendant, any entities in which Defendant has a controlling interest, Defendant's agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

37.    The Classes, as defined above, are identifiable through telephone records and telephone number databases.

38.    The potential members of the Classes likely number at least in the hundreds because of the *en masse* nature of telemarketing calls.

39.    Individual joinder of these persons is impracticable.

40.    Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

41.    Plaintiff is a member of the Classes and will fairly and adequately represent and protect the interests of the Classes as she has no interests that conflict with any of the class members.

42.    Plaintiff and all members of the Classes have been harmed by the acts of Defendant, including, but not limited to, the invasion of their privacy, annoyance, waste of time, and the intrusion on their telephone that occupied it from receiving legitimate communications.

43.    This class action complaint seeks injunctive relief and money damages.

44.    There are numerous questions of law and fact common to Plaintiff and members of the Classes. These common questions of law and fact include, but are not limited to, the following:

a.    whether Defendant systematically made multiple telephone calls to members of the National Do Not Call Registry Class;

**Page 8**

b.      whether Defendant made calls to Plaintiff and members of the National Do Not Call Registry Class without first obtaining prior express written consent to make the calls;

c.      whether Defendant was a "telemarketer" conducting "telephone solicitations" to members of the Pennsylvania Telemarketer Registration Act class without the required registration; and

d.      whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

45.      Plaintiff's claims are typical of the claims of the Classes, as they arise out of the same common course of conduct by Defendant and are based on the same legal and remedial theories.

46.      Plaintiff is an adequate representative of the Classes because his interests do not conflict with the interests of the Classes, he will fairly and adequately protect the interests of the Classes, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

47.      Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or its agents.

48.      A class action is the superior method for the fair and efficient adjudication of this controversy. Class-wide relief is essential to compel Defendant to comply with the TCPA. The interests of individual members of the Class in individually controlling the prosecution of separate claims against Defendant are small because the damages in an individual action for

9

violation of the TCPA are small. Management of these claims is likely to present significantly more difficulties than are presented in many class claims. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

49.     Defendant has acted on grounds generally applicable to the Classes, thereby making final injunctive relief and corresponding declaratory relief with respect to the Classes appropriate on a class-wide basis. Moreover, on information and belief, Plaintiff alleges that the telephone solicitation calls made by Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf that are complained of herein are substantially likely to continue in the future if an injunction is not entered.

## FIRST CAUSE OF ACTION
### Telephone Consumer Protection Act
### Violations of 47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c)
### (On Behalf of Plaintiff and the National Do Not Call Registry Class)

50.     Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

51.     The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making telemarketing calls, except for emergency purposes, to Plaintiffs and members of the National Do Not Call Registry Class despite their numbers being on the National Do Not Call Registry.

52.     Defendant's violations were negligent, willful, or knowing.

10

53.     As a result of Defendant's, and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf, violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the National Do Not Call Registry Class are presumptively entitled to an award of between $500 and $1,500 in damages for each call made.

54.     Plaintiff and the members of the National Do Not Call Registry Class are also entitled to and do seek injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from making telemarketing calls to telephone numbers registered on the National Do Not Call Registry, except for emergency purposes, in the future.

## SECOND CAUSE OF ACTION
### Pennsylvania Telemarketer Registration Act
### Violations of 73 PA. CONS. STAT § 2243
### (On Behalf of Plaintiff and the Pennsylvania Telemarketer Registration Act Class)

55.     Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

56.     The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the Pennsylvania Telemarketer Registration Act, § 2243, by making "telephone solicitation call" as a "telemarketer", to Plaintiff and members of the Pennsylvania Telemarketer Registration Act class despite not registering with the Office of Attorney General at least thirty days prior to the calls at issue.

57.     Defendant's violations were negligent, willful, or knowing.

58.     As a result of Defendant's, and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf, violations of the Pennsylvania Telemarketer Registration Act, § 2243, Plaintiff and members of the Pennsylvania Telemarketer Registration Act Class are

11

presumptively entitled to their statutory damages of up to $300 for each violation under 73 PA. CONS. STAT. § 201-9.2(a), plus all reasonable attorneys' fees and costs.

<div align="center">

**PRAYER FOR RELIEF**

</div>

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A.      Certification of the proposed Classes;

B.      Appointment of Plaintiff as representative of the Classes;

C.      Appointment of the undersigned counsel as counsel for the Classes;

D.      An order enjoining Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from making telemarketing calls to numbers on the National Do Not Call Registry, absent an emergency circumstance;

E.      An award to Plaintiff and the Classes of damages, as allowed by law; and

F.      Orders granting such other and further relief as the Court deems necessary, just, and proper.

<div align="center">

**VI.      DEMAND FOR JURY**

</div>

Plaintiff demands a trial by jury for all issues so triable.

RESPECTFULLY SUBMITTED AND DATED this December 18, 2023.

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

<div align="center">

12

</div>

*/s/ Anthony Paronich*

Anthony Paronich
(*Pro Hac Vice* forthcoming)
Email:  anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone:  (617) 485-0018
Facsimile:  (508) 318-8100

*Attorneys for Plaintiff and the Proposed Class*

**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LEON WEINGRAD, | Case No. |
| Plaintiff, | |
| v. | **JURY TRIAL DEMANDED** |
| "NATIONAL HEALTH ENROLMENT CENTRE" | |
| Defendant. | |

## PLAINTIFF'S COMPLAINT

Plaintiff Leon Weingrad ("Mr. Weingrad"), by his undersigned counsel, for this complaint against John Doe Defendant "National Health Enrolment Centre," as well as its present, former and future direct and indirect parent companies, subsidiaries, affiliates, agents and related entities, alleges as follows:

### I.    INTRODUCTION

1.    <u>Nature of Action</u>: "Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers,' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms,' *id.* § 2(9)." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649 (4th Cir. 2019).

2.    "[T]he law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.'). . . . [P]rivate suits can seek either monetary or injunctive relief. [47 U.S.C. § 227(c)(5)]. . . . This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Id.* at 649-50.

3.    Plaintiff brings this action against Defendant for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") for making telemarketing calls to numbers on the National Do Not Call Registry, including his own.

## II.    PARTIES

4.    Plaintiff Weingrad is an individual who resides in the Eastern District of Pennsylvania.

5.    The true identity of the entity sued as "National Health Enrolment Centre" is unknown at this time but is ascertainable through telephone records.

### III.     JURISDICTION AND VENUE

6.  <u>Jurisdiction.</u> This Court has federal-question subject matter jurisdiction over

Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. 47

U.S.C. § 227; *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). The Court has

supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) because Plaintiff's claim for violations

of the Pennsylvania Telemarketer Registration Act relates to the same telemarketing campaign as

the TCPA claim.

7.  <u>Venue</u>: Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a

substantial part of the events giving rise to Plaintiff's claims—namely, the illegal telemarketing

at issue—was sent into this District.

### IV.     FACTS

**A.     The Enactment of the TCPA and its Regulations**

8.     In 1991, Congress enacted the TCPA in response to a growing number of

consumer complaints regarding certain telemarketing practices.

9.     Section 227(c) of the TCPA requires the FCC to "initiate a rulemaking proceeding

concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving

telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

10.     The National Do Not Call Registry allows consumers to register their telephone

numbers and thereby indicate their desire not to receive telephone solicitations at those numbers.

*See* 47 C.F.R. § 64.1200(c)(2).

11.     A listing on the Registry "must be honored indefinitely, or until the registration is

cancelled by the consumer or the telephone number is removed by the database administrator."

*Id*.

**Page 16**

12.     The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are made. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

**B.     The Pennsylvania Telemarketer Registration Act**

13.     Realizing the particular harm to Pennsylvania residents that unsolicited telemarketing calls to them poses, the General Assembly passed Sections 2241 through 2249 of section 73 of the Pennsylvania Consolidated Statutes, which requires all "telemarketing businesses" and "telemarketers" to register as such with the Pennsylvania Attorney General at least 30 days prior to "offering for sale consumer goods or services through any medium." It is unlawful for a telemarketer to initiate a telephone call to a consumer without registering with the Office of Attorney General. 73 PA. CONS. STAT. § 2243.

14.     Health insurance and insurance brokerage services are services covered by the statutory definition of "telemarketing" for which there is no exemption for being a "telemarketer." *Id*. § 2242.

15.     A violation of the Telemarketer Registration Act is also a violation of the Unfair Trade Practices and Consumer Protection Law (UTP/CPL). *Id*. § 2246(a). The UTP/CPL provides for a private right of action for violations thereof, for either attorneys fees and costs, together with actual damages or statutory damages of $100, which can be up to trebled. 73 PA. CONS. STAT. § 201-9.2(a).

16.     Upon information and belief, the Defendant is not registered with the Pennsylvania Office of Attorney General, nor can it be, particularly as it illegally uses the fake name "National Health Enrolment Centre" to conceal its identity.

4

C.      **Unsolicited Telemarketing to Plaintiff**

17.     Plaintiff Weingrad is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

18.     Plaintiff's residential telephone number is (267)-XXX-XXXX, is on the National Do Not Call Registry, and has been for more than a year prior to the calls at issue.

19.     Mr. Weingrad uses the number for personal, residential, and household reasons.

20.     Plaintiff Weingrad never consented to receive calls from Defendant.

21.     Plaintiff Weingrad never did business with the Defendant.

22.     Despite this, Plaintiff received a total of at least 26 automated telephone calls from the caller IDs 267-200-9620, 267-215-5763, 267-215-5803, 267-215-5871, 267-282-3676, 267-293-5432, 267-293-5434, 267-313-6263, 267-313-6305, 267-356-5906, 267-369-9126, 267-413-8938, 267-429-8460, 267-465-5198, 267-465-5220, and 267-465-5225.

23.     The calls were sent between December 13, 2023 and December 16, 2023 and solicited him to sign up for health insurance.

24.     Plaintiff answered three of the calls.

25.     The first two calls Plaintiff answered were on December 13, 2023 from the caller IDs 267-293-5434 and 267-293-5432. The callers identified themselves as calling from the "National Health Enrolment Centre."

26.     Because the Plaintiff was not interested, he hung up on the calls.

27.     The Plaintiff also answered a call on December 15, 2023 from the caller ID 267-465-5198. Again, the caller identified themselves as calling from the "National Health Enrolment Centre."

28.     When each of the caller IDs articulated above in Paragraph 22 are called, they connect to agents who identify themselves as calling from the "National Health Enrolment Centre."

29.     It is, however, nearly impossible to further identify the caller except through subpoena because the representatives will often hang up on the caller and "ban" the caller's caller ID from future calls if the caller does not meet the specific criteria for health insurance the call centre is looking to enrol.

30.     The calls were unwanted.

31.     The calls were evidently not sent for an emergency purpose.

32.     Plaintiff Weingrad never signed up to receive any communications from the Defendant and indeed had no prior business with them whatsoever.

33.     Plaintiff's privacy has been violated by the above-described telemarketing messages.

34.     Plaintiff never provided his consent or requested these messages.

35.     Plaintiff has been harmed by the acts of Defendant because his privacy has been violated and he were annoyed and harassed. In addition, the calls occupied his telephone line, storage space, and bandwidth, rendering them unavailable for legitimate communication, including while driving, working, and performing other critical tasks.

### FIRST CAUSE OF ACTION
**Telephone Consumer Protection Act**
**Violations of 47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c)**
**(On Behalf of Plaintiff)**

36.     Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

6

37.     The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making telemarketing calls, except for emergency purposes, to Plaintiff despite his number being on the National Do Not Call Registry.

38.     Defendant's violations were negligent, willful, or knowing.

39.     As a result of Defendant's, and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf, violations of the TCPA, 47 U.S.C. § 227, Plaintiff is presumptively entitled to an award of between $500 and $1,500 in damages for each call made.

40.     Plaintiff is also entitled to and do seek injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from making telemarketing calls to telephone numbers registered on the National Do Not Call Registry, except for emergency purposes, in the future.

## SECOND CAUSE OF ACTION
**Pennsylvania Telemarketer Registration Act**
**Violations of 73 PA. CONS. STAT § 2243**
**(On Behalf of Plaintiff)**

41.     Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

42.     The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the Pennsylvania Telemarketer Registration Act, § 2243, by making "telephone solicitation call" as a "telemarketer", to Plaintiff despite not registering with the Office of Attorney General at least thirty days prior to the calls at issue.

43.     Defendant's violations were negligent, willful, or knowing.

44.     As a result of Defendant's, and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf, violations of the Pennsylvania Telemarketer Registration Act, § 2243, Plaintiff is presumptively entitled to their statutory damages of up to $300 for each violation under 73 PA. CONS. STAT. § 201-9.2(a), plus all reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually, prays for the following relief:

A.     An order enjoining Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from making telemarketing calls to numbers on the National Do Not Call Registry, absent an emergency circumstance;

B.     An order requiring Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf to register as telemarketers with the Attorney General of Pennsylvania and use such legitimate information as registered on any future calls they make;

C.     An award to Plaintiff of damages, as allowed by law;

D.     An award to Plaintiff for his Counsel's reasonable attorney's fees and the costs of prosecuting this action; and

E.     Orders granting such other and further relief as the Court deems necessary, just, and proper.

## V.          DEMAND FOR JURY

Plaintiff demands a trial by jury for all issues so triable.


RESPECTFULLY SUBMITTED AND DATED this December 26, 2023.

        */s/ Andrew Roman Perrong*
        Andrew Roman Perrong, Esq.
        Perrong Law LLC

8

2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEON WEINGRAD, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | |
| v. | **JURY TRIAL DEMANDED** |
| RFR CAPITAL LLC | |
| Defendant. | |

### PLAINTIFF'S CLASS ACTION COMPLAINT

Plaintiff Leon Weingrad ("Mr. Weingrad"), by his undersigned counsel, for this class action complaint against Defendant RFR Capital LLC, as well as its present, former and future direct and indirect parent companies, subsidiaries, affiliates, agents and related entities, alleges as follows:

### I.    INTRODUCTION

1.    <u>Nature of Action</u>: "Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers,' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms,' *id.* § 2(9)." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649 (4th Cir. 2019).

**Page 23**

2.    "[T]he law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.'). . . . [P]rivate suits can seek either monetary or injunctive relief. [47 U.S.C. § 227(c)(5)]. . . . This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Id.* at 649-50.

3.    Plaintiff, individually and as class representative for all others similarly situated, brings this action against Defendant for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") for making telemarketing calls to numbers on the National Do Not Call Registry, including his own.

4.    Because telemarketing campaigns generally place calls to thousands or even millions of potential customers *en masse*, Plaintiff brings this action on behalf of a proposed

nationwide class of other persons who received illegal telemarketing calls from or on behalf of Defendant.

## II.    PARTIES

5.   Plaintiff Weingrad is an individual who resides in the Eastern District of Pennsylvania.

6.   Defendant RFR Capital LLC is a Delaware LLC which does business in Pennsylvania and directed its illegal calling conduct into Pennsylvania by sending its text message spam to Pennsylvania area codes.

## III.    JURISDICTION AND VENUE

7.   Jurisdiction. This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. 47 U.S.C. § 227; *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

8.   Personal Jurisdiction: The Court has specific personal jurisdiction over Defendant RFR Capital LLC because it directed its illegal calling conduct into Pennsylvania, including by calling telephone numbers associated with this District, including those with 267- area codes.

9.   Venue: Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims—namely, the illegal telemarketing at issue—was sent into this District.

## IV.    FACTS

**A.    The Enactment of the TCPA and its Regulations**

10.     In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

**Page 25**

11.     Section 227(c) of the TCPA requires the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

12.     The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

13.     A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

14.     The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are made. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

**B.     Unsolicited Telemarketing to Plaintiff**

15.     Plaintiff Weingrad is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

16.     Plaintiff's residential telephone number is (267)-XXX-XXXX, is on the National Do Not Call Registry, and has been for more than a year prior to the calls at issue.

17.     The number is a residential telephone line because it is assigned to a cellular telephone exchange service for consumers and is not assigned to a telephone exchange service for businesses.

18.     The number is in Mr. Weingrad's name and he pays the bill.

19.     Mr. Weingrad uses the number for personal, residential, and household reasons.

4

20.    Mr. Weingrad does not use the number for business reasons and the number is not registered in the name of or associated with a business.

21.    Plaintiff Weingrad never consented or requested in any way to receive calls from Defendant.

22.    Plaintiff Weingrad never did business with the Defendant.

23.    Despite this, Plaintiff received a total of at least 9 automated text messages from Defendant's number 833-972-3162 as part of a telemarketing campaign. The texts were sent between January 16, 2023 and May 28, 2024 and solicited him to sign up for Defendant's business loan services.

24.    The Plaintiff did not interact with the messages or request that the messages continue in any way.

25.    In fact, as an initial matter, the messages were unwanted.

26.    The messages were nonconsensual encounters.

27.    Under the TCPA, a text message is treated as a call. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016).

28.    The first such message was sent on January 16, 2023. It stated in part, "RFR Capital LLC. Are you ready to apply for working capital? We offer a 5 minute application and approvals in under 4 hours. 5 Star Rated on Google. If you are ready to apply at this time click the link below to get funded today! www.apply.rfrcapital.com"

29.    The messages continued relentlessly with substantially similar content. The messages all included a link to apply at Defendant's website and some also included a link to schedule a meeting with "Ryan Cola," an employee of the Defendant, such as one sent on

5

**Page 27**

February 21, 2023, which read in part, "RFR Capital LLC. Hey There ! Are you ready for working capital? We have products with no upfront fees available. We have spoken in the past. Is the timing right now? Want to speak with us? Click the link. https://apo.hubspot.com/meetings/ryancola/schedule-a-meeting-with-me Are you ready to apply right now? We will have options for you in a few hours. Click the link below to get funded today! www.apply.rfrcapital.com"

      30.     Despite the text of this message, as outlined above, the Plaintiff has never spoken with the Defendant in the past nor ever inquired about the Defendant's products or services.

      31.     The messages continued through July 12, 2023, and after a lull, started back up again on January 10, 2024.

      32.     The most recent message sent by the Defendant was sent on May 28, 2024. This message read in part, "RFR Capital LLC. Hey! Is your business still facing cash flow issues? We spoke in the past and have many creative options for funding. Minimal documentation and funding in a couple of hours. Want to partner up with a 5 star rated company? Reply back to the message to setup a call. Ready to get going? Complete our 5 minute application below to get some options today! www.apply.rfrcapital.com Looking forward to working with you !"

      33.     Plaintiff's privacy has been violated by the above-described telemarketing messages.

      34.     Plaintiff never provided his consent or requested these messages.

35.     Plaintiff and all members of the Class, defined below, have been harmed by the

acts of Defendant because their privacy has been violated and they were annoyed and harassed.

In addition, the calls occupied their telephone lines, storage space, and bandwidth, rendering

them unavailable for legitimate communication, including while driving, working, and

performing other critical tasks.

## V.    CLASS ACTION ALLEGATIONS

36.     <u>Class Definition</u>. Pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiff brings

this case on behalf of the Class (the "Class") defined as follows:

> **National Do Not Call Registry Class**: All persons in the United States whose (1)
> telephone numbers were on the National Do Not Call Registry for at least 31
> days, (2) but who received more than one telemarketing call or text message from
> or on behalf of RFR, (3) within a 12-month period, (4) at any time in the period
> that begins four years before the date of filing this Complaint to trial.

37.      Excluded from the Class are counsel, Defendant, any entities in which Defendant

has a controlling interest, Defendant's agents and employees, any judge to whom this action is

assigned, and any member of such judge's staff and immediate family.

38.     The Class, as defined above, is identifiable through telephone records and

telephone number databases.

39.     The potential members of the Class likely number at least in the hundreds because

of the *en masse* nature of telemarketing calls.

40.     Individual joinder of these persons is impracticable.

41.     Additionally, the disposition of the claims in a class action will provide

substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

42.     Plaintiff is a member of the Class and will fairly and adequately represent and protect the interests of the Class as he has no interests that conflict with any of the class members.

43.     Plaintiff and all members of the Class have been harmed by the acts of Defendant, including, but not limited to, the invasion of their privacy, annoyance, waste of time, and the intrusion on their telephone that occupied it from receiving legitimate communications.

44.     This class action complaint seeks injunctive relief and money damages.

45.     There are numerous questions of law and fact common to Plaintiff and members of the Class. These common questions of law and fact include, but are not limited to, the following:

        a.     whether Defendant systematically made multiple telephone calls to members of the National Do Not Call Registry Class;

        b.     whether Defendant made calls to Plaintiff and members of the National Do Not Call Registry Class without first obtaining prior express written consent to make the calls; and

        c.     whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

46.     Plaintiff's claims are typical of the claims of the Class, as they arise out of the same common course of conduct by Defendant and are based on the same legal and remedial theories.

47.     Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class, he will fairly and adequately protect the interests of the

8

Class, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

48.     Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or its agents.

49.     A class action is the superior method for the fair and efficient adjudication of this controversy. Class-wide relief is essential to compel Defendant to comply with the TCPA. The interests of individual members of the Class in individually controlling the prosecution of separate claims against Defendant are small because the damages in an individual action for violation of the TCPA are small. Management of these claims is likely to present significantly more difficulties than are presented in many class claims. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

50.     Defendant has acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class appropriate on a class-wide basis. Moreover, on information and belief, Plaintiff alleges that the telephone solicitation calls made by Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf that are complained of herein are substantially likely to continue in the future if an injunction is not entered.

**FIRST CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**Violations of 47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c)**
**(On Behalf of Plaintiff and the National Do Not Call Registry Class)**

51.     Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

52.     The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making telemarketing calls, except for emergency purposes, to Plaintiffs and members of the National Do Not Call Registry Class despite their numbers being on the National Do Not Call Registry.

53.     Defendant's violations were negligent, willful, or knowing.

54.     As a result of Defendant's, and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf, violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the National Do Not Call Registry Class are presumptively entitled to an award of between $500 and $1,500 in damages for each call made.

55.     Plaintiff and the members of the National Do Not Call Registry Class are also entitled to and do seek injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from making telemarketing calls to telephone numbers registered on the National Do Not Call Registry, except for emergency purposes, in the future.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

A.     Certification of the proposed Class;

B.      Appointment of Plaintiff as representative of the Class;

C.      Appointment of the undersigned counsel as counsel for the Class;

D.      An order enjoining Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from making telemarketing calls to numbers on the National Do Not Call Registry, absent an emergency circumstance;

E.      An award to Plaintiff and the Class of damages, as allowed by law; and

F.      Orders granting such other and further relief as the Court deems necessary, just, and proper.

## VI.      DEMAND FOR JURY

Plaintiff demands a trial by jury for all issues so triable.

RESPECTFULLY SUBMITTED AND DATED this June 16, 2024.

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

*/s/ Anthony Paronich*
Anthony Paronich
(*Pro Hac Vice* forthcoming)
Email:  anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone:  (617) 485-0018
Facsimile:  (508) 318-8100

*Attorneys for Plaintiff and the Proposed Class*

## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEON WEINGRAD, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | 2:24-CV-03705 |
| v. | **JURY TRIAL DEMANDED** |
| DAVID DIXON | |
| Defendant. | |

### PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff Leon Weingrad ("Mr. Weingrad"), by his undersigned counsel, for this class action complaint against Defendant David Dixon, as well his present, former and future direct and indirect parent companies, subsidiaries, affiliates, agents and related entities, alleges as follows:

## I.    INTRODUCTION

1.    <u>Nature of Action</u>: "Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers,' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms,' *id.* § 2(9)." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649 (4th Cir. 2019).

2.    "[T]he law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.'). . . . [P]rivate suits can seek either monetary or injunctive relief. [47 U.S.C. § 227(c)(5)]. . . . This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Id.* at 649-50.

3.    Plaintiff, individually and as class representative for all others similarly situated, brings this action against Defendant for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") for making telemarketing calls to numbers on the National Do Not Call Registry, including his own.

4.    Because telemarketing campaigns generally place calls to thousands or even millions of potential customers *en masse*, Plaintiff brings this action on behalf of a proposed

nationwide class of other persons who received illegal telemarketing calls from or on behalf of Defendant.

## II.    PARTIES

5.    Plaintiff Weingrad is an individual who resides in the Eastern District of Pennsylvania.

6.    Defendant David Dixon is resident of the States of New York and New Jersey which the previous Defendant in this action, Westmount Funding d/b/a Max Funding Group, hired to place telemarketing calls, including in Pennsylvania and directed his illegal calling conduct into Pennsylvania by sending his text message and call spam to Pennsylvania area codes.

## III.    JURISDICTION AND VENUE

7.    Jurisdiction. This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. 47 U.S.C. § 227; *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

8.    Personal Jurisdiction: The Court has specific personal jurisdiction over Defendant David Dixon because he directed his illegal calling conduct into Pennsylvania, including by calling telephone numbers associated with this District, including those with 267- area codes.

9.    Venue: Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims—namely, the illegal telemarketing at issue—was sent into this District.

## IV.    FACTS

**A.    The Enactment of the TCPA and its Regulations**

10.    In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

3

11. Section 227(c) of the TCPA requires the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

12. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

13. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

14. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are made. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

**B.    Unsolicited Telemarketing to Plaintiff**

15. Plaintiff Weingrad is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

16. Plaintiff's residential telephone number is (267)-XXX-XXXX, is on the National Do Not Call Registry, and has been for more than a year prior to the calls at issue.

17. The number is a residential telephone line because it is assigned to a cellular telephone exchange service for consumers and is not assigned to a telephone exchange service for businesses.

18. The number is in Mr. Weingrad's name and he pays the bill.

19. Mr. Weingrad uses the number for personal, residential, and household reasons.

20.    Mr. Weingrad does not use the number for business reasons and the number is not registered in the name of or associated with a business.

21.    Plaintiff Weingrad never consented or requested in any way to receive calls from Defendant.

22.    Plaintiff Weingrad never did business with the Defendant or with the previous Defendant in this case, Westmount Funding d/b/a Max Funding Group.

23.    Despite this, Plaintiff received a total of at least 10 text messages and 7 calls from various of Dixon's caller IDs, including 828-414-6406, 908-838-7524, 501-521-1175, and 530-402-8286 as part of a telemarketing campaign Dixon was personally hired to conduct by Westmount Funding d/b/a Max Funding Group. The calls and texts were sent directly from Dixon between June 25, 2024 and July 30, 2024 and solicited Weingrad to sign up for Westmount Funding d/b/a Max Funding Group's business loan services.

24.    The previous Defendants, Westmount Funding d/b/a Max Funding Group, personally hired Dixon, in his individual and personal capacity, to generate leads on their behalf through telemarketing calls and text messages to be placed by Dixon.

25.    The Plaintiff did not in any way request that the calls and messages continue or that he desired to be contact by telephone call or text message.

26.    In fact, as an initial matter, the calls and messages were unwanted.

27.    Despite this, the Plaintiff asked numerous times for the calls and messages to stop. They did not stop, but Dixon instead adopted a strategy of continuing to use different caller IDs from unidentified entities to continue to text, call, and harass the Plaintiff to attempt to continue to sell Westmount Funding d/b/a Max Funding Group's services.

28.    The callers, who the Plaintiff believes were all working for Dixon, either domestically or via a call centre in the Dominican Republic, were all calling or texting from either unidentified entities or from a fictious named entity called "Max Funding Group" as part of a campaign to sell business loan services on behalf of Westmount.

29.    The calls and text messages were nonconsensual encounters.

30.    Under the TCPA, a text message is treated as a call. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016).

31.    Plaintiff's privacy has been violated by the above-described telemarketing calls and text messages.

32.    Plaintiff never provided his consent or requested these calls or text messages.

33.    Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendant because their privacy has been violated and they were annoyed and harassed. In addition, the calls occupied their telephone lines, storage space, and bandwidth, rendering them unavailable for legitimate communication, including while driving, working, and performing other critical tasks.

## V.    CLASS ACTION ALLEGATIONS

34.    <u>Class Definition</u>. Pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiff brings this case on behalf of the Class (the "Class") defined as follows:

> **<u>National Do Not Call Registry Class</u>**: All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call or text message from or on behalf of Defendant, (3) within a 12-month period, (4) at any time in the period that begins four years before the date of filing this Complaint to trial.

35.     Excluded from the Class are counsel, Defendant, any entities in which Defendant has a controlling interest, Defendant's agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

36.     The Class, as defined above, is identifiable through telephone records and telephone number databases.

37.     The potential members of the Class likely number at least in the hundreds because of the *en masse* nature of telemarketing calls.

38.     Individual joinder of these persons is impracticable.

39.     Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

40.     Plaintiff is a member of the Class and will fairly and adequately represent and protect the interests of the Class as he has no interests that conflict with any of the class members.

41.     Plaintiff and all members of the Class have been harmed by the acts of Defendant, including, but not limited to, the invasion of their privacy, annoyance, waste of time, and the intrusion on their telephone that occupied it from receiving legitimate communications.

42.     This class action complaint seeks injunctive relief and money damages.

43.     There are numerous questions of law and fact common to Plaintiff and members of the Class. These common questions of law and fact include, but are not limited to, the following:

        a.     whether Defendant systematically made multiple telephone calls to members of the National Do Not Call Registry Class;

      b.       whether Defendant made calls to Plaintiff and members of the National

Do Not Call Registry Class without first obtaining prior express written consent to make the

calls; and

      c.       whether members of the Class are entitled to treble damages based on the

willfulness of Defendant's conduct.

44.     Plaintiff's claims are typical of the claims of the Class, as they arise out of the

same common course of conduct by Defendant and are based on the same legal and remedial

theories.

45.     Plaintiff is an adequate representative of the Class because his interests do not

conflict with the interests of the Class, he will fairly and adequately protect the interests of the

Class, and he is represented by counsel skilled and experienced in class actions, including TCPA

class actions.

46.     Common questions of law and fact predominate over questions affecting only

individual class members, and a class action is the superior method for fair and efficient

adjudication of the controversy. The only individual question concerns identification of class

members, which will be ascertainable from records maintained by Defendant and/or his agents.

47.     A class action is the superior method for the fair and efficient adjudication of this

controversy. Class-wide relief is essential to compel Defendant to comply with the TCPA. The

interests of individual members of the Class in individually controlling the prosecution of

separate claims against Defendant are small because the damages in an individual action for

violation of the TCPA are small. Management of these claims is likely to present significantly

more difficulties than are presented in many class claims. Class treatment is superior to multiple

individual suits or piecemeal litigation because it conserves judicial resources, promotes

consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

48.     Defendant has acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class appropriate on a class-wide basis. Moreover, on information and belief, Plaintiff alleges that the telephone solicitation calls made by Defendant and/or his affiliates, agents, and/or other persons or entities acting on Defendant's behalf that are complained of herein are substantially likely to continue in the future if an injunction is not entered.

## FIRST CAUSE OF ACTION
### Telephone Consumer Protection Act
### Violations of 47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c)
### (On Behalf of Plaintiff and the National Do Not Call Registry Class)

49.     Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

50.     The foregoing acts and omissions of Defendant and/or his affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making telemarketing calls, except for emergency purposes, to Plaintiffs and members of the National Do Not Call Registry Class despite their numbers being on the National Do Not Call Registry.

51.     Defendant's violations were negligent, willful, or knowing.

52.     As a result of Defendant's, and/or his affiliates, agents, and/or other persons or entities acting on Defendant's behalf, violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the National Do Not Call Registry Class are presumptively entitled to an award of between $500 and $1,500 in damages for each call made.

9

53.     Plaintiff and the members of the National Do Not Call Registry Class are also entitled to and do seek injunctive relief prohibiting Defendant and/or his affiliates, agents, and/or other persons or entities acting on Defendant's behalf from making telemarketing calls to telephone numbers registered on the National Do Not Call Registry, except for emergency purposes, in the future.

<div align="center">**PRAYER FOR RELIEF**</div>

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

A.     Certification of the proposed Class;

B.     Appointment of Plaintiff as representative of the Class;

C.     Appointment of the undersigned counsel as counsel for the Class;

D.     An order enjoining Defendant and/or his affiliates, agents, and/or other persons or entities acting on Defendant's behalf from making telemarketing calls to numbers on the National Do Not Call Registry, absent an emergency circumstance;

E.     An award to Plaintiff and the Class of damages, as allowed by law; and

F.     Orders granting such other and further relief as the Court deems necessary, just, and proper.

<div align="center">**VI.          DEMAND FOR JURY**</div>

Plaintiff demands a trial by jury for all issues so triable.


RESPECTFULLY SUBMITTED AND DATED this August 13, 2024.

> */s/ Andrew Roman Perrong*
> Andrew Roman Perrong, Esq.
> Perrong Law LLC
> 2657 Mount Carmel Avenue

Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

*/s/ Anthony Paronich*
Anthony Paronich
(*Pro Hac Vice* forthcoming)
Email:  anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone:  (617) 485-0018
Facsimile:  (508) 318-8100



*Attorneys for Plaintiff and the Proposed Class*

11

**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LEON WEINGRAD, individually and on behalf of all others similarly situated, | Case No. 24-4212 |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| v. | |
| IBAN GLOBAL LLC | |
| and | |
| LIVEFREE EMERGENCY RESPONSE, INC. D/B/A LIFEBEACON | |
| Defendants. | |

<u>**PLAINTIFF'S CLASS ACTION COMPLAINT**</u>

Plaintiff Leon Weingrad ("Mr. Weingrad"), by his undersigned counsel, for this class action complaint against Defendant IBAN Global LLC, LiveFree Emergency Response, Inc. d/b/a LifeBeacon, as well as its present, former and future direct and indirect parent companies, subsidiaries, affiliates, agents and related entities, alleges as follows:

## I.    INTRODUCTION

1.    <u>Nature of Action</u>: "Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers,' *id.* § 2(6), and sought to strike a balance between

'[i]ndividuals' privacy rights, public safety interests, and commercial freedoms,' *id.* § 2(9)."

*Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649 (4th Cir. 2019).

2.    "[T]he law opted for a consumer-driven process that would allow objecting

individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations

was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal

government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry

stands out as a model of clarity. It means what it says. If a person wishes to no longer receive

telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone

solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an

abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . .

initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is

on the "do-not-call" registry, maintained by the Commission.'). . . . [P]rivate suits can seek either

monetary or injunctive relief. [47 U.S.C. § 227(c)(5)]. . . . This private cause of action is a

straightforward provision designed to achieve a straightforward result. Congress enacted the law

to protect against invasions of privacy that were harming people. The law empowers each person

to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply,

the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an

intrusion upon their domestic peace." *Id.* at 649-50.

3.    Plaintiff, individually and as class representative for all others similarly situated,

brings this action against Defendants for violations of the Telephone Consumer Protection Act,

47 U.S.C. § 227 ("TCPA") for making telemarketing calls to numbers on the National Do Not

Call Registry, including his own.

4.      Because telemarketing campaigns generally place calls to thousands or even millions of potential customers *en masse*, Plaintiff brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of Defendants.

## II.     PARTIES

5.    Plaintiff Weingrad is an individual who resides in the Eastern District of Pennsylvania.

6.    Defendant IBAN Global LLC is an administratively dissolved Wyoming LLC with its headquarters and principal place of business in Pocatello, Idaho, which sells LifeAlert-style medical alert devices, called LiveFree, throughout the United States and which directed its illegal calling conduct into Pennsylvania by sending its text message and call spam to Pennsylvania area codes.

7.      Defendant LiveFree Emergency Response, Inc., which does business as LifeBeacon, is a Delaware LLC with its headquarters and principal place of business at the same address in Pocatello, Idaho as Defendant IBAN, which distributes a white-labeled medical alert device that is manufactured in China.

## III.     JURISDICTION AND VENUE

8.    <u>Jurisdiction.</u> This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. 47 U.S.C. § 227; *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

9.      <u>Personal Jurisdiction</u>: The Court has specific personal jurisdiction over Defendants because they directed their illegal calling conduct into Pennsylvania, including by calling telephone numbers associated with this District, including those with 267- area codes, and charging credit cards with billing addresses located in this District.

3

10. <u>Venue</u>: Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims—namely, the illegal telemarketing at issue—was sent into this District.

## IV.    FACTS

**A.    The Enactment of the TCPA and its Regulations**

11.     In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

12.     Section 227(c) of the TCPA requires the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

13.     The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

14.     A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

15.     The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are made. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

**B.    Unsolicited Telemarketing to Plaintiff**

16.     Plaintiff Weingrad is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

4

17.    Plaintiff's residential telephone number is (267)-XXX-XXXX, is on the National Do Not Call Registry, and has been for more than a year prior to the calls at issue.

18.    The number is a residential telephone line because it is assigned to a cellular telephone exchange service for consumers and is not assigned to a telephone exchange service for businesses.

19.    The number is in Mr. Weingrad's name and he pays the bill.

20.    Mr. Weingrad uses the number for personal, residential, and household reasons.

21.    Mr. Weingrad does not use the number for business reasons and the number is not registered in the name of or associated with a business.

22.    Plaintiff Weingrad never consented or requested in any way to receive calls from Defendants.

23.    Plaintiff Weingrad never did business with the Defendants.

24.    Despite this, Plaintiff received a total of at least 3 calls from various of the Defendants' caller IDs, including 573-347-7875 and 615-993-4350 as part of a telemarketing campaign.

25.    The first such call, which the Plaintiff answered, came on June 7, 2024 at 21:01z on June 7, 2024, and attempted to sell the Plaintiff a medical alert system.

26.    Despite no expression of interest or invitation to continue calling, the caller called again on June 7, 2024 at 21:04z. The Plaintiff declined this call.

27.    Thereafter, on July 15, 2024, the Plaintiff received another call from 615-993-4350. During this call, the Plaintiff was pitched and sold Defendants' medical alert system.

28.     The caller stated that they were calling from the illegal fictitious name "Medical Alert Care," and so the Plaintiff provided his credit card information in order to make a purchase to investigate the caller and for no other reason.

29.     As a result of this call, the Plaintiff received a credit card charge from "Medical Alert Systems" for $39.99 the same day as a result of the illegal and fraudulent call. This charge bore the same 3411 Hawthorne Road, Pocatello, ID 83201 address as the Defendants.

30.     Thereafter, the Plaintiff received a medical alert device in the mail, together with a proposed contract in the form of a proposed month to month agreement. That proposed contract clearly listed Defendant IBAN's name and contact information at the top:

**IBAN Global LLC**
**3411 Hawthorne Road**
**Pocatello, ID 83201**
**(888) 498-5849**

31.     The Plaintiff did not in any way request that the calls continue or that he desired to be contact by telephone call to sell him goods or services like the medical alert device.

32.     In fact, as an initial matter, the calls were unwanted.

33.     As explained above, Defendant IBAN is a defunct Wyoming entity.

34.     Defendant LiveFree Emergency Response, however, is an active entity sharing an identical address with IBAN.

35.     Moreover, the device Plaintiff received was branded "LifeBeacon," which is a registered fictitious name for Defendant LiveFree, as reproduced below:

6



36.     Moreover, "Medical Alert Systems," the name that appeared on the credit card

charge, is a defunct registered fictitious name in Idaho for Defendant LiveFree.

37.     The calls were nonconsensual encounters.

38.     Plaintiff's privacy has been violated by the above-described telemarketing calls.

39.     Plaintiff never provided his consent or requested these calls.

7

**Page 51**

40.    Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendants because their privacy has been violated and they were annoyed and harassed. In addition, the calls occupied their telephone lines, storage space, and bandwidth, rendering them unavailable for legitimate communication, including while driving, working, and performing other critical tasks.

## V.    CLASS ACTION ALLEGATIONS

41.    <u>Class Definition</u>. Pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiff brings this case on behalf of the Class (the "Class") defined as follows:

> **National Do Not Call Registry Class**: All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call or text message from or on behalf of Defendants, (3) within a 12-month period, (4) at any time in the period that begins four years before the date of filing this Complaint to trial.

42.     Excluded from the Class are counsel, Defendants, any entities in which Defendants have a controlling interest, Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

43.    The Class, as defined above, is identifiable through telephone records and telephone number databases.

44.    The potential members of the Class likely number at least in the hundreds because of the *en masse* nature of telemarketing calls.

45.    Individual joinder of these persons is impracticable.

46.    Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

47.     Plaintiff is a member of the Class and will fairly and adequately represent and protect the interests of the Class as he has no interests that conflict with any of the class members.

48.     Plaintiff and all members of the Class have been harmed by the acts of Defendants, including, but not limited to, the invasion of their privacy, annoyance, waste of time, and the intrusion on their telephone that occupied it from receiving legitimate communications.

49.     This class action complaint seeks injunctive relief and money damages.

50.     There are numerous questions of law and fact common to Plaintiff and members of the Class. These common questions of law and fact include, but are not limited to, the following:

    a.     whether Defendants systematically made multiple telephone calls to members of the National Do Not Call Registry Class;

    b.     whether Defendants made calls to Plaintiff and members of the National Do Not Call Registry Class without first obtaining prior express written consent to make the calls; and

    c.     whether members of the Class are entitled to treble damages based on the willfulness of Defendants' conduct.

51.     Plaintiff's claims are typical of the claims of the Class, as they arise out of the same common course of conduct by Defendants and are based on the same legal and remedial theories.

52.     Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class, he will fairly and adequately protect the interests of the

**Page 53**

Class, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

53.    Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or its agents.

54.    A class action is the superior method for the fair and efficient adjudication of this controversy. Class-wide relief is essential to compel Defendants to comply with the TCPA. The interests of individual members of the Class in individually controlling the prosecution of separate claims against Defendants are small because the damages in an individual action for violation of the TCPA are small. Management of these claims is likely to present significantly more difficulties than are presented in many class claims. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

55.    Defendants have acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class appropriate on a class-wide basis. Moreover, on information and belief, Plaintiff alleges that the telephone solicitation calls made by Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf that are complained of herein are substantially likely to continue in the future if an injunction is not entered.

**FIRST CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**Violations of 47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c)**
**(On Behalf of Plaintiff and the National Do Not Call Registry Class)**

56.    Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

57.    The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making telemarketing calls, except for emergency purposes, to Plaintiffs and members of the National Do Not Call Registry Class despite their numbers being on the National Do Not Call Registry.

58.    Defendants' violations were negligent, willful, or knowing.

59.    As a result of Defendants', and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf, violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the National Do Not Call Registry Class are presumptively entitled to an award of between $500 and $1,500 in damages for each call made.

60.    Plaintiff and the members of the National Do Not Call Registry Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making telemarketing calls to telephone numbers registered on the National Do Not Call Registry, except for emergency purposes, in the future.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

A.    Certification of the proposed Class;

**Page 55**

B.      Appointment of Plaintiff as representative of the Class;

C.      Appointment of the undersigned counsel as counsel for the Class;

D.      An order enjoining Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making telemarketing calls to numbers on the National Do Not Call Registry, absent an emergency circumstance;

E.      An award to Plaintiff and the Class of damages, as allowed by law; and

F.      Orders granting such other and further relief as the Court deems necessary, just, and proper.

## VI.      DEMAND FOR JURY

Plaintiff demands a trial by jury for all issues so triable.

RESPECTFULLY SUBMITTED AND DATED this August 14, 2024.

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

*/s/ Anthony Paronich*
Anthony Paronich
(*Pro Hac Vice* forthcoming)
Email:  anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone:  (617) 485-0018
Facsimile:  (508) 318-8100

*Attorneys for Plaintiff and the Proposed Class*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **LEON WEINGRAD,** individually and on behalf of all others similarly situated,<br><br> *Plaintiff*,<br><br>*v.*<br><br>**FUND MATE, LLC**<br><br>**and**<br><br>**MENACHEM MINSKY**<br><br> *Defendants.* | Case No.<br> 24-4716<br><br><br>**JURY TRIAL DEMANDED** |

## <u>COMPLAINT AND DEMAND FOR JURY TRIAL</u>

Plaintiff Leon Weingrad ("Plaintiff" or "Mr. Weingrad") brings this Complaint and Demand for Jury Trial against Defendants Fund Mate, LLC, and its owner Menachem Minsky ("Defendants" or "FundMate") and alleges as follows:

1.      Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

2.      "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations

was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. *Id*…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people.  The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C*., 925 F.3d 643, 649-50 (4th Cir. 2019).

3.      The Plaintiff brings this action to enforce the consumer-privacy provisions of the TCPA alleging that FundMate violated the TCPA by making telemarketing calls to Plaintiff, whose number is listed on the National Do Not Call Registry, without their written consent.

## PARTIES

4.      Plaintiff Leon Weingrad is an individual residing in the Eastern District of Pennsylvania.

5.      Defendant Fund Mate, LLC, which does business under the name FundMate, is a voluntarily dissolved Florida corporation with its headquarters and principal place of business in Lauderhill, FL.

6.      Defendant Menachem Minsky is the owner and managing director of Defendant FundMate.

## JURISDICTION AND VENUE

7.      This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*.

8.      This Court has specific personal jurisdiction over Defendants because FundMate and Minsky sell their loan products in this District and called and texted the Plaintiff at his 267-area code number to attempt to sell him a loan.

9.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because the telephone calls at issue were orchestrated into and sent to this District, and therefore a substantial part of the events giving rise to the claim occurred in this District.

## BACKGROUND

**A.      The TCPA Prohibits Calls to Numbers on the National Do Not Call Registry.**

10.      The TCPA prohibits making multiple telemarketing calls to a residential telephone number that has previously been registered on the National Do Not Call Registry. *See* 47 U.S.C. § 227(c)(5).

11.      The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

12.      A listing on the National Do Not Call Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

13.      The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers on the Registry and provide a private right of

3

action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

## FACTUAL ALLEGATIONS

14.    The Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

15.    At no point did the Plaintiff consent to receiving telemarketing calls from the Defendants prior to receiving the automated calls at issue.

16.    Plaintiff's telephone number, (267) XXX-XXXX, is a residential, non-commercial telephone number.

17.    Mr. Weingrad uses the number for personal, residential, and household reasons.

18.    Mr. Weingrad does not use the number for business reasons or business use.

19.    The number is a residential telephone line because it is assigned to a residential telephone exchange service for consumers and is not assigned to a telephone exchange service for businesses.

20.    Plaintiff's telephone number has been listed on the National Do Not Call Registry since he listed it there more than a year prior to the calls at issue.

21.    Plaintiff has never been a customer of FundMate and never consented to receive calls or text messages from FundMate.

22.    Despite that fact, throughout August and September of 2024, the Plaintiff received at least one call and fifteen text messages from agents of FundMate who were attempting to sell him loans.

23.    The messages were all sent after Defendant Minsky voluntarily dissolved FundMate's LLC, in May of 2024, thereby voluntarily giving up any corporate protections which previously may have been afforded the LLC.

24.    Regardless, Defendant Minsky is personally liable for the following calls based on well established TCPA case law.

25.     Defendant Minsky personally directed and had his employees working for him personally (again, because the LLC was dissolved), to place calls and send text messages on his behalf.

26.     Defendant Minsky personally paid for the telephone services used to place the TCPA violative conduct at issue.

27.     Defendant Minsky may be personally liable for the acts alleged in this Complaint pursuant to 47 U.S.C. § 217 of the TCPA, which reads, *inter alia*: "[T]he act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be also deemed to be the act, omission, or failure of such carrier or user *as well as of that person*." 47 U.S.C. § 217 (emphasis added).

28.     Minsky personally directed the TCPA-violative conduct at issue because he personally programmed and recorded the messages for the system which sent the prerecorded message which violated the TCPA, personally attempted to sell the loans being advertised, and personally paid for and programmed the requisite systems required to make the calls.

29.     Minsky was also the individual responsible for drafting, setting, implementing, and controlling Sutton's marketing strategy, including the use of illegal automated prerecorded calls and the scripting for such calls, as well as personally voicing them.

30.     The foregoing facts demonstrate that Minsky had direct, personal knowledge of and participation in the conduct and course of conduct complained of which violated the TCPA.

31.     Specifically, on August 19, 2024, the Plaintiff received an unsolicited text message from the caller ID 954-903-0416, from "Hunter Gibson" a "senior qualifications executive at FMC," seeking to sell him loans.

32.     "Hunter Gibson" later admitted the FMC was an alias for the Defendants.

33.     "Hunter Gibson" then sent the Plaintiff a link to a JotForm loan application as well as other text messages in furtherance of attempting to sell the Plaintiff a loan, all without the Plaintiff asking for the same in any way:



W: fundmatellc.com
P : (800) 723 1691

**FUNDMATE FUNDING APPLICATION**

There are no obligations/Fees associated with an Approval.

34.     The calls and text messages continued, including an August 22 call from 385-501-1213, from an agent identifying themselves as calling from FundMate, and during which the Plaintiff made no indicators of interest. Upon information and belief, this is a Google Voice number registered in Defendant Minsky's name.

35.     The text messages continued, including two text messages from 754-219-9660 on August 30, 2024, from "Sophie" also soliciting a loan. "Sophie" confirmed that she was texting from FundMate.

36.     The calls and text messages continue, including as recently as September 4, 2024, meaning that there is a continuous, actual, and imminent risk of future harm to Plaintiff if an injunction stopping this conduct is not issued.

37.     All the calls and text messages were sent to attempt to sell the Plaintiff loans.

38.     Under the TCPA, as confirmed by the Supreme Court, text messages are "calls" for the purposes of the TCPA. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 153 (2016).

39.     The calls were unwanted.

40.     The calls were nonconsensual encounters.

41.     Plaintiff's privacy has been repeatedly violated by the above-described telemarketing calls.

42.     Plaintiff never provided his consent or requested the calls.

6

43.     Plaintiff and the Class have been harmed by the acts of Defendants because their privacy has been violated and they were annoyed and harassed. In addition, the calls occupied their telephone lines, storage space, and bandwidth, rendering them unavailable for legitimate communication, including while driving, working, and performing other critical tasks.

## CAUSES OF ACTION
### COUNT I
### Violations of the TCPA, 47 U.S.C. § 227

44.     Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

45.     It is a violation of the TCPA to initiate any telephone solicitation to a residential telephone subscriber who has registered his or her telephone number on the National Do Not Call Registry. 47 C.F.R. 64.1200(c)(2).

46.     Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf violated the TCPA by causing multiple telephone solicitation calls to be initiated to Plaintiff in a 12-month period, despite the person's registration of his telephone number on the National Do Not Call Registry.

47.     These violations were willful or knowing.

48.     As a result of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA's national do-not-call rule, Plaintiff is entitled to an injunction and up to $500 in damages for each such violation. 47 U.S.C. § 227(c)(5).

49.     Because such violations were willful or knowing, the Court should treble the amount of statutory damages, pursuant to 47 U.S.C. § 227(c)(5).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against

7

Defendants for:

A.    Damages to Plaintiff pursuant to 47 U.S.C. § 227(c)(5);

B.    Injunctive relief for Plaintiff, pursuant to 47 U.S.C. § 227(c)(5), preventing the Defendants from making calls to numbers listed on the National Do Not Call Registry and/or preventing the Defendants from making calls to numbers which have previously requested that the Defendants not call;

C.    Attorneys' fees and costs, as permitted by law; and

D.    Such other or further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

RESPECTFULLY SUBMITTED AND DATED this 6th day of September, 2024.

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
PA Bar #333687
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

8

**Page 64**

**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LEON WEINGRAD, individually and on behalf of all others similarly situated, | Case No. 24-5488 |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| v. | |
| FIRST AMERICAN HOME WARRANTY CORPORATION | |
| Defendant. | |

<u>**PLAINTIFF'S CLASS ACTION COMPLAINT**</u>

Plaintiff Leon Weingrad ("Mr. Weingrad"), by his undersigned counsel, for this class

action complaint against Defendant First American Home Warranty Corporation, as well as its

present, former and future direct and indirect parent companies, subsidiaries, affiliates, agents

and related entities, alleges as follows:

## I.    INTRODUCTION

1.    <u>Nature of Action</u>: "Telemarketing calls are intrusive. A great many people object

to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and

disruption on phone records. Faced with growing public criticism of abusive telephone

marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L.

No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the

law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to

their homes from telemarketers,' *id.* § 2(6), and sought to strike a balance between

'[i]ndividuals' privacy rights, public safety interests, and commercial freedoms,' *id.* § 2(9)."

*Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649 (4th Cir. 2019).

2.      "[T]he law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.'). . . . [P]rivate suits can seek either monetary or injunctive relief. [47 U.S.C. § 227(c)(5)]. . . . This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Id.* at 649-50.

3.      Plaintiff, individually and as class representative for all others similarly situated, brings this action against Defendant for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") for making telemarketing calls to numbers on the National Do Not Call Registry, including his own.

4.      Because telemarketing campaigns generally place calls to thousands or even millions of potential customers *en masse*, Plaintiff brings this action on behalf of a proposed

nationwide class of other persons who received illegal telemarketing calls from or on behalf of Defendant.

## II.     PARTIES

5.   Plaintiff Weingrad is an individual who resides in the Eastern District of Pennsylvania.

6.   Defendant First American Home Warranty Corporation is a California Corporation which does business in Pennsylvania and directed its illegal calling conduct into Pennsylvania by sending its telemarketing spam to Pennsylvania area codes.

## III.     JURISDICTION AND VENUE

7.   Jurisdiction. This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. 47 U.S.C. § 227; *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

8.   Personal Jurisdiction: The Court has general personal jurisdiction over Defendant First American Home Warranty Corporation because it is registered to do business in Pennsylvania and therefore has consented to the exercise of general personal jurisdiction here.

9.   Venue: Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims—namely, the illegal telemarketing at issue—was sent into this District.

## IV.     FACTS

**A.     The Enactment of the TCPA and its Regulations**

10.   In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

3

**Page 67**

11.    Section 227(c) of the TCPA requires the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

12.    The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

13.    A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

14.    The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are made. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

**B.    Unsolicited Telemarketing to Plaintiff**

15.    Plaintiff Weingrad is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

16.    Plaintiff's residential telephone number is (267)-XXX-XXXX, is on the National Do Not Call Registry, and has been for more than a year prior to the calls at issue.

17.    The number is a residential telephone line because it is assigned to a cellular telephone exchange service for consumers and is not assigned to a telephone exchange service for businesses.

18.    The number is in Mr. Weingrad's name and he pays the bill.

19.    Mr. Weingrad uses the number for personal, residential, and household reasons.

4

20.    Mr. Weingrad does not use the number for business reasons and the number is not registered in the name of or associated with a business.

21.    Plaintiff Weingrad never consented or requested in any way to receive calls from Defendant.

22.    Plaintiff Weingrad never did business with the Defendant.

23.    Despite this, Plaintiff received a total of at least 4 automated calls from Defendant's numbers 267-335-3738 and 877-349-3654 as part of a telemarketing campaign. The calls were sent between August 28, 2024 and September 3, 2024 and solicited him to sign up for Defendant's home warranty services.

24.    In fact, as an initial matter, the calls were unwanted.

25.    The calls were nonconsensual encounters.

26.    The first call the Plaintiff received was at 20:57z on August 28, 2024 from what appears to be a "spoofed" caller ID, 267-335-3738. During this call, the caller attempted to sell the Plaintiff a home warranty through First American Home Warranty. The caller then attempted to transfer the call to another First American Home Warranty representative to continue the sales pitch, but the line disconnected.

27.    Thereafter, the Plaintiff received at least three calls from the caller ID 877-349-3654, a direct number that when called back leads to First American Home Warranty.

28.    Plaintiff answered two of those calls but missed one. During the calls, the agents stated that they were from First American Home Warranty and sought to solicit the Plaintiff to purchase a home warranty.

29.    The calls were telemarketing because they sought to encourage the Plaintiff to purchase home warranty services.

**Page 69**

30.     Plaintiff received more than one call in a twelve month period for telemarketing purposes, as explained above.

31.     Plaintiff's privacy has been violated by the above-described telemarketing calls.

32.     Plaintiff never provided his consent or requested these calls.

33.     Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendant because their privacy has been violated and they were annoyed and harassed. In addition, the calls occupied their telephone lines, storage space, and bandwidth, rendering them unavailable for legitimate communication, including while driving, working, and performing other critical tasks.

## V.     CLASS ACTION ALLEGATIONS

34.     <u>Class Definition</u>. Pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiff brings this case on behalf of the Class (the "Class") defined as follows:

> **National Do Not Call Registry Class**: All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call or text message from or on behalf of First American Home Warranty, (3) within a 12-month period, (4) at any time in the period that begins four years before the date of filing this Complaint to trial.

35.     Excluded from the Class are counsel, Defendant, any entities in which Defendant has a controlling interest, Defendant's agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

36.     The Class, as defined above, is identifiable through telephone records and telephone number databases.

37.     The potential members of the Class likely number at least in the hundreds because of the *en masse* nature of telemarketing calls.

6

38.    Individual joinder of these persons is impracticable.

39.    Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

40.    Plaintiff is a member of the Class and will fairly and adequately represent and protect the interests of the Class as he has no interests that conflict with any of the class members.

41.    Plaintiff and all members of the Class have been harmed by the acts of Defendant, including, but not limited to, the invasion of their privacy, annoyance, waste of time, and the intrusion on their telephone that occupied it from receiving legitimate communications.

42.    This class action complaint seeks injunctive relief and money damages.

43.    There are numerous questions of law and fact common to Plaintiff and members of the Class. These common questions of law and fact include, but are not limited to, the following:

        a.    whether Defendant systematically made multiple telephone calls to members of the National Do Not Call Registry Class;

        b.    whether Defendant made calls to Plaintiff and members of the National Do Not Call Registry Class without first obtaining prior express written consent to make the calls; and

        c.    whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

44.    Plaintiff's claims are typical of the claims of the Class, as they arise out of the same common course of conduct by Defendant and are based on the same legal and remedial theories.

45.     Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class, he will fairly and adequately protect the interests of the Class, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

46.     Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or its agents.

47.     A class action is the superior method for the fair and efficient adjudication of this controversy. Class-wide relief is essential to compel Defendant to comply with the TCPA. The interests of individual members of the Class in individually controlling the prosecution of separate claims against Defendant are small because the damages in an individual action for violation of the TCPA are small. Management of these claims is likely to present significantly more difficulties than are presented in many class claims. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

48.     Defendant has acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class appropriate on a class-wide basis. Moreover, on information and belief, Plaintiff alleges that the telephone solicitation calls made by Defendant and/or its affiliates, agents, and/or other persons or entities

8

acting on Defendant's behalf that are complained of herein are substantially likely to continue in the future if an injunction is not entered.

### FIRST CAUSE OF ACTION
**Telephone Consumer Protection Act**
**Violations of 47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c)**
**(On Behalf of Plaintiff and the National Do Not Call Registry Class)**

49.    Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

50.    The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making telemarketing calls, except for emergency purposes, to Plaintiffs and members of the National Do Not Call Registry Class despite their numbers being on the National Do Not Call Registry.

51.    Defendant's violations were negligent, willful, or knowing.

52.    As a result of Defendant's, and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf, violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the National Do Not Call Registry Class are presumptively entitled to an award of between $500 and $1,500 in damages for each call made.

53.    Plaintiff and the members of the National Do Not Call Registry Class are also entitled to and do seek injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from making telemarketing calls to telephone numbers registered on the National Do Not Call Registry, except for emergency purposes, in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the

following relief:

A.      Certification of the proposed Class;

B.      Appointment of Plaintiff as representative of the Class;

C.      Appointment of the undersigned counsel as counsel for the Class;

D.      An order enjoining Defendant and/or its affiliates, agents, and/or other persons or

entities acting on Defendant's behalf from making telemarketing calls to numbers on the

National Do Not Call Registry, absent an emergency circumstance;

E.      An award to Plaintiff and the Class of damages, as allowed by law; and

F.      Orders granting such other and further relief as the Court deems necessary, just,

and proper.

## VI.            DEMAND FOR JURY

Plaintiff demands a trial by jury for all issues so triable.

RESPECTFULLY SUBMITTED AND DATED this October 15, 2024.

> */s/ Andrew Roman Perrong*
> Andrew Roman Perrong, Esq.
> Perrong Law LLC
> 2657 Mount Carmel Avenue
> Glenside, Pennsylvania 19038
> Phone: 215-225-5529 (CALL-LAW)
> Facsimile: 888-329-0305
> a@perronglaw.com

10

/s/ Anthony Paronich
Anthony Paronich
(*Pro Hac Vice* forthcoming)
Email:  anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone:  (617) 485-0018
Facsimile:  (508) 318-8100


*Attorneys for Plaintiff and the Proposed Class*

11

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **LEON WEINGRAD,** individually and on behalf of all others similarly situated, | Case No.  24-6247 |
| *Plaintiff,* | **CLASS ACTION** |
| *v.* | **JURY TRIAL DEMANDED** |
| **PREMIUM MERCHANT FUNDING ONE, LLC** | |
| *Defendant.* | |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Leon Weingrad ("Plaintiff" or "Mr. Weingrad") brings this Class Action Complaint and Demand for Jury Trial against Defendant Premium Merchant Funding One, LLC ("Defendant" or "PMF") and alleges as follows:

1. Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

2. "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry

stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. *Id*…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people.  The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

3.      The Plaintiff brings this action to enforce the consumer-privacy provisions of the TCPA alleging that PMF violated the TCPA by sending multiple telemarketing text messages and calls to Plaintiff and other putative class members listed on the National Do Not Call Registry without their written consent.

## PARTIES

4.      Plaintiff Leon Weingrad is an individual.

5.      Defendant Premium Merchant Funding One, LLC, which does business under the name PMF, is a corporation incorporated in New York.

## JURISDICTION AND VENUE

6.      This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*.

7.    This Court has specific personal jurisdiction over PMF because the company directed its conduct into this District, including by calling and texting 267- area code numbers, which are associated with this District.

8.    Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the acts giving rise to the complaint, namely, the illegal telemarketing conduct, took place in this District because the calls and text messages were sent into this District.

## BACKGROUND

9.    The TCPA prohibits making multiple telemarketing calls to a residential telephone number that has previously been registered on the National Do Not Call Registry. *See* 47 U.S.C. § 227(c)(5).

10.    The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

11.    A listing on the National Do Not Call Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

12.    The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers on the Registry and provide a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

## FACTUAL ALLEGATIONS

13.    The Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

14.    At no point did the Plaintiff consent to receiving telemarketing calls or text messages from the Defendant prior to receiving the messages at issue.

3

15.     Under the TCPA, as confirmed by the Supreme Court, text messages are "calls" for the purposes of the TCPA. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 153 (2016).

16.     Plaintiff's telephone number, (267) XXX-XXXX, is a residential, non-commercial telephone number.

17.     Mr. Weingrad uses the number for personal, residential, and household reasons.

18.     Mr. Weingrad does not use the number for business reasons or business use.

19.     The number is a residential telephone line because it is assigned to a residential telephone exchange service for consumers and is not assigned to a telephone exchange service for businesses.

20.     Plaintiff's telephone number has been listed on the National Do Not Call Registry since he listed it there more than 31 days prior to the calls at issue.

21.     Plaintiff has never been a customer of PMF.

22.     Despite this, between June 17, 2024 and present, the Plaintiff received incessant calls from the Defendant, sometimes multiple times a day, from various caller IDs, totaling at least 30 calls and text messages.

23.     The calls all came from various caller IDs, including 646-567-4191, 929-653-7718,213-293-2722, 615-558-6119, 213-261-4760, 213-328-5528, 929-644-5931, 514-664-8583, 615-671-6530, and 929-594-4825.

24.     The messages and calls were all sent to solicit the Plaintiff for loans.

25.     In fact, the Plaintiff stated multiple times he did not want the calls, including on July 17, 2024:



4

26.    The text messages Defendants send often deliberately mislead Plaintiff and other recipients as to who was sending them and to bait a response by using the fake acronym, "PMF":



27.    The text messages and calls were unwanted.

28.    The text messages and calls were nonconsensual encounters.

29.    Plaintiff's privacy has been repeatedly violated by the above-described telemarketing text messages and calls.

30.    Plaintiff never provided his consent or requested the text messages or calls.

31.    Plaintiff and the Class have been harmed by the acts of Defendant because their privacy has been violated and they were annoyed and harassed. In addition, the calls occupied their telephone message space, storage space, battery life, and bandwidth, rendering them unavailable for legitimate communication, including while driving, working, and performing other critical tasks.

## CLASS ACTION ALLEGATIONS

32.    Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

**Page 80**

33.     Plaintiff brings this action on behalf of himself and the following class (the "Class") pursuant to Federal Rule of Civil Procedure 23.

> **National DNC Class:** All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing text message or call from or on behalf of Defendant encouraging the purchase of PMF's goods or services, (3) within a 12-month period (4) at any time in the period that begins four years before the date of filing this Complaint to trial.

34.     **Numerosity**: The exact number of Class members is unknown but based on the *en masse* nature of telemarketing is believed to be at least hundreds of persons at this time, and individual joinder in this case is impracticable. Class members can be easily identified through Defendant's records, or those of their agents.

35.     **Typicality**: Plaintiff's claims are typical of the claims of other Class members in that Plaintiff, and Class members, sustained damages arising out of Defendant's telemarketing calls and Class members sustained similar injuries and damages as a result of Defendant's uniform illegal conduct.

36.     **Adequacy**: Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex class actions to vigorously prosecute this action on behalf of the Class. Plaintiff has no interests that conflict with, or are antagonistic to those of, the Class, and Defendant has no defenses unique to Plaintiff.

37.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to, the following:

a.      Whether Defendant obtained "prior express invitation or permission" under the TCPA, before the calls at issue;

b.      Whether Defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the TCPA's do-not-call regulations;

c.      Whether Defendant should be held liable for violations committed on its behalf, if any; and

d.      Damages, including whether any violations were performed willfully or knowingly, such that Plaintiff and the other Class members are entitled to treble damages under 47 U.S.C. § 227(c)(5).

38.      **Superiority**: Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein.  Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail.  There are hundreds of Class members, such that joinder of all members is impracticable.

39.      In addition to satisfying the prerequisites of FED. R. CIV. P. 23(a), Plaintiff satisfies the requirements for maintaining a class action under FED. R. CIV. P. 23(b) because:

a.      The prosecution of separate actions by the individual Class members would create a risk of inconsistent or varying adjudication which would establish incompatible standards of conduct for Defendant;

b.      The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive

7

**Page 82**

of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests;

   c.  Defendant has acted or refused to act on grounds that apply generally to the proposed Class, thereby making final injunctive relief or declaratory relief herein appropriate with respect to the proposed Class as a whole; and

   d.  Questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## COUNT I
### Violations of the TCPA, 47 U.S.C. § 227
### (On Behalf of Plaintiff and the National DNC Class)

  40.  Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

  41.  It is a violation of the TCPA to initiate any telephone solicitation to a residential telephone subscriber who has registered his or her telephone number on the National Do Not Call Registry. 47 C.F.R. 64.1200(c)(2).

  42.  Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf violated the TCPA by causing multiple telephone solicitation calls and/or text messages to be initiated to Plaintiff and members of the National DNC Class in a 12-month period, despite the person's registration of his or her telephone numbers on the National Do Not Call Registry.

  43.  These violations were willful or knowing.

44.    As a result of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf's violations of the TCPA's national do-not-call rule, Plaintiff and members of the National DNC Class are each entitled to an injunction and up to $500 in damages for each such violation. 47 U.S.C. § 227(c)(5).

45.    Because such violations were willful or knowing, the Court should treble the amount of statutory damages, pursuant to 47 U.S.C. § 227(c)(5).

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiff, individually and on behalf of the National DNC Class, and Internal Do Not Call Registry Class, respectfully request that the Court enter judgment against Defendant for:

A.    Certification of the National DNC Class as alleged herein;

B.    Appointment of Plaintiff as representative of the Class;

C.    Appointment of the undersigned as counsel for the Class;

D.    Damages to Plaintiff and members of the Class pursuant to 47 U.S.C. § 227(c)(5);

E.    Injunctive relief for Plaintiff and members of the Class, pursuant to 47 U.S.C. § 227(c)(5), preventing the Defendant from making calls to numbers listed on the National Do Not Call Registry;

F.    Attorneys' fees and costs, as permitted by law; and

G.    Such other or further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury.


RESPECTFULLY SUBMITTED AND DATED this 21st day of November, 2024.


*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
PA Bar #333687
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

10

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **LEON WEINGRAD,** individually and on behalf of all others similarly situated, | Case No. 24-6503 |
| *Plaintiff,* | **CLASS ACTION** |
| | **JURY TRIAL DEMANDED** |
| *v.* | |
| **POSIGEN DEVELOPER, LLC d/b/a POSIGEN SOLAR** | |
| *Defendant.* | |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Leon Weingrad ("Plaintiff" or "Mr. Weingrad") brings this Class Action Complaint and Demand for Jury Trial against Defendant PosiGen Developer, LLC ("Defendant" or "PosiGen") and alleges as follows:

1.      Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

2.      "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry

stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. *Id*…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people.  The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

3.     The Plaintiff brings this action to enforce the consumer-privacy provisions of the TCPA alleging that PosiGen violated the TCPA by sending multiple telemarketing text messages and calls to Plaintiff and other putative class members listed on the National Do Not Call Registry without their written consent.

## PARTIES

4.     Plaintiff Leon Weingrad is an individual.

5.     Defendant PosiGen Developer, LLC, which does business under the name PosiGen Solar, is a corporation incorporated in Delaware and registered to do business in Pennsylvania.

## JURISDICTION AND VENUE

6.     This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*.

7.      The Court has general personal jurisdiction over Defendant PosiGen because it has registered to do business in Pennsylvania, thereby consenting to the exercise of general personal jurisdiction in Pennsylvania.

8.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the acts giving rise to the complaint, namely, the illegal telemarketing conduct, took place in this District because the calls and text messages were sent into this District.

## BACKGROUND

9.      The TCPA prohibits making multiple telemarketing calls to a residential telephone number that has previously been registered on the National Do Not Call Registry. *See* 47 U.S.C. § 227(c)(5).

10.     The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

11.     A listing on the National Do Not Call Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

12.     The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers on the Registry and provide a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

## FACTUAL ALLEGATIONS

13.     The Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

14.     At no point did the Plaintiff consent to receiving telemarketing calls or text messages from the Defendant prior to receiving the messages at issue.

3

15.     Under the TCPA, as confirmed by the Supreme Court, text messages are "calls" for the purposes of the TCPA. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 153 (2016).

16.     Plaintiff's telephone number, (267) XXX-XXXX, is a residential, non-commercial telephone number.

17.     Mr. Weingrad uses the number for personal, residential, and household reasons.

18.     Mr. Weingrad does not use the number for business reasons or business use.

19.     The number is a residential telephone line because it is assigned to a residential telephone exchange service for consumers and is not assigned to a telephone exchange service for businesses.

20.     Plaintiff's telephone number has been listed on the National Do Not Call Registry since he listed it there more than 31 days prior to the calls at issue.

21.     Plaintiff has never been a customer of PosiGen.

22.     In fact, because Plaintiff, *inter alia*, leases property, he cannot purchase solar panels.

23.     Despite this, between November 14, 2024 and present, the Plaintiff received at least four calls from the Defendant.

24.     The first such call came from the caller ID 267-708-2000 at 7:34 PM Eastern Time (00:34z the following day).

25.     The caller attempted to sell the Plaintiff solar panels and services. However, the caller was looking for an individual who was not the Plaintiff and had an address which was not the Plaintiff's.

26.     The Plaintiff received another two calls from 267-317-7205 that same day at 7:44 PM and 7:46 PM Eastern (00:44z and 00:46z the following day), also to attempt to sell the Plaintiff PosiGen's solar panels and services.

27.     The Plaintiff indicated on the 7:44 PM call a desire not to get calls and hung up.

28.     Despite this, the caller called him back immediately after at 7:46 PM, which the Plaintiff rejected.

4

29.     These telephone numbers, when called back, ring back to PosiGen's call centre and play a recorded greeting.

30.     Thereafter, the following day, at 10:33 AM Eastern (15:33z), the Plaintiff received another call from 267-438-0011 which bore a SHAKEN/STIR "A" attest.

31.     This time, it was an individual named Mohammed Ali, an employee of PosiGen, seeking to schedule a site visit to sell the Plaintiff solar panels.

32.     When this number is called back, it rings back to Mr. Ali, who confirmed that he works for PosiGen.

33.     The text messages and calls were unwanted.

34.     The text messages and calls were nonconsensual encounters.

35.     Plaintiff's privacy has been repeatedly violated by the above-described telemarketing text messages and calls.

36.     Plaintiff never provided his consent or requested the text messages or calls.

37.     Plaintiff and the Class have been harmed by the acts of Defendant because their privacy has been violated and they were annoyed and harassed. In addition, the calls occupied their telephone message space, storage space, battery life, and bandwidth, rendering them unavailable for legitimate communication, including while driving, working, and performing other critical tasks.

## CLASS ACTION ALLEGATIONS

38.     Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

39.     Plaintiff brings this action on behalf of himself and the following class (the "Class") pursuant to Federal Rule of Civil Procedure 23.

> **National DNC Class:** All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call from or on behalf of Defendant encouraging the purchase of PosiGen's goods or services, (3) within a 12-month period (4) at any

5

time in the period that begins four years before the date of filing this
Complaint to trial.

**40.** **Numerosity**: The exact number of Class members is unknown but based on the *en masse* nature of telemarketing is believed to be at least hundreds of persons at this time, and individual joinder in this case is impracticable. Class members can be easily identified through Defendant's records, or those of their agents.

41. **Typicality**: Plaintiff's claims are typical of the claims of other Class members in that Plaintiff, and Class members, sustained damages arising out of Defendant's telemarketing calls and Class members sustained similar injuries and damages as a result of Defendant's uniform illegal conduct.

42. **Adequacy**: Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex class actions to vigorously prosecute this action on behalf of the Class. Plaintiff has no interests that conflict with, or are antagonistic to those of, the Class, and Defendant has no defenses unique to Plaintiff.

43. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to, the following:

a. Whether Defendant obtained "prior express invitation or permission" under the TCPA, before the calls at issue;

b. Whether Defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the TCPA's do-not-call regulations;

6

**Page 91**

c.    Whether Defendant should be held liable for violations committed on its behalf, if any; and

d.    Damages, including whether any violations were performed willfully or knowingly, such that Plaintiff and the other Class members are entitled to treble damages under 47 U.S.C. § 227(c)(5).

44.    **Superiority**: Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. There are hundreds of Class members, such that joinder of all members is impracticable.

45.    In addition to satisfying the prerequisites of FED. R. CIV. P. 23(a), Plaintiff satisfies the requirements for maintaining a class action under FED. R. CIV. P. 23(b) because:

a.    The prosecution of separate actions by the individual Class members would create a risk of inconsistent or varying adjudication which would establish incompatible standards of conduct for Defendant;

b.    The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests;

c.    Defendant has acted or refused to act on grounds that apply generally to the proposed Class, thereby making final injunctive relief or declaratory relief herein appropriate with respect to the proposed Class as a whole; and

      d.     Questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

<div align="center">

**<u>COUNT I</u>**
**Violations of the TCPA, 47 U.S.C. § 227**
**(On Behalf of Plaintiff and the National DNC Class)**

</div>

46.     Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

47.     It is a violation of the TCPA to initiate any telephone solicitation to a residential telephone subscriber who has registered his or her telephone number on the National Do Not Call Registry. 47 C.F.R. 64.1200(c)(2).

48.     Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf violated the TCPA by causing multiple telephone solicitation calls and/or text messages to be initiated to Plaintiff and members of the National DNC Class in a 12-month period, despite the person's registration of his or her telephone numbers on the National Do Not Call Registry.

49.     These violations were willful or knowing.

50.     As a result of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf's violations of the TCPA's national do-not-call rule, Plaintiff and members of the National DNC Class are each entitled to an injunction and up to $500 in damages for each such violation. 47 U.S.C. § 227(c)(5).

51.     Because such violations were willful or knowing, the Court should treble the amount of statutory damages, pursuant to 47 U.S.C. § 227(c)(5).

<div align="center">8</div>

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the National DNC Class, and Internal Do Not Call Registry Class, respectfully request that the Court enter judgment against Defendant for:

A.     Certification of the National DNC Class as alleged herein;

B.     Appointment of Plaintiff as representative of the Class;

C.     Appointment of the undersigned as counsel for the Class;

D.     Damages to Plaintiff and members of the Class pursuant to 47 U.S.C. § 227(c)(5);

E.     Injunctive relief for Plaintiff and members of the Class, pursuant to 47 U.S.C. § 227(c)(5), preventing the Defendant from making calls to numbers listed on the National Do Not Call Registry;

F.     Attorneys' fees and costs, as permitted by law; and

G.     Such other or further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury.

RESPECTFULLY SUBMITTED AND DATED this 5th day of December, 2024.

<div style="margin-left: 40%;">

*/s/ Andrew Roman Perrong*

Andrew Roman Perrong, Esq.

PA Bar #333687

Perrong Law LLC

2657 Mount Carmel Avenue

Glenside, Pennsylvania 19038

Phone: 215-225-5529 (CALL-LAW)

Facsimile: 888-329-0305

a@perronglaw.com

</div>

9

JS 44 (Rev. 03/24)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

LEON WEINGRAD

**DEFENDANTS**

POSIGEN DEVELOPER, LLC

**(b)** County of Residence of First Listed Plaintiff   PHILADELPHIA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Andrew Perrong, Perrong Law LLC, 2657 Mt. Carmel
Ave., Glenside, PA 19038, 215-225-5529

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1  U.S. Government Plaintiff | ☒ 3  Federal Question *(U.S. Government Not a Party)* |
| ☐ 2  U.S. Government Defendant | ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 840 Trademark | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☒ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | | | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
TPCA, 47 USC 227

Brief description of cause:
CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE TCPA

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $
5000001

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____     DOCKET NUMBER _____

DATE
Dec 5, 2024

SIGNATURE OF ATTORNEY OF RECORD
/S/ ANDREW ROMAN PERRONG

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

**Page 95**

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)**    **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)**    **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)**    **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**    **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.**    **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**    **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.**    **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.**    **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.**    **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**    **Related Cases.** This section of the JS 44 is used to reference related cases, if any. If there are related cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction: <u>Philadelphia County, PA</u>

---

***RELATED CASE IF ANY:***    Case Number:_____    Judge:_____

1. Does this case involve property included in an earlier numbered suit?    Yes ☐

2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?    Yes ☐

3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?    Yes ☐

4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual?    Yes ☐

5. Is this case related to an earlier numbered suit even though none of the above categories apply?    Yes ☐
   If yes, attach an explanation.

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ■ **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

**A.** *Federal Question Cases:*

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Wage and Hour Class Action/Collective Action
☐ 6. Patent
☐ 7. Copyright/Trademark
☐ 8. Employment
☐ 9. Labor-Management Relations
☐ 10. Civil Rights
☐ 11. Habeas Corpus
☐ 12. Securities Cases
☐ 13. Social Security Review Cases
☐ 14. Qui Tam Cases
☐ 15. Cases Seeking Systemic Relief  **\*see certification below\***
☒ 16. All Other Federal Question Cases. *(Please specify):* <u>TCPA</u>

**B.** *Diversity Jurisdiction Cases:*

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify):*_____
☐ 7. Products Liability
☐ 8. All Other Diversity Cases:  *(Please specify)*_____
       _____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ■ **does not** have implications beyond the parties before the court and ☐ **does** / ■ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒ Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐ None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

**IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LEON WEINGRAD, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | |
| v. | **JURY TRIAL DEMANDED** |
| YELP INC. | |
| Defendant. | |

## <u>PLAINTIFF'S CLASS ACTION COMPLAINT</u>

Plaintiff Leon Weingrad ("Mr. Weingrad"), by his undersigned counsel, for this class action complaint against Defendant Yelp Inc., as well as its present, former and future direct and indirect parent companies, subsidiaries, affiliates, agents and related entities, alleges as follows:

## I.    INTRODUCTION

1.    <u>Nature of Action</u>: "Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers,' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms,' *id.* § 2(9)." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649 (4th Cir. 2019).

2.    "[T]he law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations

was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.'). . . . [P]rivate suits can seek either monetary or injunctive relief. [47 U.S.C. § 227(c)(5)]. . . . This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Id.* at 649-50.

3.      Plaintiff, individually and as class representative for all others similarly situated, brings this action against Defendant for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") for making telemarketing calls to numbers on the National Do Not Call Registry, including his own.

4.      Because telemarketing campaigns generally place calls to thousands or even millions of potential customers *en masse*, Plaintiff brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of Defendant.

## II.    PARTIES

5.   Plaintiff Weingrad is an individual.

2

6.   Defendant Yelp Inc. is a Delaware LLC which is registered to do business in Pennsylvania, with its registered agent office address in Harrisburg, which lies within this District.

### III.    JURISDICTION AND VENUE

7.   <u>Jurisdiction.</u> This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. 47 U.S.C. § 227; *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

8.   <u>Personal Jurisdiction</u>: The Court has general personal jurisdiction over Defendant Yelp Inc. because it has registered to do business in Pennsylvania, thereby consenting to the exercise of general personal jurisdiction in Pennsylvania.

9.   <u>Venue</u>: Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because the Defendant has its registered office in Harrisburg and therefore "resides" in this judicial District.

### IV.    FACTS

**A.    The Enactment of the TCPA and its Regulations**

10.    In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

11.    Section 227(c) of the TCPA requires the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

12.    The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

3

**Page 100**

13.     A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

14.     The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are made. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

**B.     Unsolicited Telemarketing to Plaintiff**

15.     Plaintiff Weingrad is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

16.     Plaintiff's residential telephone number is (503)-XXX-XXXX, is on the National Do Not Call Registry, and has been since August 28, 2021.

17.     The number is a residential telephone line because it is assigned to a cellular telephone exchange service for consumers and is not assigned to a telephone exchange service for businesses.

18.     The number is in Mr. Weingrad's name and he pays the bill.

19.     Mr. Weingrad uses the number for personal, residential, and household reasons.

20.     Mr. Weingrad does not use the number for business reasons and the number is not registered in the name of a business.

21.     Plaintiff Weingrad never consented or requested in any way to receive calls from Defendant.

22.     Plaintiff Weingrad never did business with the Defendant.

4

23.     Despite this, Plaintiff received a total of at least 8 calls from the Defendant's caller ID, 415-266-3629, as part of a telemarketing campaign. The calls were sent between July 23, 2024 and August 2, 2024 and solicited him to sign up for Defendant's services.

24.     The Plaintiff did not in any way request that the calls continue or that he desired to be contacted by telephone call.

25.     In fact, as an initial matter, the calls and messages were unwanted and were illegally made to a number on the Do Not Call registry, including two missed calls on July 23, 2024 and July 25, 2024.

26.     The calls were nonconsensual encounters.

27.     Plaintiff's privacy has been violated by the above-described telemarketing calls.

28.     Plaintiff never provided his consent or requested these calls.

29.     Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendant because their privacy has been violated and they were annoyed and harassed. In addition, the calls occupied their telephone lines, storage space, and bandwidth, rendering them unavailable for legitimate communication, including while driving, working, and performing other critical tasks.

**V.    CLASS ACTION ALLEGATIONS**

30.     <u>Class Definition</u>. Pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiff brings this case on behalf of the Class (the "Class") defined as follows:

> **National Do Not Call Registry Class**: All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call from or on behalf of Defendant, (3) within a 12-month period, (4) at any time in the period that begins four years before the date of filing this Complaint to trial.

5

31.    Excluded from the Class are counsel, Defendant, any entities in which Defendant has a controlling interest, Defendant's agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

32.    The Class, as defined above, is identifiable through telephone records and telephone number databases.

33.    The potential members of the Class likely number at least in the hundreds because of the *en masse* nature of telemarketing calls.

34.    Individual joinder of these persons is impracticable.

35.    Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

36.    Plaintiff is a member of the Class and will fairly and adequately represent and protect the interests of the Class as he has no interests that conflict with any of the class members.

37.    Plaintiff and all members of the Class have been harmed by the acts of Defendant, including, but not limited to, the invasion of their privacy, annoyance, waste of time, and the intrusion on their telephone that occupied it from receiving legitimate communications.

38.    This class action complaint seeks injunctive relief and money damages.

39.    There are numerous questions of law and fact common to Plaintiff and members of the Class. These common questions of law and fact include, but are not limited to, the following:

a.    whether Defendant systematically made multiple telephone calls to members of the National Do Not Call Registry Class;

       b.       whether Defendant made calls to Plaintiff and members of the National

Do Not Call Registry Class without first obtaining prior express written consent to make the

calls; and

       c.       whether members of the Class are entitled to treble damages based on the

willfulness of Defendant's conduct.

       40.     Plaintiff's claims are typical of the claims of the Class, as they arise out of the

same common course of conduct by Defendant and are based on the same legal and remedial

theories.

       41.     Plaintiff is an adequate representative of the Class because his interests do not

conflict with the interests of the Class, he will fairly and adequately protect the interests of the

Class, and he is represented by counsel skilled and experienced in class actions, including TCPA

class actions.

       42.     Common questions of law and fact predominate over questions affecting only

individual class members, and a class action is the superior method for fair and efficient

adjudication of the controversy. The only individual question concerns identification of class

members, which will be ascertainable from records maintained by Defendant and/or its agents.

       43.     A class action is the superior method for the fair and efficient adjudication of this

controversy. Class-wide relief is essential to compel Defendant to comply with the TCPA. The

interests of individual members of the Class in individually controlling the prosecution of

separate claims against Defendant are small because the damages in an individual action for

violation of the TCPA are small. Management of these claims is likely to present significantly

more difficulties than are presented in many class claims. Class treatment is superior to multiple

individual suits or piecemeal litigation because it conserves judicial resources, promotes

consistency and efficiency of adjudication, provides a forum for small claimants, and deters

illegal activities. There will be no significant difficulty in the management of this case as a class

action.

44.     Defendant has acted on grounds generally applicable to the Class, thereby making

final injunctive relief and corresponding declaratory relief with respect to the Class appropriate

on a class-wide basis. Moreover, on information and belief, Plaintiff alleges that the telephone

solicitation calls made by Defendant and/or its affiliates, agents, and/or other persons or entities

acting on Defendant's behalf that are complained of herein are substantially likely to continue in

the future if an injunction is not entered.

## FIRST CAUSE OF ACTION
### Telephone Consumer Protection Act
### Violations of 47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c)
### (On Behalf of Plaintiff and the National Do Not Call Registry Class)

45.     Plaintiff repeats the prior allegations of this Complaint and incorporates them by

reference herein.

46.     The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or

other persons or entities acting on Defendant's behalf constitute numerous and multiple

violations of the TCPA, 47 U.S.C. § 227, by making telemarketing calls, except for emergency

purposes, to Plaintiffs and members of the National Do Not Call Registry Class despite their

numbers being on the National Do Not Call Registry.

47.     Defendant's violations were negligent, willful, or knowing.

48.     As a result of Defendant's, and/or its affiliates, agents, and/or other persons or

entities acting on Defendant's behalf, violations of the TCPA, 47 U.S.C. § 227, Plaintiff and

members of the National Do Not Call Registry Class are presumptively entitled to an award of

between $500 and $1,500 in damages for each call made.

49.    Plaintiff and the members of the National Do Not Call Registry Class are also entitled to and do seek injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from making telemarketing calls to telephone numbers registered on the National Do Not Call Registry, except for emergency purposes, in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

A.    Certification of the proposed Class;

B.    Appointment of Plaintiff as representative of the Class;

C.    Appointment of the undersigned counsel as counsel for the Class;

D.    An order enjoining Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from making telemarketing calls to numbers on the National Do Not Call Registry, absent an emergency circumstance;

E.    An award to Plaintiff and the Class of damages, as allowed by law; and

F.    Orders granting such other and further relief as the Court deems necessary, just, and proper.

## VI.        DEMAND FOR JURY

Plaintiff demands a trial by jury for all issues so triable.

RESPECTFULLY SUBMITTED AND DATED this August 7, 2024.

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038

Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

*/s/ Anthony Paronich*
Anthony Paronich
(*Pro Hac Vice* forthcoming)
Email:  anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone:  (617) 485-0018
Facsimile:  (508) 318-8100


*Attorneys for Plaintiff and the Proposed Class*

10

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

LEON WEINGRAD, individually and on behalf of a class of all persons and entities similarly situated,

        Plaintiff

vs.

SMARTMATCH INSURANCE AGENCY, LLC

        Defendant.

Case No.

## CLASS ACTION COMPLAINT

### Preliminary Statement

1.      As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

2.      However, the TCPA doesn't only restrict robocalls.

3.      "Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices,

Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

4.    "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. *Id*…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people.  The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

5.    Plaintiff Leon Weingrad ("Plaintiff") brings this action under the TCPA alleging that SmartMatch Insurance Agency, LLC called the Plaintiff with calls using pre-recorded

voices, including to calls that were on the National Do Not Call Registry, such as the Plaintiff. Those calls were made without the call recipient's prior express written consent.

6.      Because the calls were transmitted using technology capable of generating thousands of similar calls per day, Plaintiff brings this action on behalf of a proposed nationwide class of other persons who were sent the same illegal telemarketing calls.

7.      A class action is the best means of obtaining redress for the Defendant's illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

### Parties

8.      Plaintiff Leon Weingrad is a person.

9.      Defendant SmartMatch Insurance Agency, LLC is a company that sells insurance, including health insurance and Medicare Supplement plans.

### Jurisdiction & Venue

10.     The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the Plaintiff's claims arise under federal law.

11.     This Court has general personal jurisdiction over both Defendant SmartMatch Insurance Agency, LLC, because it has registered to do business in Pennsylvania, thereby consenting to the exercise of general personal jurisdiction in Pennsylvania.

12.     Venue is proper under 28 U.S.C. § 1391(b)(1) because the Defendant is a resident of this State and District.

### The Telephone Consumer Protection Act

13.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . .

can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

<u>The National Do Not Call Registry</u>

14.    The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

15.    A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

16.    The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).


**<u>Factual Allegations</u>**

17.    Defendant SmartMatch Insurance Agency LLC is a seller of various insurance products, including Medicare Supplement insurance.

18.    To generate business, SmartMatch places illegal telemarketing calls that are also pre-recorded.

19.    Plaintiff's telephone number, (503) XXX-XXX, is a non-commercial telephone number.

20.    Plaintiff's telephone number is used for personal residential purposes.

21.    Plaintiff's telephone number has been listed on the National Do Not Call Registry since over a year prior to the calls at issue.

4

**Page 111**

22.     Plaintiff has never been a customer of any Defendant nor asked or inquired to be a customer of any of the Defendant.

23.     Despite that, the Plaintiff received at least two telemarketing calls from SmartMatch.

24.     The first call came in on October 31, 2024 from the caller ID 503-325-3793.

25.     The calls started out by playing the same prerecorded message with the same fake voice and office background noise.

26.     The calls all started with the same pre-recorded voice, possibly using an Artificial Intelligence (AI) robot or Mechanical Turk, and began:

> [Hey, Donna Here / Hey, Drake!] I am calling to help you get the newly added Medicare benefits in this annual enrolment 2025. It includes free medication, prescription coverage, food cards, and cash back of up to $250. So do you have Medicare Part A and B?

27.     During the call on October 31, 2024, the robot then transferred the call to a "verification officer" who was very clearly human, unlike the previous AI/Mechanical Turk. The "verification officer" asked the Plaintiff more questions, and then transferred the call to "our licensed insurance agent."

28.     The Plaintiff was then transferred to "Marissa" with the Defendant "SmartMarch Insurance Agency," an assistant for a licensed insurance agent, who further asked the Plaintiff questions and then transferred the call to "Max Lade, a licensed agent with SmartMatch on a recorded line."

29.     Thereafter, the Plaintiff also received a call from 503-746-7229 on November 19, 2024. That call started by playing the same pre-recorded message, but did not transfer to a

5

human because the robot stated "Sorry, you don't seem to qualify for the benefit plans I

have. Have a good day."

    30.    The aforementioned calls were placed using and beginning with a prerecorded

voices because: (a) the robot's speech sounded artificially generated and clunky in cadence and

tone, (b) the robot had an identical, generic, monotone voice, (c) it would be illogical for a

human to call someone and play various scripted questions and statements through a robot

without engaging in dialogue, (d) the robot repeated the same identical phrases during two

different calls exactly the same way, just like playing back a recording, and (e), the Plaintiff was

eventually transferred to a human being who was obviously human.

    31.    The aforementioned calls to the Plaintiff were unwanted.

    32.    The calls were nonconsensual encounters.

    33.    Plaintiff's privacy has been violated by the above-described telemarketing calls.

    34.    Plaintiff never provided his consent or requested the calls.

    35.    Plaintiff and the other call recipients were harmed by these calls. They were

temporarily deprived of legitimate use of their phones because the phone line was tied up, they

were charged for the calls and their privacy was improperly invaded.

    36.    Moreover, these calls injured Plaintiff because they were frustrating, obnoxious,

annoying, were a nuisance and disturbed the solitude of Plaintiff and the class.

## Class Action Statement

    37.    Plaintiff incorporates by reference all other paragraphs of this Complaint as if

fully stated herein.

38.     Plaintiff brings this action on behalf of himself and the following classes (the "Classes") pursuant to Federal Rule of Civil Procedure 23(b)(2) and/or (b)(3).

39.     Plaintiff proposes the following Class definitions, subject to amendment as appropriate:

**Robocall Class:** All persons in the United States who, (1) within four years prior to the commencement of this litigation until the class is certified (2) received one or more calls on their cellular telephone or any other protected telephone service (3) from or on behalf Defendant, (4) sent using the same, or substantially similar, pre-recorded message used to contact the Plaintiff.

**National Do Not Call Registry Class:** All persons within the United States: (1) whose residential telephone numbers were on the National Do Not Call Registry for at least 31 days; (2) but who received more than one telephone solicitation call from Defendant or a third party acting on Defendant's behalf; (3) within a 12-month period; (4) within the four years prior to the filing of the Complaint.

40.     Plaintiff is a member of and will fairly and adequately represent and protect the interests of the Classes as he has no interests that conflict with any of the Class members.

41.     Excluded from the Classes are counsel, Defendant, and any entities in which Defendant has a controlling interest, the Defendant's agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

42.     Plaintiff and all members of the Classes have been harmed by the acts of Defendant, including, but not limited to, the invasion of their privacy, annoyance, waste of time, the use of their telephone power and network bandwidth, and the intrusion on their telephone that occupied it from receiving legitimate communications.

43.     This Class Action Complaint seeks injunctive relief and money damages.

44.     The Class as defined above, are identifiable through Defendant's dialer records, other phone records, and phone number databases.

45.     Plaintiff does not know the exact number of members in the Classes, but Plaintiff reasonably believes Class members number, at minimum, in the hundreds.

46.     The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim.

47.     Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

48.     There are well defined, nearly identical, questions of law and fact affecting all parties. The questions of law and fact, referred to above, involving the class claims predominate over questions that may affect individual Class members.

49.     There are numerous questions of law and fact common to Plaintiff and to the proposed Classes, including, but not limited to, the following:

a.     Whether Defendant made multiple calls to Plaintiff and members of the National Do Not Call Registry Class;

b.     Whether Defendant made calls using artificial or prerecorded voices to Plaintiff and members of the Robocall Class;

c.     Whether Defendant's conduct constitutes a violation of the TCPA; and

d.     Whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

50.     Further, Plaintiff will fairly and adequately represent and protect the interests of the Classes. Plaintiff has no interests which are antagonistic to any member of the Classes.

51.     Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, and especially TCPA class actions. Plaintiff and his counsel are

8

committed to vigorously prosecuting this action on behalf of the other members of the Classes, and have the financial resources to do so.

52.    Common questions of law and fact predominate over questions affecting only individual Class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of Class members, which will be ascertainable from records maintained by Defendant and/or its agents.

53.    The likelihood that individual members of the Classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

54.    Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## FIRST CAUSE OF ACTION

**Statutory Violations of the Telephone Consumer Protection Act**
**(47 .S.C. § 227(b)) on behalf of the Robocall Class**

55.    Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

56.    The Defendant violated the TCPA by sending or causing to be sent calls to the cellular telephones and other protected telephones of Plaintiff and members of the Robocall Class using a pre-recorded messages without their prior express written consent.

57.    As a result of Defendant's violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and Robocall Class members are entitled to an award of $500 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

58.    The Plaintiff and Robocall Class members are entitled to an award of treble damages if the Defendant's actions are found to have been knowing or willful.

59.    Plaintiff and Robocall Class members are also entitled to and do seek injunctive relief prohibiting Defendant from using a pre-recorded voice in the future, except for emergency purposes.

## SECOND CAUSE OF ACTION

**Violation of the Telephone Consumer Protection Act
(47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c) on behalf of Plaintiff and the National Do Not Call Registry Class)**

60.    Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

61.    The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227. by making telemarketing calls, except for emergency purposes, to Plaintiff and members of the National Do Not Call Registry Class despite their numbers being on the National Do Not Call Registry.

62.    Defendant's violations were negligent, willful, or knowing.

63.    As a result of Defendant's and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf, violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the National Do Not Call Registry Class are entitled to an award of up to $500 and in damages for each and every call made and up to $1,500 in damages if the calls are found to be willful.

64.    Plaintiff and the members of the National Do Not Call Registry Class are also entitled to and do seek injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from making telemarketing calls to

10

telephone numbers registered on the National Do Not Call Registry, except for emergency purposes, in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A.     Injunctive relief prohibiting Defendant from calling telephone numbers advertising their goods or services, except for emergency purposes, to any residential number on the National Do Not Call Registry in the future;

B.     Injunctive relief prohibiting Defendant from using artificial or pre-recorded voices to contact cell phones and other protected lines, except for emergency purposes, in the future;

C.     That the Court enter a judgment awarding Plaintiff and all Class members statutory damages of $500 for each violation of the TCPA and $1,500 for each knowing or willful violation; and

D.     An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing Classes the Court deems appropriate, finding that Plaintiff is a proper representative of the Classes, and appointing the lawyers and law firms representing Plaintiff as counsel for the Classes;

E.     Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests a jury trial as to all claims of the complaint so triable.

Plaintiff,
By Counsel,


By: */s/ Jeremy C. Jackson*
Jeremy C. Jackson (PA Bar No. 321557)
BOWER LAW ASSOCIATES, PLLC
403 S. Allen St., Suite 210
State College, PA 16801
Tel.: 814-234-2626
jjackson@bower-law.com

Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(617) 485-0018
anthony@paronichlaw.com
*Subject to Pro Hac Vice*

12