## EXHIBIT G

2024 WL 3744234
Only the Westlaw citation is currently available.
United States District Court, W.D. Pennsylvania.

Micheue HAPPY and Chad Gordon,
individually and on behalf of All others
similarly situated, Plaintiffs,
v.
MARLETTE FUNDING, LLC d/b/a Best
Egg, Defendant.

C.A. No. 23-265 Erie
|
Filed August 9, 2024

**Synopsis**
**Background:** Consumers brought putative class action in diversity against internet-based lending company, asserting claims under Pennsylvania's Unfair Trade Practices, Consumer Protection Law (UTPCPL) and Loan Interest and Protection Law (LIPL), and Consumer Discount Company Act (CDCA), arising from allegations that company employed "rent-a-bank" scheme to avoid statutory interest caps applicable to non-banks. Company moved to compel arbitration.

**Holdings:** The District Court, Susan Paradise Baxter, J., held that:

standard for motion to dismiss for failure to state a claim was applicable for review of motion;

conflicts of law analysis was unnecessary; and

consumers were bound by arbitration provisions that were conspicuously hyperlinked on company's website.

Motion granted.

**Procedural Posture(s):** Motion to Compel Arbitration.

**Attorneys and Law Firms**

Kevin Abramowicz, East End Trial Group, LLC, Pittsburgh, PA, for Plaintiffs.

Alex Mahfood, Justin J. Kontul, Reed Smith LLP,

Pittsburgh, PA, for Defendant.

**MEMORANDUM OPINION**

Susan Paradise Baxter, District Judge

**I. INTRODUCTION**
**\*1** Plaintiffs Michele Happy ("Happy") and Chad Gordon ("Gordon") (collectively referred to as "Plaintiffs"), filed a putative class action complaint on behalf of themselves and all others similarly situated, against Defendant Marlette Funding, LLC d/b/a Best Egg, asserting claims under the Unfair Trade Practices and Consumer Protection Law, 75 Pa. C.S. §§ 201, *et seq.* ("UTPCPL"), the Loan Interest and Protection Law, 41 Pa. C.S. §§ 101, *et seq.* ("LIPL"), and the Consumer Discount Company Act ("CDCA"), regarding the interest rates charged on loans applied for and obtained through Defendant's website.

Presently pending before the Court is Defendant's motion to compel individual arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ("FAA"). [ECF No. 9]. Attached as an exhibit to Defendant's brief in support of its motion [ECF No. 10], is the affidavit of Defendant's Chief Operating Officer, Alessandro Rhodes ("Rhodes"), accompanied by copies of the loan agreements pertaining to the loans obtained by Plaintiffs, each of which contained a broad arbitration provision. [ECF No. 10-1].

The arbitration provision at issue in this case was contained within a "clickwrap agreement" to which the borrower must electronically assent to obtain the loan. "A clickwrap agreement appears on an internet webpage and requires that a user consent to any terms or conditions by clicking on a dialog box on the screen in order to proceed with the internet transaction." Feldman v. Google, Inc., 513 F. Supp. 2d 229, 236 (E.D. Pa. 2007).

Here, Plaintiffs applied for each of their loans through Defendant's "Best Egg" online lending platform. In order to complete each of the the online applications and obtain

their "Best Egg" loans, Plaintiffs were required to click a checkbox on the bottom half of the Truth and Lending Statement ("TIL Statement"), as shown in the following screenshot:[1]



(ECF No. 10-1, Rhodes affidavit, at ¶ 6).
The first (underlined) reference to "Loan Agreement" in the above screenshot contained a hyperlink to the loan agreement governing each of Plaintiffs' "Best Egg" loans. (Id. at ¶ 7). By clicking on this hyperlink, Plaintiffs had the opportunity to review their loan agreements before they completed the online applications for their "Best Egg" loans. (Id. at ¶ 8). Each loan agreement contained the arbitration provision at issue, at paragraph 26 thereof, which provided, in pertinent part, as follows:

a. Either party to this Agreement, or any subsequent assignee of this Agreement, may, at its sole election, require that the sole and exclusive forum and remedy for resolution of a Claim be final and binding arbitration pursuant to this paragraph 26 (the "Arbitration Provision"), unless you opt out as provided in paragraph 26(b) below. As used in this Arbitration Provision, "Claim" shall include any past, present, or future claim, dispute, or controversy involving you (or persons claiming through or connected with you), on the one hand, and us and/or any assign (or persons claiming through or connected with us and/or any assign), on the other hand, relating to or arising out of this Agreement and/or the activities or relationships that involve, lead to, or result from this Agreement, including (except to the extent provided otherwise in the last sentence of paragraph 26(f) below) the validity or enforceability of this Arbitration Provision, any part thereof, or the entire Agreement. Claims are subject to arbitration regardless of whether they arise from contract; tort (intentional or otherwise);

a constitution, statute, common law, or principles of equity; or otherwise. Claims include matters arising as initial claims, counter-claims, cross-claims, third-party claims, or otherwise. The scope of this Arbitration Provision is to be given the broadest possible interpretation that is enforceable.
*2
* * *

h. .... THE PARTIES ACKNOWLEDGE THAT THEY HAVE A RIGHT TO LITIGATE CLAIMS THROUGH A COURT BEFORE A JUDGE OR JURY, BUT WILL NOT HAVE THAT RIGHT IF ANY PARTY ELECTS ARBITRATION PURSUANT TO THIS ARBITRATION PROVISION. THE PARTIES HEREBY KNOWINGLY AND VOLUNTARILY WAIVE THEIR RIGHTS TO LITIGATE SUCH CLAIMS IN A COURT BEFORE A JUDGE OR JURY UPON ELECTION OF ARBITRATION BY ANY PARTY
(ECF No. 10-1, at pp. 13-15, 24-26, 35-37, 46-48) (capitalized terms in original).[2]

Plaintiffs have filed a response in opposition to Defendant's motion to compel arbitration denying the applicability and enforceability of the foregoing arbitration provision [ECF No. 12], and Defendant has filed a reply [ECF No. 15]. This matter is now ripe for consideration.

## II. DISCUSSION

### A. Standard of Review
When deciding a motion to compel arbitration, a court must first determine the applicable standard of review: the motion to dismiss standard under Fed. R. Civ. P. 12(b)(6) or the summary judgment standard under Fed. R. Civ. P. 56. See Silfee v. Automatic Data Processing, Inc., 696 Fed. Appx. 576, 578 (3d Cir. 2017); Guidotti v. Legal Helpers Debt Resol., LLC, 716 F.3d 764, 772 (3d Cir. 2013). "When it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay." Guidotti, 716 F.3d at 776. On the other hand, "if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to

a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then the parties should be entitled to discovery on the question of arbitrability," after which the court should consider the motion under the Rule 56 summary judgment standard. Id.; see also HealthplanCRM, LLC v. AvMed, Inc., 458 F. Supp. 3d 308, 316 (W.D. Pa. 2020) (If "the opposing party has come forth with reliable evidence that is more than a naked assertion ... that it did not intend to be bound by the arbitration agreement, even though on the face of the pleadings it appears that it did, then resort to discovery and Rule 56 is proper").

Here, the parties have both taken the position that Defendant's motion to compel should be reviewed under the Rule 12(b)(6) standard. (ECF No. 10, at pp. 12-13; ECF No. 12, at p. 8). The Court agrees because Plaintiffs have not opposed Defendant's motion with additional facts to place the arbitration provision in issue, but have, instead, raised a legal argument challenging the validity and enforceability of the provision. See Checchia v. SoLo Funds, 2023 WL 3868369, at *5 (E.D. Pa. June 7, 2023) (concluding that Rule 12(b)(6) standard applies because the defendant attached its Terms, which included the arbitration provision in question, as well as an affidavit explaining that a user must check off a box agreeing to the Terms and Conditions before creating an account, and the plaintiff failed to respond with additional facts sufficient to place the arbitration provision in issue). See also Silfee v. Automatic Data Processing, Inc., 696 Fed. Appx. 576, 578 (3d Cir. 2017) (If a party attaches an "authentic arbitration agreement" to a motion to compel arbitration, the court must apply the Rule 12(b)(6) standard unless the plaintiff "respond[s] to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue"); Parker v. Briad Wenco, LLC, 2019 WL 2521537, at *2 (E.D. Pa. May 14, 2019) ("If a party attaches an authentic arbitration agreement to a Motion to Compel arbitration, the Court must apply the Rule 12(b)(6) standard unless the plaintiff responds to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue").

**\*3** "The test in reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6) is whether, under any 'plausible' reading of the pleadings, the plaintiff would be entitled to relief." Guidotti, 716 F.3d at 772 (citation omitted). "Accordingly, when applying the Rule 12(b)(6) standard to a motion to compel arbitration, courts should examine whether there can be no reading of the Complaint that could rightly relieve Plaintiff of the arbitration provision." Parker, 2019 WL 2521537, at *2 (citation and internal quotations omitted).

## B. Analysis

### 1. FAA Standards

The FAA "establishes a strong federal policy in favor of compelling arbitration over litigation." Sandvik AB v. Advent Int'l Corp., 220 F.3d 99, 104 (3d Cir. 2000). The Act "places arbitration agreements on an equal footing with other contracts and requires courts to enforce them according to their terms." Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 67, 130 S.Ct. 2772, 177 L.Ed.2d 403 (2010). Thus, the Court "must resolve 'any doubts concerning the scope of arbitrable issues ... in favor of arbitration.' " CardioNet, Inc. v. Cigna Health Corp., 751 F.3d 165, 172 (3d Cir. 2014) quoting Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

Section 4 of the FAA provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court ... for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Because "arbitration is a matter of contract ... [and is] predicated upon the parties' consent," a court ruling on a motion to compel under § 4 must first determine if the parties intended to arbitrate the dispute. Guidotti, 716 F.3d at 771 (citations omitted). Specifically, a court must determine "(1) whether a valid agreement to arbitrate exists and (2) whether the particular dispute falls within the scope of that agreement." Trippe Mfg. Co. v. Niles Audio Corp., 401 F.3d 529, 532 (3d Cir. 2005). "If the response is in the affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." Santana v. A.L. Recovery, LLC, 2018 WL 3912830, at *6 (W.D. Pa. Aug. 16, 2018), quoting Century Indem. Co. v. Certain Underwriters at Lloyd's, 584 F.3d 513, 527 (3d Cir. 2009).

Here, as to the second prong, Plaintiffs has not disputed Defendant's contention that the subject matter of their claims falls within the scope of the purported arbitration agreement. Rather, Plaintiffs argue that the arbitration agreement is invalid and unenforceable because they "did not knowingly waive their constitutional rights" to a jury trial and "took no action to unambiguously manifest assent" to arbitrate their claims. Thus, the sole issue to be determined by the Court is whether a valid and enforceable arbitration agreement exists.

Happy v. Marlette Funding, LLC, --- F.Supp.3d ---- (2024)

## 2. Choice of Law

Under the FAA, "[a] federal court must generally look to the relevant state law on the formation of contracts to determine whether there is a valid arbitration agreement." Blair v. Scott Specialty Gases, 283 F.3d 595, 603 (3d Cir. 2002), citing First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). Here, Defendant argues that New Jersey law applies, based on a provision in each of Plaintiffs' loan agreements that states, in pertinent part, "The provisions of this Agreement will be governed by federal laws and, to the extent that state law applies and is not preempted by federal law, the laws of the State of New Jersey, without regard to any principle of conflicts of laws that would require or permit the application of the laws of any other jurisdiction." (See, e.g., ECF No. 10-1, at p. 13, ¶ 24). "In evaluating whether a contractual choice-of-law clause is enforceable, federal courts sitting in diversity apply the choice-of-law rules of the forum state." Homa v. American Express Co., 558 F.3d 225, 227 (3d Cir. 2009) (citations omitted).

**\*4** With respect to contract cases, Pennsylvania courts have adopted § 187 of the Restatement (Second) of Conflict of Laws, which generally honors the intent of the contracting parties and enforces choice of law provisions in contracts executed by them. Kruzits v. Okuma Mach. Tool Inc., 40 F.3d 52, 55 (3d Cir. 1994), citing Smith v. Commonwealth National Bank, 384 Pa.Super. 65, 557 A.2d 775, 777 (1989) appeal denied, 524 Pa. 610, 569 A.2d 1369 (1990). "However, the extent to which, and to what types of claims, Pennsylvania courts will apply a choice of law provision in a contract is determined by a number of factors." Grimm v. Discover Fin. Servs., 2008 WL 4821695, at \*8 (W.D. Pa. Nov. 4, 2008). "One such factor is the breadth of the contractual choice of law provision." Id.

"Pennsylvania courts analyze choice of law provisions to 'determine, based on their narrowness or breadth, whether the parties intended to encompass all elements of their association.' " Id., quoting Compositflex, Inc. v. Advanced Cardiovascular Systems, Inc., 795 F.Supp. 151, 157 (W.D. Pa. 1992). "Narrow choice of law provisions stating that a contract's terms or enforcement are to be governed, or construed, by the laws of another state are generally interpreted by Pennsylvania courts to relate only to the construction and interpretation of the contract at issue." Id., citing Jiffy Lube Int'l, Inc. v. Jiffy Lube of Pa., Inc., 848 F.Supp. 569 (E.D. Pa. 1994).

For instance, in Coram Healthcare Corp. v. Aetna U.S. Healthcare Inc., 94 F.Supp.2d 589 (E.D. Pa. 1999), the court held that a choice of law provision that stated "[t]his agreement shall be governed by the state of Delaware" applied only to claims relating to the parties' rights and duties under the contract itself. Id. at 594. The court found that had the parties wanted the choice of law provision to apply to other matters, such as the validity of the contract, they could have inserted language that Delaware law governed "all matters, including, but not limited to, matters of *validity*, construction, effect or performance." Id. (emphasis in original). See also Sherwin-Williams Co. v. Bei Enterprises, Inc., 2012 WL 5990313, at \*2 (W.D. Pa. Nov. 30, 2012) (finding that a contractual choice of law provision stating "This Agreement shall be governed by the internal laws of the State of Ohio" was "not dispositive" of claims challenging the validity of the agreement itself); Hite v. Lush Internet Inc., 244 F.Supp.3d 444, 450 n.3 (D.N.J. 2017) (noting "it would be anomalous to apply a contract's choice of law provision unless it has first been ascertained that the disputed contract exists"); Board of Educ. of the Twp. of Cherry Hill, Camden Cnty. v. Human Resource Microsystems, Inc., 2010 WL 3882498, at \*4 (D.N.J. Sept. 28, 2010) (finding "it would not be logical to import a contractual choice-of-law clause into a circumstance in which Plaintiff seeks to establish that there is no contract").

Because the contractual choice-of-law provision in this case is narrowly drawn to govern only the provisions of the agreement, without regard to the validity of the agreement itself, it is inapplicable to Plaintiff's challenge to the validity and enforceability of the arbitration agreement Defendant seeks to enforce.

When a choice of law provision in a contract does not apply to particular claims, as is the case here, the claims not covered by the provision must be analyzed under the factors set forth by the United States Court of Appeals for the Third Circuit in Hammersmith v. TIG Insur. Co., 480 F.3d 220 (3d Cir. 2007). In the first part of this analysis, a court must determine if there is an actual or real difference between potentially applicable laws. Hammersmith, 480 F.3d at 230, citing Air Prods. & Chems., Inc. v. Eaton Metal Prods. Co., 272 F.Supp.2d 482, 490 n. 9 (E.D. Pa. 2003) (explaining that courts must determine whether states would actually treat an issue any differently). If no difference between the applicable laws of each state exists, a choice of law analysis is unnecessary. Id.

**\*5** Here, the Court finds that there is no actual conflict between the laws of New Jersey and Pennsylvania with

Happy v. Marlette Funding, LLC, --- F.Supp.3d ---- (2024)

respect to contract formation. See Chilutti v. Uber Technologies, Inc., 300 A.3d 430, 443 (Pa. Super. 2023) (en banc) ("Under Pennsylvania law, the elements of an enforceable contract are an offer, acceptance, consideration, or mutual meeting of the minds.... the very essence of an agreement is that the parties mutually assent to the same thing")(citations and internal quotations omitted); Atalese v. U.S. Legal Servs. Grp., L.P., 219 N.J. 430, 99 A.3d 306, 312-13 (2014) (Under New Jersey law, "A legally enforceable agreement requires a 'meeting of the minds' " and "must be the product of mutual assent, as determined under customary principles of contract law") (citations and internal quotations omitted). Additionally, Plaintiffs concede that both Pennsylvania and New Jersey law "require contracts to include explicit waiver-of-rights language to prove that a consumer assented to waive" the constitutional right to a jury trial. (ECF No. 12, at p. 10).

Nonetheless, Plaintiffs argue that an "actual conflict" still exists because "Pennsylvania requires a 'stricter burden of proof' than New Jersey" regarding a party's assent to waive constitutional rights. (Id.). Plaintiffs' argument in this regard is based upon the Pennsylvania Superior Court's recent pronouncement in Chilutti that, in Pennsylvania, "a stricter burden of proof is necessary to demonstrate a party's unambiguous manifestation of assent to arbitration." 300 A.3d at 449-50. According to the Chilutti court, "[t]his is accomplished by the following: (1) explicitly stating on the registration websites and application screens that a consumer is waiving a right to a jury trial when they agree to the company's 'terms and conditions,' and the registration process cannot be completed until the consumer is fully informed of that waiver; and (2) when the agreements are available for viewing after a user has clicked on the hyperlink, the waiver should not be hidden in the 'terms and conditions' provision but should appear at the top of the first page in bold, capitalized text." 300 A.3d at 450.

However, the precedential effect of this pronouncement is questionable for a number of reasons. First, the decision is not final, as the appellees in Chilutti filed a petition for allowance of appeal with the Pennsylvania Supreme Court on August 18, 2023, which remains pending. Second, it is not at all clear that the Pennsylvania Supreme Court will uphold the Superior Court's adoption of a stricter standard in light of the Court's prior recognition that the United States Supreme Court "[i]s unsympathetic to [a] state court's concern for the right to a jury trial" under the FAA, and that the FAA preempts state laws "that condition[ ] the enforceability of an arbitration clause upon a specific notice requirement." Taylor v. Extendicare Health Facilities, Inc., 637 Pa. 163, 147 A.3d 490, 503, 509 (2016) (citations omitted).[3] Finally, the Chilutti court's justification for applying a

stricter standard is flawed. In particular, the court noted that it was "applying the same scrutiny the Pennsylvania Supreme Court and [the Superior] Court did with respect to orders compelling arbitration in wrongful death actions involving negligent nursing center facilities." Id. at 450 n. 23, citing Pisano v. Extendicare Homes, Inc., 77 A.3d 651 (Pa. Super. 2013) and Taylor, supra. However, both Pisano and Taylor are inapposite, as both cases dealt with the enforceability of arbitration agreements against wrongful death complainants who were not parties to the agreements at issue. This Court is unaware of any Pennsylvania Supreme Court precedent that applies the stricter standard recognized by the Chilutti court to circumstances similar to those present in this case.

*6 Thus, the Court finds that there is no actual conflict between the laws of New Jersey and Pennsylvania regarding the issues involved in this case, rendering it unnecessary to conduct any further choice of law analysis. There being no actual conflict, the Court may apply Pennsylvania and New Jersey law interchangeably. See Huber v. Taylor, 469 F.3d 67, 74 (3d Cir. 2006) ("If there is no conflict, then the district court sitting in diversity may refer interchangeably to the laws of the states whose laws potentially apply").

### 3. Application

The Court now considers whether a valid and enforceable agreement to arbitrate exists. "Although the enforceability of web-based agreements will often depend on a 'fact-intensive inquiry,' the Court may determine that a web-based agreement to arbitrate exists where notice of the agreement was 'reasonably conspicuous and manifestation of assent unambiguous as a matter of law.' " HealthplanCRM, LLC v. AvMed, Inc., 458 F.Supp.3d 308, 331 (W.D. Pa. 2020), quoting Meyer v. Uber Techs., Inc., 868 F.3d 66, 76 (2d Cir. 2017) (citation omitted). "To be reasonably conspicuous, notice [of an agreement] must be displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it." Checchia, 2023 WL 3868369, at *9 (citation and internal quotation omitted); see also Liptak v. Accelerated Inventory Mgmt., LLC, 2021 WL 650514, at *1 (W.D. Pa. Feb. 19, 2021) (finding that a borrower agreement not visible on the webpage but available through an un-underlined green hyperlink was reasonably conspicuous to enforce arbitration agreement contained in the hyperlinked documents). In general, "clickwrap agreements are routinely enforced by the courts." HealthplanCRM, 458 F.Supp.3d at 334.

"Importantly, in assessing whether a party manifested an intent to enter a [web-based] contract, the Court looks not to inward, subjective intent but, rather, to the 'intent a reasonable person would apprehend in considering the parties' behavior.' " Id., quoting Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 582 (3d Cir. 2009) (citation omitted). Thus, "an internet user need not actually read the terms and conditions or click on a hyperlink that makes them available as long as she has notice of their existence." Liptak v. Accelerated Inventory Mgmt., LLC, 2021 WL 650514, at *2 (W.D. Pa. Feb. 19, 2021), citing Nicosia v. Amazon.com, Inc., 834 F.3d 220, 222 (2d Cir. 2016). "Whether the user actually reads the terms to which she assents is immaterial." Id., quoting Zabokritsky v. JetSmarter, Inc., 2019 WL 2563738, *3 (E.D. Pa. June 20, 2019); see also Feldman, 513 F.Supp.2d at 236 ("Absent a showing of fraud, failure to read an enforceable clickwrap agreement, as with any binding contract, will not excuse compliance with its terms").

Here, Plaintiffs challenge the enforceability of Defendant's clickwrap agreement, noting that, while the TIL Statement on Defendant's website provided a checkbox next to the statement, "I have read and agree to the E-Sign Act Consent ...," there was no independent checkbox next to the ensuing paragraph stating, in pertinent part, "I have read The ... Loan Agreement ...., and intend this to be my electronic signature on the Loan Agreement." (ECF No. 12, at p. 19). Thus, Plaintiffs argue that they "took no action to unambiguously manifest assent to arbitrate their claims" because they "were not asked to check a box indicating that they agreed to the "Loan Agreement." (Id. at pp. 19-20). This argument is unavailing.

**\*7** While the Court acknowledges that the TIL Statement does not provide a second checkbox next to the paragraph stating, "I have read The ... Loan Agreement ....," it does provide an introductory statement immediately above the checkbox provided, which states, in bold type: **"By clicking the checkbox and the Accept and Submit button below, I am telling you that:"**. This statement was sufficient to put the Plaintiffs on notice that the act of clicking the checkbox next to the statement "I have read and agree to the E-Sign Act Consent ..." also meant that they were acknowledging they "read The ... Loan Agreement ....," both of which were then confirmed by the

Plaintiffs' further act of clicking the "Accept and Submit" button that was highlighted in orange at the bottom of the page. Moreover, the term "Loan Agreement" was set apart from the surrounding text by being placed in underlined, bold type, signifying a hyperlink to the full Loan Agreement containing the arbitration provision at issue.

Thus, the Court finds that the hyperlinks to the Agreements were reasonably conspicuous such that a reasonably prudent Internet user would have seen them and clicked on them if they chose to avail themselves of the opportunity to read the Agreements they acknowledged they had read by clicking the checkbox and "Accept and Submit" button. Compare Hine v. LendingClub Corp., 2023 WL 8113234, at *7 (W.D. Pa. Nov. 22, 2023) ("While the Loan Agreement and Borrower Membership Agreement hyperlinks are not underlined or in bold font, it would be readily apparent to a reasonably prudent Internet user that distinct green font used for document descriptions like 'Loan Agreement' and 'Borrower Membership Agreement' while all other surrounding text is in black font would contain hyperlinks"). It is undisputed that Plaintiffs would not have been able to obtain each of their loans without selecting the electronic signature box and selecting the "Accept and Submit" button. Moreover, because Plaintiffs did not have to actually read the terms and conditions or click on the hyperlink containing the Agreements to be bound by the terms therein, mutual assent exists here.

For the foregoing reasons, the Court finds that Plaintiffs are bound by the arbitration provisions contained within the loan agreements that were conspicuously hyperlinked on. Defendant's website. Additionally, the Court finds that the arbitration provisions prominently displayed in all capitalized terms "clear and unambiguous language that the [P]laintiff[s] ... waive[ed] [their] right to sue or got to court to secure relief." Atalese, 99 A.3d at 315-16. Consequently, the Court will grant Defendant's motion to compel arbitration on an individual basis.

An appropriate Order follows.

**All Citations**

--- F.Supp.3d ----, 2024 WL 3744234

Footnotes

1    The dollar figures shown are merely illustrative and have no relevance to any of the loans at issue in this case.

**Happy v. Marlette Funding, LLC, --- F.Supp.3d ---- (2024)**

2      At paragraph 26(b), the arbitration provision granted Plaintiffs the right to opt out of the arbitration provision within thirty (30) days of execution of the loan agreement; however, Plaintiffs do not allege that they did so. Additionally, paragraph 26(f) expressly excludes class arbitration. (see, e.g., ECF No. 10-1 at pp. 14-50).

3      For instance, in Doctor's Assoc. Inc. v. Casarotto, 517 U.S. 681, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996), the United States Supreme Court reviewed the enforceability of a Montana statute that provided: "Notice that a contract is subject to arbitration ... shall be typed in underlined capital letters on the first page of the contract; and unless such notice is displayed thereon, the contract may not be subject to arbitration." Mont. Code Ann. § 27-5-114(4). After noting the FAA's strong policy in favor of arbitration, the Court concluded that Montana's statute "directly conflicts with § 2 of the FAA because the State's law conditions the enforceability of arbitration agreements on compliance with a special notice requirement not applicable to contracts generally. The FAA thus displaces the Montana statute with respect to arbitration agreements covered by the Act." 517 U.S. at 687, 116 S.Ct. 1652; see also Kindred Nursing Centers Ltd. Partnership v. Clark, 581 U.S. 246, 254-55, 137 S.Ct. 1421, 197 L.Ed.2d 806 (2017) ("A rule selectively finding arbitration contracts invalid because improperly formed fares no better under the [FAA] than a rule selectively refusing to enforce those agreements once properly made").

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.