# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

LEON WEINGRAD, individually and on
behalf of a class of all persons and
entities similarly situated,

        Plaintiff

vs.

QUOTEWIZARD.COM, LLC

        Defendant.

Case No. 25-cv-2

## PLAINTIFF'S RESPONSE IN OPPOSITION TO
## DEFENDANT'S MOTION TO COMPEL ARBITRATION

# I.  Contents

I.    Contents ...................................................................................................- 1 -

II.   TABLE OF AUTHORITIES .................................................................- 1 -

III.  INTRODUCTION ...............................................................................- 3 -

IV.   BACKGROUND ..................................................................................- 3 -

V.   LEGAL STANDARD ...........................................................................- 4 -

VI.   DEFENDANT'S MOTION TO COMPEL ARBITRATION FAILS........- 6 -

A.  Plaintiff has provided evidence showing that he never visited the website and thus never agreed to arbitrate his claims and Defendant's evidence on its face does not relate to the Plaintiff. ...................................................- 6 -

B.  Case law against the *very Defendant here* shows the purported agreement to arbitrate, even if agreed to, is legally defective, which forecloses on the arbitrability of the Plaintiff's claims. ...........................................................- 11 -

C.  To the extent that the Court construes the Defendant's motion as a motion to dismiss, it is due to be denied. .....................................................................- 20 -

VII.  CONCLUSION.....................................................................................- 22 -

# II.  TABLE OF AUTHORITIES

**Cases**

*Abramson v. Oasis Power LLC*, No. 2:18-CV-00479, 2018 WL 4101857 (W.D. Pa. July 31, 2018) .............................................................................................- 21 -

*Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325 (11th Cir. 2016) .......- 12 -

*Bradley v. DentalPlans.com*, No. CV 20-1094-BAH, 2024 WL 2865075 (D. Md. June 6, 2024).......................................................................... - 15 -, - 18 -

*Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513 (3d Cir. 2009)................................................................................................- 5 -

*Coinbase, Inc. v. Suski*, 602 U.S. 143 (2024) ......................................... - 12 -, - 13 -

*Colgate v. JUUL Labs, Inc.*, 402 F. Supp. 3d 728 (N.D. Cal. 2019)..................- 19 -

*Conrad v. Camping World Holdings Inc.* No. 4:24-CV-171-CLM, 2025 WL 66689 (N.D. Ala. Jan. 9, 2025)...................................................... - 10 -, - 11 -

*Cunningham v. Rapid Response Monitoring Servs.*, 251 F. Supp. 3d 1187 (M.D. Tenn. 2017).............................................................................................- 21 -

*Dukes v. Lancer Ins. Co.*, 390 F. App'x 159 (3d Cir. 2010) ..............................- 21 -

*Grand Wireless, Inc. v. Verizon Wireless, Inc.*, 748 F.3d 1 (1st Cir. 2014) .......- 12 -

*Guidotti v. Legal Helpers Debt Resol., L.L.C.*, 716 F.3d 764 (3d Cir. 2013).- 5 -, - 6 -

*Hobbs v. Apollo Interactive, Inc.*, No. 4:19-CV-57 (CDL), 2019 WL 6878863 (M.D. Ga. Dec. 17, 2019) ........................................................................ - 9 -, - 10 -

*In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830 (2012) ................................................... - 14 -, - 16 -, - 17 -

*Interocean Shipping Co. v. National Shipping & Trading Corp.*, 462 F.2d 673 (2d Cir. 1972) .......................................................................................... - 6 -

*Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156 (3d Cir. 2009) ....... - 5 -

*Lamps Plus, Inc. v. Varela*, 587 U.S. 176 (2019) ................................................ - 6 -

*Larson v. Harman Mgmt. Corp.*, No. 116CV00219DADSKO, 2016 WL 6298528 (E.D. Cal. Oct. 27, 2016) ......................................................................... - 15 -

*Mantha v. Quotewizard.com, LLC*, No. CV 19-12235-LTS, 2021 WL 6061919 (D. Mass. Dec. 13, 2021) .................................................................. - 17 -, - 18 -

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985). - 7 -

*Murray v. GMAC Mortg. Corp.*, 434 F.3d 948 (7th Cir. 2006) ......................... - 21 -

*Outley v. New York*, 837 F.2d 587 (2d Cir. 1988) .............................................. - 21 -

*Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63 (2010) .............................. - 12 -, - 13 -

*Robert D. Mabe, Inc. v. OptumRX*, 43 F.4th 307 (3d Cir. 2022) ................ - 6 -, - 7 -

*Rojas v. GoSmith, Inc.*, 2020 WL 831585 (N.D. Ind. Feb. 20, 2020) ............... - 19 -

*Schuchmann v. Great Am. Power, LLC*, No. 3:23-CV-1604, 2024 WL 219267 (M.D. Pa. Jan. 19, 2024)......................................................................... - 19 -

*Starling v. OnProcess Tech., Inc.*, No. 1:23-CV-10949-JEK, 2024 WL 1258501 (D. Mass. Mar. 25, 2024) ...................................................................... - 16 -

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662 (2010) .................. - 6 -

*Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468 (1989).......................................................................... - 12 -

*Walker v. Nautilus, Inc.*, 541 F. Supp. 3d 836 (S.D. Ohio 2021) ....................... - 19 -

*Williams v. PillPack LLC*, 343 F.R.D. 201 (W.D. Wash. 2022) ........................ - 14 -

**Statutes**

15 U.S.C. § 7001(c) .............................................................................. - 16 -, - 17 -

15 U.S.C. § 7001(c), (c)(1). ........................................................................... - 17 -

47 C.F.R. § 64.1200(a)................................................................................... - 16 -

47 C.F.R. § 64.1200(c)................................................................................... - 16 -

47 C.F.R. § 64.1200(f) ....................................................................... - 15 -, - 16 -

47 U.S.C. § 227 .............................................................................................. - 3 -

9 U.S.C. § 1 ................................................................................................... - 4 -

9 U.S.C. § 4 ........................................................................... - 4 -, - 7 -, - 13 -

## III.    INTRODUCTION

Defendant QuoteWizard.com, LLC has filed a motion to compel arbitration based on a purported website visit to a website called Rate Kick from Islamabad, Pakistan that contains information for someone else other than Mr. Weingrad. Because, on face, Mr. Weingrad did not agree to arbitrate his claims against QuoteWizard, its motion should be denied.

## IV.    BACKGROUND

This case involves prerecorded telemarketing calls and text messages made in plain violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (hereinafter referred to as the "TCPA") by the Defendant QuoteWizard.com, LLC to market its insurance offerings. Defendant QuoteWizard seeks to avoid this lawsuit by compelling arbitration based on putative "Terms of Use" purportedly entered into between someone or something (like a bot) on a website, Rate Kick, that QuoteWizard alleges it owns.

In support of its motion to compel arbitration, QuoteWizard has submitted supplementary materials, whereby it contends that an individual named Gary Williams, not the Plaintiff, submitted a request on Rate Kick's website while geographically located in Islamabad, Pakistan, almost 7,000 miles away, from this Court. Incredibly, however, QuoteWizard attempts to explain away these

inconsistencies by claiming that the Plaintiff used a pseudonym and somehow was able to "spoof" his geolocation to Pakistan.

On the face of the Defendant's own evidence, therefore, Mr. Weingrad never visited the website alleged, had no notice of any arbitration provision, and certainly did not agree to arbitrate any claims. Nevertheless, and despite this flimsy evidence contending that Mr. Weingrad somehow visited the website and submitted his information, Mr. Weingrad has submitted a Declaration in response to the Defendant's motion which confirms, among other things, that he never visited the Rate Kick website or submitted his phone number to the website, has never been to Pakistan, does not know anyone in Pakistan, does not have access to any computers or internet in Pakistan, and does not know a Gary Williams. As such, the Plaintiff's declaration renders the Defendant's contentions incontrovertibly false. In sum, Mr. Weingrad had no knowledge of, never agreed to, and would never agree to, arbitrate his claims against QuoteWizard.

## V.    LEGAL STANDARD

In evaluating a motion to compel arbitration in a TCPA case, the Federal Arbitration Act ('FAA'), 9 U.S.C. § 1 *et seq*., governs the enforceability of an arbitration agreement. That statute commands that before compelling arbitration of a dispute, the Court must first be satisfied that the parties agreed to arbitrate that dispute. 9 U.S.C. § 4 (directing that courts must direct the parties to arbitration

"upon being satisfied that the making of the agreement for arbitration . . . is not in issue"); *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 532 (3d Cir. 2009). Once an enforceable agreement has been established, the court must then turn to whether the particular dispute factually and legally falls within the scope of the agreement. *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160, 163 (3d Cir. 2009).

Courts in the Third Circuit employ a two-standard inquiry when determining whether an enforceable agreement to arbitrate formed when deciding a motion to compel arbitration under the FAA. In evaluating whether to apply the Rule 56 standard or Rule 12(b)(6) standard, the court looks to whether the motion to compel has as a predicate the "requisite clarity to establish on its face that the parties agreed to arbitrate, or the opposing party has come forth with reliable evidence that is more than a naked assertion that it did not intend to be bound by the arbitration agreement, even though on the face of the pleadings it appears that it did." *Guidotti v. Legal Helpers Debt Resol., L.L.C.*, 716 F.3d 764, 774 (3d Cir. 2013). If it does, and the opposing party has produced no evidence to the contrary, the Rule 12(b)(6) standard is appropriate. *Id.*

Where, instead, *either* "the motion to compel arbitration does not have as its predicate a complaint with the requisite clarity" to determine that a valid agreement to arbitrate was formed, *or* the party opposing the motion has come

forth with evidence beyond a "naked assertion . . . that it did not intend to be bound" by such an agreement "to place the question in issue", the motion must be decided under the standard applicable to motions for summary judgment under Rule 56. *Id.* Under that standard, "An unequivocal denial that" the parties agreed to arbitrate, "accompanied by supporting affidavits," is sufficient to require jury determination on whether the parties agreed to arbitrate. *Id.* (ultimately citing *Interocean Shipping Co. v. National Shipping & Trading Corp.*, 462 F.2d 673, 676 (2d Cir. 1972)). Moreover, when a motion to compel arbitration cannot be decided on the face of the complaint, both parties must be afforded an opportunity to develop the factual record relevant to the motion through formal discovery. *Robert D. Mabe, Inc. v. OptumRX*, 43 F.4th 307, 329–30 (3d Cir. 2022).

## VI.   DEFENDANT'S MOTION TO COMPEL ARBITRATION FAILS

### A.    Plaintiff has provided evidence showing that he never visited the website and thus never agreed to arbitrate his claims and Defendant's evidence on its face does not relate to the Plaintiff.

"Arbitration is a matter of consent, not coercion." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 664 (2010). The Supreme Court has held time and time again that, despite the liberal policy favouring arbitration, "consent" remains a "first principle that underscores" all arbitration decisions. *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 184 (2019). Consent is essential under the FAA because arbitrators wield only the authority they are given. *Id.* As the party seeking

to arbitrate, the Defendant bears the burden of demonstrating, at the same level as at summary judgment, not only that a valid arbitration agreement exists but also that the *Plaintiff himself* agreed to be bound by the clause of which he had adequate legal notice. *Robert D. Mabe, Inc.*, 43 F.4th at 329 ("Because it is plausible that a number of the pharmacies were never given the terms of their Provider Agreements, it is likewise plausible that holding the pharmacies to the arbitration agreements contained therein would be procedurally unconscionable.").

The Federal Arbitration Act commands that, before compelling arbitration of a dispute, the Court must first be satisfied that the parties agreed to arbitrate that dispute. 9 U.S.C. § 4 (directing that courts must direct the parties to arbitration "upon being satisfied that the making of the agreement for arbitration . . . is not in issue"); *see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) ("[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute."). And, "[i]f the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4.

The Defendant is not entitled to invoke any arbitration clause against Mr. Weingrad because the factual question of whether the Plaintiff even agreed as a matter of contract is called into issue. On face, and putting aside the Plaintiff's own declaration and evidence, there exist serious actual issues with the very evidence

proffered by the Defendant, including that the purported arbitration agreement doesn't even name the Plaintiff and originated in Islamabad, Pakistan. The Plaintiff confirms these issues and independently verifies that he did not visit the website, had nothing to do with the visit, and thus did not agree to arbitrate anything. (Weingrad Dec. ¶ 14). The Plaintiff does not know Gary Williams and has never inputted any information into Rate Kick's website or directed anyone to do so on his behalf. (Weingrad Dec. ¶ 9). The Plaintiff has never even visited the Rate Kick website. (Weingrad Dec. ¶ 11). These serious and genuine factual disputes doom QuoteWizard's assertion of arbitration.

Despite these internal deficiencies, and the Plaintiff's own denials, Defendant's motion is rife with the false and unsupported assertion that the "Plaintiff" submitted information to the Rate Kick website. Defendant attempts to explain away these serious deficiencies by positing that the Plaintiff's previous litigation history whereby he has sued other companies for also violating the TCPA somehow means that he submitted a fake name and somehow faked his geolocation to appear that he was located in Pakistan. The Plaintiff's own declaration demonstrates that the Defendant's allegations in this regard have no legs and are incontrovertibly false, warranting denial of the motion entirely. (Weingrad Dec. ¶ 24). Not only does the Plaintiff categorically deny each element of the Defendant's theory, Mr. Weingrad's declaration also makes clear that he

does not possess the skills necessary to attempt to "spoof" his location. (Weingrad Dec. ¶ 22). As a technical matter, and if these blatantly false assertions are allowed to proceed to trial, the Plaintiff will also show through expert testimony that the Defendant's theory in this respect is technologically impossible as this case proceeds, as it must.

At least two parallel court decisions dictate that the Defendant's motion ought to be denied on the basis of the Plaintiff's declaration *alone*. The Middle District of Georgia's decision in *Hobbs v. Apollo Interactive, Inc.*, No. 4:19-CV-57 (CDL), 2019 WL 6878863 (M.D. Ga. Dec. 17, 2019), is particularly instructive.[1] There, a TCPA defendant sought to compel the plaintiff's claims to arbitration by contending, like Defendant here, that the plaintiff agreed to an arbitration provision as a result of his visits to the defendant's website. In finding no agreement to arbitrate existed, the court explained:

> Plaintiff presented evidence that he "did not visit www.bestautoinsurance.com" and that it would have been impossible for him to access the website in the manner Defendant says he did. According to Plaintiff, at 3:57 p.m. on August 29, 2018, Plaintiff was driving from a job at the Atlanta Zoo in southeast Atlanta, Georgia to Columbus, Georgia (southwest of Atlanta) and thus could not have been in Norcross, Georgia (northeast of Atlanta). Plaintiff also presented evidence that he does not own a device that uses the Windows 7 operating system; he uses his cellular telephone for internet access. Finally, Plaintiff stated that he "cannot know for certain who accessed" Defendant's website and input his information, but "[w]hat [he] do[es] know for certain is that [he] did not visit www.bestautoinsurance.com." From this, a reasonable factfinder could

---

[1] A copy of this unpublished decision is attached herein as Exhibit A.

determine that Plaintiff did not enter his personal information on Defendant's website or click "submit." So, a reasonable factfinder could conclude that Plaintiff did not assent to the website's terms, including the arbitration provision. Accordingly, there is a genuine fact dispute as to whether Plaintiff entered an arbitration agreement with Defendant, and the Court thus cannot conclude as a matter of law at this stage in the proceedings that the parties had a valid agreement to arbitrate. For this reason, Defendant's motion to dismiss in favor of arbitration is denied.

*Id.* at *1-*2 (cleaned up).

The Court in *Conrad v. Camping World Holdings Inc.* reached a similar conclusion, reasoning that the factual question of whether or not the plaintiff opted in to receive text messages from the defendant on a website containing an arbitration provision was put at issue and denied a similar motion to compel arbitration. No. 4:24-CV-171-CLM, 2025 WL 66689, at *2 (N.D. Ala. Jan. 9, 2025).[2] There, the court first agreed that its decision "as to whether an arbitration agreement exists is simply a matter of contract," and that when a party does not "sign or otherwise enter the contract, he cannot be bound by its terms." *Id.* The court noted that the defendant provided no evidence to controvert the plaintiff's declaration, as here, that he did not agree to arbitrate any claims because he did not own the telephone number at issue at the time of the alleged opt-in, and thus that the defendant could not "show the parties had a meeting of the minds about arbitrating claims related to the CWH text message service." *Id.*

---

[2] A copy of this unpublished decision is attached herein as Exhibit B.

Accordingly, because Defendant's motion to compel is exclusively predicated on a purported agreement between Defendant, who is alleged to have operated the Rate Kick website, and someone unrelated to the Plaintiff here, there is no basis for the court to compel arbitration, and the Defendant's motion should be denied outright, as the Defendant has and will be unable to meet its burden of demonstrating even a genuine issue entitling the Plaintiff to wholesale denial of the motion under the applicable summary judgment standard. The court in *Conrad* did the same, holding as a matter of law that the defendant did not meet its burden of demonstrating a disputed factual issue with respect to the claimed provision to justify an arbitration trial. *Id.* And because the Plaintiff agreed to nothing, he did not agree to any incorporated class waiver provision. Being that there is demonstrably no meeting of the minds as an initial matter, the Defendant's motion is due to be denied as a matter of law.

### B. Case law against the *very Defendant here* shows the purported agreement to arbitrate, even if agreed to, is legally defective, which forecloses on the arbitrability of the Plaintiff's claims.

Nor is the question of whether an arbitration agreement formed as a matter of law, as here, reserved to the arbitrator, even with a purported delegation provision, as here. While the FAA creates a "presumption of arbitrability" such that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," "the presumption does not apply to disputes concerning

whether an agreement to arbitrate has been made." *Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016). Consistent with the "general proposition" that "a contract cannot bind a non-party," *Grand Wireless, Inc. v. Verizon Wireless, Inc.*, 748 F.3d 1, 9 (1st Cir. 2014), "the FAA does not require parties to arbitrate when they have not agreed to do so," *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989).

Last term, the Supreme Court addressed the proper procedure to follow when conflicts arise as to the enforceability of arbitration contracts, such as when one of the contracts is facially subject to an arbitration provision and one which is not. *Coinbase, Inc. v. Suski*, 602 U.S. 143, 143 (2024). The Supreme Court held that the first question in any arbitration dispute must be what the parties agreed to. *Id.* at 145. The Supreme Court clarified that *this* "fundamental" question is one for the *Court*, not the arbitrator, to decide, and is driven by contractual interpretation principles under state contract law. *Id.* In *Coinbase*, the Supreme Court reaffirmed that "where, as here, a challenge applies "equally" to the whole contract and to an arbitration or delegation provision, a *court* must address that challenge." *Id.* at 151 (*quoting Rent-A-Ctr., W., Inc. v. Jackson,* 561 U.S. 63, 71 (2010)). The Court went on to explain that in such cases, just like here, "basic principles of contract and consent require that result. Arbitration and delegation agreements are simply

- 12 -

contracts, and, normally, if a party says that a contract is invalid, the court must address that argument before deciding the merits of the contract dispute." *Id.* (quoting *Rent-A-Ctr.*, 561 U.S. at 71 for the proposition that "If a party challenges the validity . . . of the precise agreement to arbitrate at issue, the federal court must consider the challenge before ordering compliance with that [arbitration] agreement."). And the explicit text of Section 4 makes it clear that formation is a *jury* issue to the extent it does not rest on solely legal grounds, "upon such demand the court shall . . . specially call a jury for that purpose. If the jury find that no agreement in writing for arbitration was made or that there is no default in proceeding thereunder, the proceeding shall be dismissed." 9 U.S.C. § 4.

As outlined by the Supreme Court in *Coinbase*, the Court need not even embark on the aforementioned factual dispute of whether or not the parties agreed to arbitrate because this Court has independent grounds to hold the arbitration agreement unenforceable both as a matter of federal law under the TCPA and under the Federal ESIGN Act.

The purported agreement to arbitrate based on alleged consent to contact the Plaintiff is legally defective because it fails to name the specific seller or goods being sold here, that is, QuoteWizard, as the text naming "QuoteWizard" as a party to which consent is purportedly being provided is cut-off and impossible to read, as illustrated in the Defendant's own brief:



As a matter of law, the Rate Kick website contains no language sufficing for "prior express written consent" as required by the TCPA for a prerecorded voice because it does not clearly authorize calls made by or on behalf of QuoteWizard, and thus this dispute falls outside the scope of any arbitration agreement. Without legally sufficient TCPA consent, there is no consent for an arbitrator to arbitrate. Another court examined far less defective "opt in" language and held that such language does not constitute TCPA prior express written consent. *See Williams v. PillPack LLC*, 343 F.R.D. 201, 209 (W.D. Wash. 2022) (certifying a TCPA class, rejecting defence claim that individual issues relating to consent would predominate, and noting the TCPA disclosure relied upon did not disclose the defendant as the "seller"). TCPA consent rules require naming a specific *seller*, like QuoteWizard, on whose behalf consent is obtained. *In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 at ¶33 (2012); 47 C.F.R. § 64.1200(f)(9). It follows that, if the website did not conspicuously obtain consent for QuoteWizard to make telemarketing calls as an initial matter, any purported arbitration language in the Terms does not apply to

TCPA disputes, nor could it, because TCPA consent rules require naming a *specific seller*.

In other words, TCPA consent must name the company (like QuoteWizard) whose product is being sold, in addition to being logically and topically related to the product being sold. It follows that, if the website did not obtain any purported consent to receive telemarketing calls selling QuoteWizard's products and services because the text was cut off, any purported arbitration language on that website does not apply to TCPA disputes, nor can it, because the consent must be obtained to receive such telemarketing calls *from a specific seller*. *See Larson v. Harman Mgmt. Corp.*, No. 116CV00219DADSKO, 2016 WL 6298528, at *4 (E.D. Cal. Oct. 27, 2016) (quoting 47 C.F.R. § 64.1200(f)(8)).[3] Nor, for that matter, do courts recognize defective consent under the TCPA. *Bradley v. DentalPlans.com*, No. CV 20-1094-BAH, 2024 WL 2865075, at *7 (D. Md. June 6, 2024), (denying motion for summary judgment on basis that legally sufficient consent was not obtained).[4]

The rationale for this rule, especially in the arbitration context, is obvious. Without naming a specific seller, a seller could rely on an arbitration agreement on any of its websites to extend to any interaction on the website, even a legally deficient one, and turn the entire arbitration process into one of coercion and

---

[3] A copy of this unpublished decision is attached herein as Exhibit C.
[4] A copy of this unpublished decision is attached herein as Exhibit D.

"gotcha" tactics. And without being logically and typically related to the goods and services being offered, a large conglomerate could rely on an arbitration agreement for one product or service to extend to people even merely using related products. *Cf. Starling v. OnProcess Tech., Inc.*, No. 1:23-CV-10949-JEK, 2024 WL 1258501, at *5 (D. Mass. Mar. 25, 2024) (denying motion to compel arbitration and holding that non-signatory family member was not bound by arbitration agreement despite being listed as an alternate contact on account).[5]

Second, and independently, the arbitration agreement, and any corresponding consent obtained therefrom, is legally deficient because it did not comply with the requirements of the Federal E-SIGN Act, 15 U.S.C. § 7001(c). As described above, the FCC's regulations implementing the TCPA require a *signed* writing. 47 C.F.R. § 64.1200(c)(2); 47 C.F.R. § 64.1200(a)(2). Of course, one may elect to obtain electronic consent, including to arbitrate, in lieu of a signed writing. But if it does, that TCPA consent, and any associated arbitration agreement, must comply with the requirements under the E-SIGN Act. 47 C.F.R. § 64.1200(f)(9) (defining prior express written consent and requirements for electronic signatures); *see In re Rules 2012* ¶ 34 ("[C]onsent obtained in compliance with the E-SIGN Act will satisfy the requirements of our revised rule, including permission obtained via an email, website form, text message, telephone keypress, or voice recording.").

---

[5] A copy of this unpublished decision is attached herein as Exhibit E.

Consent obtained in accordance with the E-SIGN Act's requirements may be sufficient TPCA consent; consent obtained in in violation of those requirements is a legal nullity because it is unsigned. *Id.*

Here, the legal disclosures required by the Act were not included in the websites or purported "Terms of Use" containing the purported arbitration agreement that Defendant identified. The record is devoid of any evidence even showing an *attempt* to comport with the Act's requirements. Indeed, no part of the website or the "Terms of Use" attached to the Defendant's motion indicated the hardware or software requirements for access to and retention of electronic records, nor was any consumer given the opportunity to provide their consent to sign and receive documents electronically. 15 U.S.C. § 7001(c)(1)(C)(i), (ii). Moreover, the website did not give any consumer a "statement" informing them of the procedures for granting or withdrawing consent, or *any* of the other required consumer disclosures, including the very consent to electronic records themselves. 15 U.S.C. § 7001(c), (c)(1).

The *very defendant here* already lost on this *very same issue* in *Mantha v. Quotewizard.com, LLC*, No. CV 19-12235-LTS, 2021 WL 6061919, at *8 (D. Mass. Dec. 13, 2021), based on a substantially similar agreement to that proffered here.[6] In *Mantha*, the Court held that the consent to make calls purportedly

---

[6] A copy of this unpublished decision is attached herein as Exhibit F.

obtained via a website was legally deficient because it did not meet the requirements of the E-SIGN Act. *Id.* As a result, in *Mantha*, the court entered partial summary judgment *on behalf of a plaintiff* on the issue of consent. *Id.* As the Court held in *Matha*, such a failure to obtain the required E-SIGN disclosures is fatal to compliance with the E-SIGN Act and therefore cannot constitute express written consent. *Id.* Relatedly, a failure to do so is also dispositive of the enforceability of the arbitration provision as no legally-binding contract formed as an initial matter, let alone one purporting to provide consent to receive robocalls or arbitrate this dispute. It appears that the Defendant did not learn its lesson from its loss in *Mantha*, nor could it, as the purported "Terms of Use Agreement" relied upon here was last update and made effective on "January 1, 2020."

The *Bradley* court similarly denied relief to the defendant at summary judgment based on a nearly identical failure to comply with E-SIGN's requirements. *Bradley*, 2024 WL 2865075, at *7. Therefore, even if the Court were to ignore Defendant's complete lack of evidence of Plaintiff's factual agreement to arbitrate, there is no basis to conclude that the purported agreement was legally sufficient and therefore there is no dispute as to consent, including factual issues of whether the Plaintiff consented to receive calls or not, for the arbitrator to arbitrate.

This is not to mention the fact that, just like in *Rojas v. GoSmith, Inc.*, another TCPA case "Defendant did nothing that drew attention to [the arbitration

- 18 -

provision] . . . [and] [n]o evidence shows any indication that Plaintiff was advised to read the entirety of the webpage." 2020 WL 831585, at *4 (N.D. Ind. Feb. 20, 2020).[7] As such, because the website did not draw notice to the arbitration provision on the text of the purported submission page, that provision is inconspicuous and unenforceable. Like in *Rojas*, nothing was said to Plaintiff to place a reasonable person on even inquiry notice that they are agreeing to binding arbitration.

Courts in the TCPA context have uniformly rejected far less blatant "gotcha" tactics as a method of obtaining consent to arbitrate TCPA claims. This very court reached a nearly identical decision less than a year ago and denied a motion to compel arbitration in a TCPA case when "the record as developed so far does not indicate that Plaintiff had been informed of the arbitration clause." *Schuchmann v. Great Am. Power, LLC*, No. 3:23-CV-1604, 2024 WL 219267, at *4 (M.D. Pa. Jan. 19, 2024).[8] Other courts have followed similar reasoning. *See, e.g.*, *Walker v. Nautilus, Inc.*, 541 F. Supp. 3d 836, 841 (S.D. Ohio 2021) (holding that due to the inconspicuous nature of the website's terms of use, plaintiff had neither actual nor constructive notice of arbitration provision and therefore could not assent to it); *Colgate v. JUUL Labs, Inc.*, 402 F. Supp. 3d 728, 765 (N.D. Cal. 2019) ("Users

---

[7] A copy of this unpublished decision is attached herein as Exhibit G.
[8] A copy of this unpublished decision is attached herein as Exhibit H.

cannot be reasonably expected to click on every word of the sentence in case one of them is actually a link.").

Because any alleged agreement to arbitrate does not name QuoteWizard and thus was legally sufficient for the purposes here of obtaining TCPA consent, because the website did not comply with E-SIGN's requirements, and because the website did not provide conspicuous notice of the arbitration provision, the Court must also deny the Defendant's motion on independent legal grounds, even if the Court were to hold, *arguendo*, that the Plaintiff agreed to arbitrate something as a factual matter.

### C.    To the extent that the Court construes the Defendant's motion as a motion to dismiss, it is due to be denied.

Defendant further argues that this case is due to be dismissed because the Plaintiff allegedly manufactured his own harm and therefore cannot recover based on factual contentions regarding the calls at issue based on the pled lack of an injury-in-fact. Defendant's pleading in this regard in its motion to compel arbitration is somewhat peculiar in this regard, as it has undertones of a motion to dismiss under Rule 12(b)(6) or 12(b)(1). However, the record in this matter reveals that the Defendant has already answered the Plaintiff's complaint. (ECF No. 9). Rule 12's mandate is clear: "A motion asserting any of these defenses *must be made before pleading* if a responsive pleading is allowed." FED. R. CIV P. 12(b). If a motion to dismiss for failure to state a claim is filed after an answer, the court

treats the motion as one for judgment on the pleadings. *Dukes v. Lancer Ins. Co.*, 390 F. App'x 159, 163 (3d Cir. 2010).

But even to the extent that the Defendant's argument in this regard is somehow related to its motion to compel arbitration, and not to the independent issue of whether the Plaintiff has stated a claim,  this Court should reject Defendant's insinuation that the Plaintiff's litigation history somehow reflects that he agreed to arbitrate his claims, as well. "The attempted use of past litigation to prevent a litigant from pursuing a valid claim in federal court warrants careful scrutiny." *Outley v. New York*, 837 F.2d 587, 591-92 (2d Cir. 1988). "[N]othing in the Constitution, though, requires a plaintiff to be a naïf. Litigation is not college athletics: there is no 'amateurs only' rule." *Cunningham v. Rapid Response Monitoring Servs.*, 251 F. Supp. 3d 1187, 1195 (M.D. Tenn. 2017); *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 954 (7th Cir. 2006) ("What the district judge did not explain, though, is why 'professional [plaintiff]' is a dirty word. It implies experience, if not expertise. The district judge did not cite a single decision supporting the proposition that someone whose rights have been violated by 50 different persons may sue only a subset of the offenders."); *Abramson v. Oasis Power LLC*, No. 2:18-CV-00479, 2018 WL 4101857, at *5[9] (W.D. Pa. July 31, 2018) ("As other courts addressing this issue have agreed, a citizen's decision to

---

[9] A copy of this unpublished decision is attached herein as Exhibit I.

aggressively enforce his rights under the TCPA should not negate otherwise valid privacy interests").

The Plaintiff's declaration confirms that the Defendant's characterizations are utterly false. The Plaintiff does not use "multiple phone numbers to manufacture TCPA cases." (Weingrad Dec. ¶ 25). The Plaintiff unequivocally denies ever having visited the Rate Kick website, let alone "using a false name and spoofed his IP address to obscure his real location." (Weingrad Dec. ¶ 22). With respect to the name "Joseph Arnold" on the call, the Plaintiff believes that his phone number was previously assigned to an individual by that name and was confused as to why the caller was calling, possibly to speak with the previous owner. (Weingrad Dec. ¶ 28, 29). The Plaintiff never submitted any information to the Rate Kick website or directed anyone to do so, including using the name Gary Williams. (Weingrad Dec. ¶ 10-13). And the Plaintiff expressly denies having manufactured his own harm; to the contrary, the calls harmed him. (Weingrad Dec. ¶ 35).

Defendant's motion on this basis, whatever it is, ought be denied as well.

## VII.   CONCLUSION

For all of the foregoing reasons, Defendant's motion should be denied in its entirety.

RESPECTFULLY SUBMITTED AND DATED this March 5, 2025.

>*/s/ Andrew Roman Perrong*
>Andrew Roman Perrong, Esq.
>M.D. Pa. Bar #333687
>Perrong Law LLC
>2657 Mount Carmel Avenue
>Glenside, Pennsylvania 19038
>Phone: 215-225-5529 (CALL-LAW)
>Facsimile: 888-329-0305
>a@perronglaw.com
>
>*Attorney for Plaintiff and the Proposed Class*

## CERTIFICATE OF SERVICE

I, Andrew Roman Perrong, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this date.

DATED this March 5, 2025.

>*/s/ Andrew Roman Perrong*
>Andrew Roman Perrong, Esq.

## CERTIFICATE OF WORD COUNT

Pursuant to Local Rule 7.8(b)(2), I hereby certify that this brief contains 4,960 words.

DATED this March 5, 2025.

>*/s/ Andrew Roman Perrong*
>Andrew Roman Perrong, Esq.

- 23 -