Case 1:25-cv-00002-JPW    Document 16-5    Filed 03/05/25    Page 1 of 5

Larson v. Harman Management Corporation, Not Reported in Fed. Supp. (2016)
2016 WL 6298528, 65 Communications Reg. (P&F) 1553

🚩 KeyCite Yellow Flag - Negative Treatment
Distinguished by [Smith v. Blue Shield of California Life & Health Insurance Company,](#) C.D.Cal., January 13, 2017

2016 WL 6298528
United States District Court, E.D. California.

Cory LARSON, Plaintiff,
v.
HARMAN MANAGEMENT CORPORATION and [3Seventy, Inc.](#), Defendants.

No. 1:16-cv-00219-DAD-SKO
|
Signed October 26, 2016
|
Filed 10/27/2016

**Attorneys and Law Firms**

[Sergei Lemberg](#), PHV, Lemberg & Associates, Wilton, CT, [Trinette Gragirena Kent](#), Kent Law Offices, Phoenix, AZ, for Plaintiff.

[David L. Bird](#), PHV, [Cameron Cutler](#), McKay Burton & Thurman, PC, Salt Lake City, UT, [Martin W. Jaszczuk](#), PHV, Locke Lord LLP, Chicago, IL, [Garrett Kameichi Sakimae](#), Fish & Richardson, P.C., San Diego, CA, [Matthew R. McCullough](#), Fish & Richardson P.C., Redwood City, CA, for Defendants.

ORDER DENYING DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM AND MOTION TO STRIKE

[Dale A. Drozd](#), UNITED STATES DISTRICT JUDGE

\*1 This matter is before the court on defendant Harman Management Corporation ("HMC") and 3Seventy, Inc.'s ("3Seventy") motion to dismiss plaintiff Cory Larson's first amended complaint for failure to state a claim and motion to strike class claims. A hearing on the motions was held on October 6, 2016. Attorney David Bird appeared on behalf of defendant HMC, and attorney Matthew McCullough appeared on behalf of defendant 3Seventy. Attorneys Trinette Kent and Sergei Lemberg appeared on behalf of plaintiff. Having considered the parties' briefs and oral arguments and for the reasons set forth below, the court will deny defendant's motion to dismiss and motion to strike.

**BACKGROUND**

Plaintiff commenced this action on February 17, 2016. (Doc. No. 1.) On June 20, 2016, plaintiff filed a first amended complaint, alleging claims under the Telephone Consumer Protection Act ("TCPA") on behalf of a putative class of similarly situated individuals. (Doc. No. 22.) According to plaintiff's first amended complaint, defendants HMC and 3Seventy set out on a telemarketing campaign in 2012 to send coupons to consumers for HMC restaurant food items via automated text messages. (*Id.* ¶ 19.) In response to defendants' promotional campaign for a free A&W Papa Burger Single, plaintiff texted the word "BURGER" to the number 70626, an SMS short code licensed and operated by defendants. (*Id.* ¶¶ 21, 23.) Defendants' first message to plaintiff was in response to plaintiff's "BURGER" text message. (*Id.* ¶ 23.) Unbeknownst to plaintiff, defendants allegedly stored his telephone number and thereafter sent multiple unprompted and uninvited automated text messages related to other A&W Restaurant food items. (*Id.* ¶¶ 24–25.) Plaintiff continued to receive such messages through February 2016. Plaintiff alleges he received the following message from defendants on November 16, 2014:

> A&W: Gobble Up! First 5,000 will receive Reg. Sized Chili Cheese Fries for 99cents! Limit1.Delete@reg.Exp11/30 Valid@particip. A&Ws in UT, CA, CO, WA
>
> TextSTOPtoEnd

(*Id.* ¶ 27.) Additionally, plaintiff alleges he received the following message from defendants on June 1, 2015:

> A&W: Float into A&W for a 99 cent Reg. Sized Root Beer Float! Limit 1. Delete@reg. Exp 6/17. Valid@particip. A&Ws in UT, CA, CO, WA.
>
> TextSTOPtoEnd

(*Id.*)

Plaintiff alleges that these additional messages were not sent in direct response to his "BURGER" text message and therefore sent without prior express written consent, in violation of the TCPA. (*Id.* ¶ 28.) Plaintiff alleges, on behalf of a putative class, two claims for violations of the TCPA. (*Id.* ¶¶ 60–71.)

On July 20, 2016, defendant HMC filed the instant motion to dismiss the first amended complaint for failure to state a claim, and moved to strike plaintiff's class definition and claims. (Doc. No. 26.) On July 21, 2016, defendant 3Seventy filed a notice of joinder in HMC's motion. (Doc. No. 27.) On September 22, 2016, plaintiff filed his opposition. (Doc. No. 31.) On September 29, 2016, defendant HMC filed its reply, and defendant 3Seventy filed a joinder to the same. (Doc. Nos. 32–33.)

**DEFENDANTS' MOTION TO DISMISS**

**A. Legal Standard for Motions to Dismiss**
 *2 The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989). However, the court need not assume the truth of legal conclusions cast in the form of factual allegations. *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 676 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts which it has not alleged or that the defendants have violated the ... laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). In ruling on a motion to dismiss brought pursuant to Rule 12(b)(6), the court is permitted to consider material which is properly submitted as part of the complaint, documents that are not physically attached to the complaint if their authenticity is not contested and the plaintiffs' complaint necessarily relies on them, and matters of public record. *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001).

**B. Plaintiff's Claims Under the Telephone Consumer Protection Act**
Plaintiff states two claims under the same provision of the TCPA. Both rely on the allegation that defendants violated the TCPA by sending multiple automated text messages to cellular numbers belonging to plaintiff and putative class members without their prior express written consent. (*See* Doc. No. 22 ¶¶ 61, 67.) In their motion to dismiss, defendants argue that because plaintiff alleges he first initiated contact with defendants by sending a text message with the word "BURGER," he provided prior express consent and therefore cannot state a plausible claim under 47 U.S.C. § 227(b)(1)(A).

  a. The TCPA
Congress enacted the TCPA "in response to an increasing number of consumer complaints arising from the increased number of telemarketing calls." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009) (citing S.Rep. No. 102-178 at 2 (1991), reprinted in 1991 U.S.C.C.A.N. 1968). Relevant to this suit, the TCPA makes it unlawful for any person "to make any call ... using any automatic telephone dialing system ... to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service" without "the prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A)(iii). A text message is a "call" within the meaning of the TCPA. *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 874 (9th Cir. 2014) (citing *Satterfield*, 569 F.3d at 954.) Thus, to state a TCPA claim, plaintiff must sufficiently allege that "(1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent." *Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012) (citing 47 U.S.C. § 227(b)).

 *3 Defendants primarily argue that plaintiff's claims should be dismissed because he consented to receive the text messages at issue by first sending the "BURGER" message.

Case 1:25-cv-00002-JPW    Document 16-5    Filed 03/05/25    Page 3 of 5

Larson v. Harman Management Corporation, Not Reported in Fed. Supp. (2016)
2016 WL 6298528, 65 Communications Reg. (P&F) 1553

(Doc. No. 26-1 at 5.) Thus, defendants argue, by providing his telephone number, plaintiff gave prior express consent under the TCPA.

In interpreting the statute, the Federal Communications Commission ("FCC") have on a number of occasions attempted to define the term "prior express consent" within the meaning of the TCPA. In 1992, the FCC adopted the view that

> ... any telephone subscriber that provides his or her telephone number to a business does so with the expectation that the party to whom the number was given will return the call. Hence, any telephone subscriber who releases his or her telephone number has, in effect, given prior express consent to be called by the entity to which the number was released.

Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 7 FCC Rcd. 8752 (1992). In 2012, the FCC revised its position in response to "the volume of consumer complaints we continue to receive concerning unwanted, telemarketing robocalls." Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991 ("*2012 TCPA Order*"), 27 FCC Rcd. 1830, 1838 (2012) (effective October 16, 2013).[1] Therein, the FCC modified the implementing regulation to the TCPA so that the form of a called party's prior express consent depends on the nature of the telephone call. 47 C.F.R. § 64.1200(a). Any telephone call that "includes or introduces an advertisement or constitutes telemarketing" cannot be made without "the *prior express written consent* of the called party." 47 C.F.R. § 64.1200(a)(2); *see also* 2012 *2012 TCPA Order*, 27 FCC Rcd. at 1838–44. All other calls made with an automatic telephone dialing system require only "the *prior express consent* of the called party." 47 C.F.R. § 64.1200(a)(1).

Defendant HMC's motion therefore appears to turn on two points of dispute: (1) whether defendants' text messages constitute an advertisement or telemarketing, and if so, (2) whether plaintiff's initial "BURGER" message constitutes prior express written consent.

  b. Advertisement or Telemarketing

In arguing that plaintiff's "BURGER" message constitutes prior express consent, defendants fail to address whether defendants' alleged text messages constitute an advertisement or telemarketing, which would require plaintiff's *prior express written consent*.

The regulation defines the term "advertisement" to mean "any material advertising the commercial availability or quality of any property, goods, or services." 47 C.F.R. § 64.1200(f)(1). The term "telemarketing" means "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." § 64.1200(f)(12).

**\*4** Looking to the first amended complaint, plaintiff alleges he received at least two text messages after defendants' initial text message in response to his "BURGER" message. (*See* Doc. No. 22 ¶¶ 25–27.) These messages plausibly appear to both advertise the availability of and encourage the purchase of particular goods at A&W Restaurants. Thus, plaintiff has sufficiently alleged a claim that he received text messages constituting advertisement or telemarketing from defendants.

  c. Prior Express Written Consent

If a text message includes or introduces an advertisement or constitutes telemarketing, it may only be sent with the prior express written consent of the called party. 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(2). The implementing regulation defines the term "prior express written consent" as follows:

> The term prior express written consent means an agreement, *in writing*, *bearing the signature of the person called* that *clearly authorizes* the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.
>
> (i) The written agreement shall include a clear and conspicuous disclosure informing the person signing that:
>
>   (A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and
>
>   (B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.
>
> (ii) The term "signature" shall include an electronic or digital form of signature, to the extent that such form

Case 1:25-cv-00002-JPW    Document 16-5    Filed 03/05/25    Page 4 of 5

Larson v. Harman Management Corporation, Not Reported in Fed. Supp. (2016)
2016 WL 6298528, 65 Communications Reg. (P&F) 1553

of signature is recognized as a valid signature under applicable federal law or state contract law.

47 C.F.R. § 64.1200(f)(8).[2]

Defendants argue that plaintiff's initial "BURGER" message constitutes sufficient consent, and accordingly, plaintiff has failed to state a valid claim under the TCPA. However, such a message alone fails to establish the existence of a "prior express written consent" as that term is defined by the FCC's regulation. Apart from the text message being "in writing," the message as alleged by plaintiff neither included his signature nor clearly authorizes defendants to deliver advertisements or telemarketing messages using an automatic telephone dialing system. Because plaintiff has pled sufficient facts to support an inference that defendants failed to obtain his prior express written consent prior to receiving additional text messages, this court cannot dismiss plaintiff's claims.

    d. Claimed Common Sense Approach to the TCPA

In the alternative, defendants argue that the court should take a "common sense" approach to plaintiff's TCPA claims. (Doc. No. 26-1 at 9–11.) Defendants rely primarily on the Ninth Circuit's opinion in *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913 (9th Cir. 2012). There, the plaintiff alleged that defendant sent him prerecorded messages stating that his Best Buy "Reward Zone" certificates were to expire soon. *Chesbro*, 705 F.3d at 916. The court of appeals concluded that, while the messages contained no explicit mention of good, products, or services, "the implication is clear from the context" that these messages constituted "unsolicited advertisements" under the TCPA. *Id.* at 918.

 *5 This court fails to see how the decision in *Chesbro* is applicable here. Defendants do not specify what provisions of the TCPA, if any, should be approached or interpreted by application of common sense. Nor do they explain how this suggested "common sense approach" would lead one to view the nature of the alleged text messages in this case as anything but advertising or telemarketing under the FCC's regulations. Rather, defendants contend generally that their promotional campaign, which provided an opt-out procedure, is not the type of situation the TCPA was intended to address because it did not "mislead, harm, or harass consumers." (*See* Doc. No. 32 at 6–7.) The court is unpersuaded by this argument.

Accordingly, the court denies defendants' motion to dismiss plaintiff's TCPA claims under Rule 12(b)(6).

## DEFENDANTS' MOTION TO STRIKE CLASS DEFINITION AND CLAIMS

Defendants' additionally move to strike plaintiff's related class claims because the proposed class is not ascertainable and constitutes a "fail-safe" class. (Doc. No. 26-1 at 11–12.) While a motion to strike class allegations at the pleading stage may be appropriate in certain circumstances, the court declines to address the issue now as it is more appropriately suited for the class certification stage of the litigation. *See, e.g.*, *Riva v. Pepsico, Inc.*, 82 F. Supp. 3d 1045, 1063 (N.D. Cal. 2015) ("The Ninth Circuit has opined that " 'compliance with Rule 23 is not to be tested by a motion to dismiss for failure to state a claim.' ") (quoting *Gillibeau v. City of Richmond*, 417 F.2d 426, 432 (9th Cir. 1969)); *Kirchner v. Shred-it USA Inc.*, No. 2:14-1437 WBS, 2014 WL 6685210, at *3 n.3 (E.D. Cal. Nov. 25, 2014) (declining to dismiss class claims prior to a motion for class certification). Accordingly, defendants' motion to strike is denied without prejudice to renewal at the appropriate time.

## CONCLUSION

For the reasons stated above, defendants' motion to dismiss for failure to state a claim and motion to strike (Doc. No. 26) are denied.

IT IS SO ORDERED.

Dated: **October 26, 2016.**

**All Citations**

Not Reported in Fed. Supp., 2016 WL 6298528, 65 Communications Reg. (P&F) 1553

Footnotes

1     Defendants argue, without explanation, that the FCC's *2012 TCPA Order*, which first implemented the new prior express written consent requirement for advertisement and telemarketing calls, are inapplicable to this lawsuit. (*See* Doc. No. 26-1 at 9.) Presumably, defendants rely on plaintiff's allegation that defendants' telemarketing campaign began in 2012, prior to the effective date of the FCC's new rules. However, as both the statute and the regulations make clear, the TCPA

Case 1:25-cv-00002-JPW    Document 16-5    Filed 03/05/25    Page 5 of 5

Larson v. Harman Management Corporation, Not Reported in Fed. Supp. (2016)
2016 WL 6298528, 65 Communications Reg. (P&F) 1553

applies to each "call" made, rather than the date upon which an alleged marketing campaign began. Because at least some of the allegedly violative text messages were received in 2014, as alleged in the first amended complaint (*see* Doc. No. 22 ¶ 27), the FCC's new rules, promulgated in 2013, are applicable to this case.

2    In 2012, the FCC clarified that "consent obtained in compliance with the E-SIGN Act will satisfy the requirements of our revised [written consent] rule, including permission obtained via an email, website form, text message, telephone keypress, or voice recording." *2012 TCPA Order*, 27 FCC Rcd. at 1844.

---

**End of Document**    © 2025 Thomson Reuters. No claim to original U.S. Government Works.