2024 WL 1258501
Only the Westlaw citation is currently available.
United States District Court, D. Massachusetts.

Kimberly STARLING, Plaintiff,
v.
ONPROCESS TECHNOLOGY, INC.,
and AT&T Services, Inc., Defendants.

No. 1:23-cv-10949-JEK
|
Signed March 25, 2024

**Attorneys and Law Firms**

Brendan John Quinn, Barton Gilman LLP, Providence, RI, [Chris R. Miltenberger](), Pro Hac Vice, The Law Office of Chris R. Miltenberger, PLLC, Southlake, TX, Jonathan Lucido, Indeglia & Associates, Attorneys at Law, Warwick, RI, [Max Morgan](), Pro Hac Vice, The Weitz Firm, LLC, Philadelphia, PA, for Plaintiff.

[Aaron A. Fredericks](), Hinshaw & Culbertson LLP, Boston, MA, [Andrew E. Henry](), Pro Hac Vice, [T. Dylan Hartsook](), Pro Hac Vice, [Timothy Dylan Hartsook](), Crowe & Dunlevy, Oklahoma City, OK, [Jennifer Weller](), Pro Hac Vice, Hinshaw & Culbertson LLP, Chicago, IL, for Defendant OnProcess Technology, Inc.

[Ava Conger](), [Jeffrey H. Fisher](), [John P. Jett](), Kilpatrick Townsend & Stockton LLP, Atlanta, GA, [Daniel J. Cloherty](), [Victoria L. Steinberg](), Cloherty & Steinberg LLP, Boston, MA, for Defendant AT&T Services, Inc.

**MEMORANDUM AND ORDER ON AT&T'S MOTION TO STAY THIS ACTION PENDING ARBITRATION AND PLAINTIFF'S MOTIONS FOR A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION**

[KOBICK](), United States District Judge

 **\*1** In this putative class action, plaintiff Kimberly Starling seeks to represent a class of individuals who, like her, received unsolicited and prerecorded calls from defendant OnProcess Technology, Inc., acting on behalf of defendant AT&T Services, Inc., about accounts that did not belong to them. Starling asserts that these calls violated the Telephone Consumer Protection Act ("TCPA"), [47 U.S.C. § 227(b)](), which "generally prohibits robocalls to cell phones and home phones." [*Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 140 S. Ct. 2335, 2343 (2020)]() (opinion of Kavanaugh, J.). In September 2023, this Court denied OnProcess's motion to compel arbitration, concluding that Starling was not bound by any arbitration agreement with AT&T. ECF 35. Starling subsequently filed an amended complaint that named AT&T as a defendant.

AT&T has now moved to stay this action pending arbitration pursuant to Section 3 of the Federal Arbitration Act ("FAA"), [9 U.S.C. § 3](). AT&T advances a new theory not argued in OnProcess's motion to compel arbitration: that under equitable estoppel principles, Starling should be bound by an arbitration agreement between AT&T and her sister, Kelly Pinn, associated with Pinn's internet services account with AT&T. In the alternative, AT&T contends that even if Starling is not subject to the arbitration provision, the Court should exercise its discretion to stay this action because the findings of the arbitrator may affect this case. For the reasons given below, the Court is not persuaded by either argument, and the motion to stay will be denied.

Meanwhile, because AT&T had initiated arbitration against Starling and Pinn with the American Arbitration Association, Starling filed motions for a temporary restraining order and a preliminary injunction seeking to enjoin the arbitration proceeding against her. Whether analyzed as a request to enjoin an arbitration under Section 4 of the FAA, [9 U.S.C. § 4](), or under the traditional four-part test for assessing motions for preliminary injunctive relief, Starling's motion for a preliminary injunction will be granted because she is not bound by the arbitration agreement between Pinn and AT&T and will suffer irreparable harm absent relief.

**BACKGROUND**

The Court draws the following facts from the amended complaint and documents submitted in support of, and in opposition to, AT&T's motion to stay. [*Air-Con, Inc. v. Daikin Applied Latin Am., LLC*, 21 F.4th 168, 171 n.1 (1st Cir. 2021)](). Unless otherwise noted, the facts are undisputed.

**I. Pinn's AT&T Account and Arbitration Agreement**

Starling's sister, Kelly Pinn, established an account with AT&T for internet services on September 17, 2019. ECF 66, ¶ 5. On October 18, 2019, Pinn ordered installation of a wireless receiver from AT&T and accepted AT&T's Terms of Service Agreement. *Id.* ¶¶ 5-6. The Terms of Service Agreement contained a provision requiring Pinn and AT&T "to arbitrate all disputes and claims between [Pinn] and AT&T." ECF 66-3, at 11, § 13 (emphasis omitted).

**\*2** On October 26, 2020, the cellphone number belonging to Starling was entered as an alternate contact number for Pinn's account. ECF 28-1, ¶ 9; ECF 72-3, ¶¶ 9-21.[1] AT&T has a policy under which it "asks," but does not require, customers to provide alternate telephone numbers "in order to contact them with information about their AT&T services and for installation, technical and other service-related/outage messages." ECF 72-1, Ex. 3.

Two years later, in October 2022, AT&T notified Pinn that it would be updating its Terms of Service Agreement, including with a revised Consumer Service Agreement that would become effective on December 1, 2022. ECF 66, ¶¶ 9-10. Pinn did not exercise her option to opt out of AT&T's updated terms and continued to use AT&T's internet service after the Consumer Service Agreement became effective. *Id.* ¶¶ 12-13. The Consumer Service Agreement contained the following arbitration provision:

> To the greatest extent permitted by law, AT&T and you agree to arbitrate all disputes and claims between you and AT&T, except for claims arising from bodily injury or death. This arbitration provision is intended to be broadly interpreted. It includes, but is not limited to: claims arising out of or relating to any aspect of the relationship between us, whether based in contract, tort, fraud, misrepresentation, or any other statutory or common-law legal theory ....
>
> References ... to "AT&T" or "we" include our past, present, and future parents, subsidiaries, affiliates, and related entities, as well as AT&T's and all of those entities' officers, agents, employees, licensors, predecessors in interest, successors, and assigns. References ... to "you" include your past, present, and future parents, subsidiaries, affiliates, related entities, agents, employees, predecessors in interest, successors, and assigns; and all authorized or unauthorized users or beneficiaries of AT&T's Services or products under past, present, or future Agreements between you and AT&T.

ECF 66-7, at 3, § 1.3.2.1 (bullet omitted). This provision was similar in substance to the arbitration provision in the original Terms of Service Agreement that Pinn signed.

## II. Starling's Receipt of Prerecorded Calls

On January 3, 2023, Pinn contacted AT&T to cancel her account. ECF 28-1, ¶ 10; ECF 66, ¶ 13. In the month that followed, Pinn and Starling received multiple prerecorded phone calls from OnProcess, acting on behalf of AT&T. ECF 72-2, ¶¶ 11-40; ECF 72-4, ¶¶ 3-6. These prerecorded calls sought the return of AT&T's equipment. ECF 72-2, ¶¶ 12, 16, 25.

Starling, in particular, received calls on January 18, 2023; January 21, 2023; and January 23, 2023 that played the same prerecorded message and were from the same phone number. *Id.* ¶¶ 11-16. After the first call, Starling conducted an online search, which revealed consumer reports on multiple websites indicating that calls from that phone number were part of an identity theft or phishing scam. *Id.* ¶¶ 13-15. On January 23, 2023, Starling called that number and was greeted with the message, "Thank you for calling AT&T," before being prompted to leave a voicemail. *Id.* ¶¶ 17-20. She did not leave a voicemail. *Id.* ¶ 21.

On January 26, 2023, Starling received another call from the same number, resulting in a voicemail on Starling's phone that referenced her sister, Kelly Pinn. *Id.* ¶¶ 22-23. Starling contacted Pinn and learned that she was also receiving prerecorded calls about AT&T's equipment. *Id.* ¶ 25. That day, Starling twice dialed the number that had called her and was greeted by the same "Thank you for calling AT&T" prompt and sent to voicemail. *Id.* ¶¶ 28-34. She left a message after the second call. *Id.* ¶ 36.

**\*3** On January 29, 2023, Starling received a call from a different number with a Texas area code. *Id.* ¶¶ 37-38. When she answered, a prerecorded message stated: "Hello, I am calling on behalf of AT&T broadband about your equipment return.... Is this Kelly [Pinn]?" *Id.* ¶ 39. Starling answered "yes," and avers that she did so in an attempt to connect with a live person and investigate whether these calls were "an identity theft or phishing scam." *Id.* ¶ 40. After interacting with an artificial voice for some time, Starling was connected to a live representative who said, "Thank you for calling OnProcess Technology on behalf of Sprint/AT&T." *Id.* ¶¶ 41-44. While speaking with this representative, Starling texted Pinn to obtain her AT&T account number, and Starling then shared that account number with the representative.

*Id.* ¶¶ 51-55. Before the call ended, Starling asked the representative how OnProcess received her number. *Id.* ¶ 62. The representative explained that Starling's cellphone number had been listed as an "alternate" telephone number on Pinn's AT&T account, and that AT&T shared the number with OnProcess. *Id.* ¶¶ 63-64.

Starling is not an AT&T customer and has never entered into any agreement with AT&T on her own behalf or on behalf of someone else. *Id.* ¶¶ 5, 9.

### III. Starling's Complaint and OnProcess's Motion to Compel Arbitration

Starling filed her initial complaint in May 2023, alleging that OnProcess violated the TCPA. ECF 1. Two weeks after answering the complaint, OnProcess moved to compel arbitration. ECF 17, 28. In September 2023, the Court denied that motion, concluding that Starling is not bound by Pinn's arbitration agreement with AT&T because she is a nonsignatory to that agreement and "is not an authorized user of Pinn's AT&T account [or] ... Pinn's agent." ECF 35. Two months later, in November 2023, Starling filed an amended complaint adding AT&T as a defendant. ECF 47.

The amended complaint raises a single claim, namely, that OnProcess and AT&T violated the TCPA. *Id.* ¶¶ 100-04. Starling asserts that OnProcess improperly made prerecorded calls on behalf of AT&T to individuals, like her, without their consent. *Id.* She seeks to represent a class of individuals who received such calls about accounts that did not belong to them. *Id.* ¶¶ 85-99. Starling also requests, pursuant to 47 U.S.C. § 227(b)(3), $500 in damages for each call and treble damages of up to $1,500 for every call made willfully or knowingly. *Id.* ¶¶ 103-04.

### IV. AT&T's Motion to Stay and Starling's Motions for Injunctive Relief

On January 19, 2024, AT&T moved to stay this action pending arbitration. *See* ECF 64. One day earlier, on January 18, 2024, AT&T had sent notices of dispute to Pinn and Starling to initiate informal arbitration proceedings. ECF 67, ¶ 4. Those notices claim that Pinn intentionally listed Starling's cell phone as a secondary contact on Pinn's AT&T account to fabricate the TCPA violation at issue here, and that Starling improperly pretended to be Pinn on a call with OnProcess while texting Pinn during that call. *See* ECF 67-1, at 8; ECF 67-2, at 8. After receiving Starling's opposition to that motion, the Court set a hearing on the motion for March 21, 2024. ECF 75.

On March 14, 2024, Starling filed a motion for a preliminary injunction and a motion for a temporary restraining order, both of which seek to enjoin AT&T from subjecting her to arbitration. *See* ECF 82, 84. The Court consolidated the March 21 hearing on AT&T's motion to stay with a hearing on Starling's motions and ordered AT&T to file its response to those motions by March 20, 2024. ECF 85. On March 18, 2024, AT&T initiated formal arbitration proceedings by filing a demand for arbitration with the American Arbitration Association against Pinn and Starling. ECF 87, ¶ 3. The demand alleges the same "conspiracy to manufacture illegitimate [TCPA] claims" described in the notices of dispute. ECF 87-1, at 2. AT&T filed its consolidated opposition to Starling's motions for a preliminary injunction and a temporary restraining order on March 20, 2024, and the Court held a hearing on all three motions the next day. ECF 86, 89.

## DISCUSSION

### I. AT&T's Motion to Stay Pending Arbitration

**\*4** The Federal Arbitration Act reflects "the 'fundamental principle that arbitration is a matter of contract.' " *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010)). Its "primary substantive provision," *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983), states that a "written provision in ... a contract ... to settle by arbitration a controversy thereafter arising out of such contract ... shall be valid, irrevocable, and enforceable," 9 U.S.C. § 2. Because "arbitration is a matter of contract, ... courts must enforce arbitration contracts according to their terms." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019).

AT&T moves to stay this action pursuant to Section 3 of the FAA, which requires a court to stay proceedings when "the issue involved in such ... proceeding[s] is referable to arbitration under ... an agreement ... until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. As the party seeking a stay, AT&T bears the burden to "demonstrate 'that a valid agreement to arbitrate exists, that [it] is entitled to invoke the arbitration clause, that [Starling] is bound by that clause, and that the claim asserted comes within the clause's scope.' " *Campbell v.*

*Gen. Dynamics Gov't Sys. Corp.*, 407 F.3d 546, 552 (1st Cir. 2005) (quoting *InterGen N.V. v. Grina*, 344 F.3d 134, 142 (1st Cir. 2003)). The dispute here centers on whether Starling is bound by the arbitration provision between Pinn and AT&T contained in the Consumer Service Agreement.

AT&T advances two arguments to support its motion to stay. First, alleging that Pinn and Starling conspired to fabricate the TCPA claim, AT&T contends that Starling is bound by Pinn's arbitration agreement with AT&T under equitable estoppel principles. Second, AT&T contends that even if Starling is not bound by the arbitration agreement, Starling's TCPA claim is "inextricably intertwined" with its ongoing arbitration with Pinn, and this case should await the arbitrator's determination. ECF 65, at 15.[2]

### A. Choice of Law

As an initial matter, the Court must determine the source of law governing whether equitable principles bind Starling to the arbitration provision in the Consumer Service Agreement. State contract law supplies the principles for determining the enforceability of an arbitration provision. *See Bekele v. Lyft, Inc.*, 918 F.3d 181, 185 (1st Cir. 2019); *Campbell*, 407 F.3d at 552 ("[G]eneral principles of state contract law control the determination of whether a valid agreement to arbitrate exists."). At the hearing, the parties agreed that Massachusetts law governs this dispute. The Court is, therefore, "free to 'forego an independent analysis and accept the parties' agreement.' " *Hershey v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 317 F.3d 16, 20 (1st Cir. 2003) (quoting *Borden v. Paul Revere Life Ins. Co.*, 935 F.2d 370, 375 (1st Cir. 1991)). AT&T also pointed out, however, that the Consumer Service Agreement includes a choice-of-law provision stating that "[t]he law of the state in which [AT&T] currently provide[s] [Pinn] with AT&T Services ... governs this Agreement," ECF 66-7, at 9, § 1.12, and claimed that, as applied here, the provision would make Texas law controlling.

**\*5** The Court "need not resolve the [choice-of-law] issue," for "the outcome is the same under the substantive law of either jurisdiction." *Lambert v. Kysar*, 983 F.2d 1110, 1114 (1st Cir. 1993) (citing *Cohen v. McDonnell Douglas Corp.*, 389 Mass. 327, 332 (1983)). Massachusetts and Texas employ the same test to determine whether a nonsignatory is equitably estopped from avoiding arbitration. *Compare Walker v. Collyer*, 85 Mass. App. Ct. 311, 319 (2014) ("The primary form of estoppel ('direct benefits estoppel') allows a signatory to compel to arbitration a nonsignatory party receiving a direct benefit from an arbitration agreement." (quoting *Thomson-CSF, S.A. v. Am. Arb. Ass'n*, 64 F.3d 773, 778-79 (2d Cir. 1995))), *with Meyer v. WMCO-GP, LLC*, 211 S.W.3d 302, 305 & n.12 (Tex. 2006) ("We have held that a person who seeks by his claim 'to derive a direct benefit from the contract containing the arbitration provision' may be equitably estopped from refusing arbitration." (collecting cases)). Since there is no conflict between Massachusetts and Texas law, the Court will apply—as the parties agreed at the hearing—Massachusetts law.

### B. Equitable Estoppel Does Not Bind Starling to Pinn's Arbitration Agreement

Consistent with the "general proposition" that "a contract cannot bind a non-party," *Grand Wireless, Inc. v. Verizon Wireless, Inc.*, 748 F.3d 1, 9 (1st Cir. 2014), "the FAA does not require parties to arbitrate when they have not agreed to do so," *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989). There is no dispute that Starling's sister, Kelly Pinn, is bound by an arbitration agreement with AT&T. Pinn established an account with AT&T for internet services in September 2019, signed a Terms of Service Agreement with an arbitration provision in October 2019, and acceded to the revised arbitration provision in AT&T's Consumer Service Agreement in December 2022. ECF 66, ¶¶ 5-6, 9-13.

In its prior order denying OnProcess's motion to compel arbitration, the Court concluded that Starling "is not bound by [AT&T's] Terms of Service or its arbitration provision." ECF 35. The plain text of the arbitration provision in the Terms of Service Agreement, like the virtually identical provision in the subsequent Consumer Service Agreement, commits to arbitration most disputes and claims "between you and AT&T," with "AT&T" and "you" defined to include the signatories' "respective subsidiaries, affiliates, agents, employees, predecessors in interest, successors, and assigns, as well as all authorized or unauthorized users or beneficiaries of the Service under this or prior Agreements between us." ECF 66-3, at 11, § 13; *see* ECF 66-7, at 3, § 1.3.2.1 (virtually identical definition of "AT&T," "we," and "you"). Starling, the Court explained, is not a party to AT&T's Terms of Service or Customer Service Agreement with Pinn, and she is neither an agent of Pinn nor an authorized user of Pinn's AT&T account. ECF 35.

AT&T does not dispute those conclusions. Instead, it contends that equitable estoppel principles should bind Starling, as

a nonsignatory, to Pinn's arbitration agreement with AT&T. Under Massachusetts law, nonsignatories to an arbitration agreement can, in certain circumstances, be subject to arbitral jurisdiction. *See Walker*, 85 Mass. App. Ct. at 316-17, 319-22. "Following case law developed in the federal courts, Massachusetts courts have identified six theories under which nonsignatories may be bound by the arbitration agreements of others." *Ribadeneira v. New Balance Athletics, Inc.*, 65 F.4th 1, 19-20 (1st Cir. 2023) (quoting *Machado v. System4 LLC*, 471 Mass. 204, 209-10 (2015)). One such theory—the direct benefits equitable estoppel theory—allows a signatory to "estop a nonsignatory from avoiding arbitration where the nonsignatory has 'knowingly exploit[ed] an agreement with an arbitration clause,' such as by 'knowingly accept[ing] the benefits of such an agreement,' provided the benefits at issue were 'direct.' " *Id.* at 21 (quoting *Walker*, 85 Mass. App. Ct. at 320). "The benefits must be direct"—that is, " 'flowing directly from the agreement.' " *Walker*, 85 Mass. App. Ct. at 320 (quoting *MAG Portfolio Consult, GMBH v. Merlin Biomed Grp. LLC*, 268 F.3d 58, 61 (2d Cir. 2001)). Courts have recognized, for example, that a nonsignatory who has brought "a claim under the contract" itself has received a direct benefit and may be equitably "estopped from avoiding the obligation to arbitrate under a contract's arbitration clause." *Ribadeneira*, 65 F.4th at 22 (citing *Noble Drilling Servs., Inc. v. Certex USA, Inc.*, 620 F.3d 469, 473 (5th Cir. 2010) and *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 418 (4th Cir. 2000)). On the other hand, an indirect benefit—" 'where the nonsignatory exploits the contractual relation of parties to an agreement, but does not exploit (and thereby assume) the agreement itself' "—will not result in estoppel. *Walker*, 85 Mass. App. Ct. at 320 (quoting *MAG Portfolio Consult*, 268 F.3d at 61).

**\*6** AT&T contends that Starling knowingly exploited the benefits of Pinn's contract with AT&T by using the contract "to generate an illegitimate TCPA claim against AT&T." ECF 65, at 9. But Starling's TCPA claim does not "flo[w] directly from the agreement" between Pinn and AT&T. *Walker*, 85 Mass. App. Ct. at 320 (internal quotation marks omitted). A TCPA claim is not a benefit of a contract for internet service; it is an independent cause of action created by Congress in response to "a torrent of vociferous consumer complaints about intrusive robocalls" that could "automatically dial a telephone number and deliver an artificial or prerecorded voice message." *Barr*, 140 S. Ct. at 2344 (opinion of Kavanaugh, J.); *see also Breda v. Cellco P'ship*, 934 F.3d 1, 4 (1st Cir. 2019) (the TCPA "addresses the nuisance and invasion of privacy caused by automated or prerecorded telephone calls"). AT&T concedes that Starling did not directly benefit from Pinn's contract by, for example, using her sister's internet service, and there is no evidence that Starling derived any other kind of direct benefit from Pinn's contract. *See A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1064 (7th Cir. 2018) (equitable estoppel principles did not bind plaintiff asserting TCPA claim to her mother's arbitration agreement with the defendant, a credit card company, because the plaintiff "derived no benefit from the cardholder agreement").

Starling also did not directly benefit from Pinn's contract with AT&T by bringing a claim under that contract. Her TCPA claim is not a claim under Pinn's contract with AT&T for internet service. Rather, as described, it is an independent cause of action alleging a violation of a federal statute that protects consumers from receiving unsolicited prerecorded calls without their consent. This case is not comparable to *Ribadeneira v. New Balance Athletics, Inc.*, in which the First Circuit concluded that equitable estoppel principles bound a nonsignatory to an arbitration agreement. 65 F.4th at 26-27. The nonsignatory in that case, Ribadeneira, had previously filed a lawsuit against the defendant, New Balance, alleging a breach of the contract that itself contained the arbitration provision. *Id.* The First Circuit held that because Ribadeneira previously "sought to enforce the terms of the [agreement]," he had "knowingly receiv[ed] a direct benefit from the contract" and was thereby estopped from avoiding the arbitration clause. *Id.* Here, in contrast, Starling has not sought to enforce the terms of Pinn's Consumer Service Agreement against AT&T.[3]

AT&T's contention that "[t]his action would not exist but for Ms. Pinn's AT&T account and the Agreement" does not convert her TCPA claim into an action arising under that contract. ECF 77, at 5. The calls that Starling received from OnProcess, acting on behalf of AT&T, on January 18, 21, and 23, 2023, gave rise to Starling's TCPA claim against AT&T. However one views Starling's subsequent conduct —Starling sees it as investigating the identity of the caller, while AT&T sees it as evidence of a conspiracy with Pinn to create a TCPA claim—multiple prerecorded calls predated the principal conduct for which AT&T faults Starling. *See* ECF 77, at 5-6.[4] The "core" of the TCPA claim in this case stems from the automated phone calls to Starling's phone, not from Pinn's contract with AT&T. *See A.D.*, 885 F.3d at 1065 ("[i]n no way can [the nonsignatory plaintiff's TCPA] cause of

action be considered premised on the cardholder agreement" between the plaintiff's mother and the defendant).

\*7 Accordingly, AT&T has failed to establish that Starling directly benefited from Pinn's Consumer Service Agreement. Starling is not bound to the arbitration provision in that agreement by principles of equitable estoppel.

### C. This Litigation Will Not Be Stayed Pending Pinn's Arbitration with AT&T

Even if Starling is not subject to the arbitration provision in the Consumer Service Agreement, AT&T contends, the Court should exercise its discretion to stay this matter pending the resolution of its arbitration proceeding against Pinn. In AT&T's view, the question whether Starling gave her "prior express consent" to receive prerecorded calls from AT&T or its agents within the meaning of the TCPA, [47 U.S.C. § 227(b)(1)(A)](), is "inextricably intertwined" with the conspiracy allegations that will be addressed in the arbitration. ECF 65, at 11. Starling opposes the request, contending that because she is not a party to the arbitration, any award fashioned by the arbitrator could not bind her or directly affect this case.

This Court has inherent authority to "stay litigation of nonarbitrable claims pending the outcome of an arbitration proceeding." [McCarthy v. Azure, 22 F.3d 351, 361 n.15 (1st Cir. 1994)](). The "decision is one left to the district court ... as a matter of its discretion to control its docket." [Moses H. Cone, 460 U.S. at 20 n.23](). The court may consider, among other factors, whether judicial economy will be promoted by a stay, whether resolution of an issue in arbitration may have a preclusive or evidentiary effect in the federal litigation, and whether the same parties to the litigation are parties to the arbitration. *See, e.g.*, [Nat'l Ass'n of Gov't Emps., Inc. v. Nat'l Emergency Med. Servs. Ass'n, Inc.](), No. 13-cv-10854-JLT, 2013 WL 12328629, at \*1 (D. Mass. July 25, 2013); [Bowlby v. Carter Manufacturing Corp., 138 F. Supp. 2d 182, 188-89 (D. Mass. 2001)](); [Cannavo v. Enter. Messaging Servs., Inc., 982 F. Supp. 54, 60 (D. Mass. 1997)]().

The balance of factors cuts against AT&T's request for a stay. Starling is correct that because she is not a party to the arbitration, any award that purported to bind her would likely exceed the arbitrator's authority. *See, e.g.*, [Comedy Club, Inc. v. Improv West Assocs., 553 F.3d 1277, 1287-88 (9th Cir. 2009)](); [Nationwide Mut. Ins. Co. v. Home Ins. Co., 330 F.3d 843, 846-47 (6th Cir. 2003)](); [Plymouth-Carver Reg'l School Dist. v. J. Farmer & Co., Inc., 407 Mass. 1006, 1007 (1990)](). AT&T does not contend that findings made by the arbitrator will have preclusive effect in this litigation, nor does it otherwise elucidate how, from an evidentiary perspective, the arbitration could directly affect this case. Its argument rests primarily on its interest in avoiding duplicative concurrent proceedings. Although the discovery in the arbitration may overlap with the discovery in this proceeding, the possible duplication of discovery efforts does not here outweigh the interest of the Court in adjudicating a case properly before it. That is especially so where, contrary to AT&T's argument, "lack of consent is not an element of [Starling's] claim"; rather, consent is "an affirmative defense" that *AT&T* "has the burden to prove." [Breda, 934 F.3d at 4 n.4](). The issue is not, therefore, part of the core of Starling's case. *See* [A.D., 885 F.3d at 1065]().

\*8 Where this Court has jurisdiction over Starling's TCPA claim and where Starling is not a party to the arbitration agreement between AT&T and Pinn, the Court declines to exercise its discretion to halt the progress of this litigation. AT&T's motion to stay is denied.

### II. Starling's Motion for a Preliminary Injunction

AT&T's initiation of arbitration against Starling prompted Starling to move for a temporary restraining order or preliminary injunction that would bar AT&T from subjecting her to arbitration. The parties support and oppose these motions by incorporating the same arguments made in support of and opposition to AT&T's motion to stay.

The First Circuit has explained that because "the power to enjoin an arbitration is 'the concomitant of the power to compel arbitration,' ... the same provision of the FAA, [9 U.S.C. § 4](), authorizes both types of orders." [PCS 2000 LP v. Romulus Telecommunications, Inc., 148 F.3d 32, 35 (1st Cir. 1998)]() (quoting [Societe Generale de Surveillance, S.A. v. Raytheon European Mgmt. & Sys. Co., 643 F.2d 863, 868 (1st Cir. 1981)]()). Applying the standard applicable to a motion to compel arbitration under Section 4 of the FAA, *see supra*, n.2, the Court has determined that Starling is not a signatory to the arbitration provision in the Consumer Service Agreement and is not bound as a nonsignatory to that provision under a theory of equitable estoppel. AT&T does not claim that there exists any other basis for subjecting Starling to the arbitration provision or the arbitration itself. Accordingly, an injunction barring AT&T from further subjecting Starling to arbitration is warranted and authorized by Section 4 of the FAA, [9 U.S.C. § 4](), alone. *See* [PCS 2000 LP, 148 F.3d at 35](); [Societe Generale de Surveillance, 643 F.2d at 868]().

Nevertheless, the parties address Starling's request for a preliminary injunction by reference to the traditional four-part framework for preliminary injunctive relief. Under that framework, a party seeking a preliminary injunction must establish that (1) she is likely to succeed on the merits; (2) she is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in her favor; and (4) an injunction serves the public interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "The movant's likelihood of success on the merits weighs most heavily in the preliminary injunction calculus." *Ryan v. U.S. Immigration & Customs Enforcement*, 974 F.3d 9, 18 (1st Cir. 2020). In the interest of completeness, the Court will also consider Starling's motion for a preliminary injunction under this standard.

First, for the reasons already discussed, Starling has a likelihood of success on the merits of her assertion that the arbitration agreement between Pinn and AT&T does not bind her. She is not a signatory to that agreement, she is not subject to the agreement as a nonsignatory under an agency theory or a theory of equitable estoppel, and AT&T does not contend that she is subject to the agreement as a nonsignatory under any other theory. The parties do not suggest that the likelihood-of-success analysis should extend any further than the question whether Starling is bound by the arbitration clause in the Consumer Service Agreement—to, for example, the question whether Starling is likely to succeed on the merits of her TCPA claim. The limited scope of the inquiry is consistent with the First Circuit's holding that Section 4 of the FAA authorizes courts to enjoin pending arbitrations. *See PCS 2000 LP*, 148 F.3d at 35. And "the FAA's dual goals of respecting private agreements and providing a mechanism for the swift resolution of disputes" over arbitrability would be best served by confining the likelihood-of-success analysis to the question of arbitrability. *Air-Con*, 21 F.4th at 175.

*9 Second, Starling will likely suffer irreparable harm if AT&T persists in seeking to force her to arbitrate even though she did not agree to arbitration. As the Second Circuit has explained, "[b]eing forced to arbitrate a claim one did not agree to arbitrate constitutes an irreparable harm for which there is no adequate remedy at law." *UBS Sec., LLC v. Voegeli*, 405 F. App'x 550, 552 (2d Cir. 2011) (citing *Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 129 (2d Cir. 2003) (per curiam)). The Eighth Circuit similarly observed that, where courts have found non-arbitrable disputes, they "uniformly hold that the party urging arbitration may be enjoined from pursuing what would now be a futile arbitration, even if the threatened irreparable injury to the other party is only the cost of defending the arbitration and having the court set aside any unfavorable award." *McLaughlin Gormley King Co. v. Terminix International Co., L.P.*, 105 F.3d 1192, 1194 (8th Cir. 1997); *see also, e.g.*, *Vicor Corp. v. FII USA, Inc.*, No. 24-cv-10060-LTS, 2024 WL 532612, at *2 (D. Mass. Jan. 19, 2024) (forcing a party to arbitrate a dispute that it did not agree to arbitrate constitutes irreparable harm); *AT&T Mobility LLC v. Princi*, No. 11-cv-11448-RWZ, 2011 WL 6012945, at *1 (D. Mass. Dec. 2, 2011) (same); *Chicago Sch. Reform Bd. of Trustees v. Diversified Pharm. Servs., Inc.*, 40 F. Supp. 2d 987, 996 (N.D. Ill. 1999) ("Forcing a party to arbitrate a matter that the party never agreed to arbitrate, regardless of the final result through arbitration or judicial review, unalterably deprives the party of its right to select the forum in which it wishes to resolve disputes.").

The Court recognizes that the First Circuit has not expressly adopted this position and has stated, as emphasized by AT&T, that "courts have ordinarily not deemed litigation expense to be substantial and irreparable injury warranting an injunction." *Tejidos de Coamo, Inc. v. Int'l Ladies' Garment Workers' Union*, 22 F.3d 8, 14 (1st Cir. 1994). But *Tejidos* does not stand for the broad proposition that being improperly subjected to arbitration can never constitute irreparable harm. *Tejidos* involved a stay of arbitration—effectively, an injunction—entered under Section 7 of the Norris-LaGuardia Act, 29 U.S.C. § 107. 22 F.3d at 13. That statute originates from "a unique historical experience" that prompted Congress "to curb the use of federal court injunctions in cases 'involving or growing out of a labor dispute.' " *Id.* at 11, 15 (quoting 29 U.S.C. § 107). In light of that history, Section 7 imposes more "stringent requirements" for enjoining arbitrations in connection with labor disputes than does the ordinary four-part framework for considering motions for preliminary injunctive relief. *Id.* at 11. The First Circuit's observations about irreparable harm in *Tejidos* are qualified by the court's recognition that "[u]nder ordinary standards for injunctive relief, irreparable injury is nominally required but courts are often generous where the complainant's claim on the merits is very strong or unanswerable. Under section 7, however, there is no such generosity." *Id.* at 15; *see Vaqueria Tres Monjitas, Inc. v. Irizarry*, 587 F.3d 464, 485 (1st Cir. 2009) ("[T]he measure of irreparable harm is not a rigid one; it has been referred to as a sliding scale, working in conjunction with a moving party's likelihood of success on the merits."). Here, where Starling has a strong likelihood of success on the merits of

her assertion that she is not bound by her sister's arbitration agreement with AT&T, the Court concludes that the time, energy, and expenses associated with defending an invalid arbitration constitute irreparable injury.

The balance of hardships and public interest factors also favor Starling. AT&T will not suffer hardship from being prohibited from forcing Starling to arbitrate because she is neither a party to the arbitration agreement between AT&T and her sister nor otherwise bound by that agreement. The public interest will further be served by preventing AT&T from requiring Starling to arbitrate this dispute. As the First Circuit has observed, "a 'basic precept' underlying the FAA is that 'arbitration is a matter of consent, not coercion.' " *Ouadani v. TF Final Mile LLC*, 876 F.3d 31, 36 (1st Cir. 2017) (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 681 (2010)). The FAA's general policy favoring arbitration would not be served here, where Starling did not enter into an agreement with AT&T to arbitrate her claims. *See Morgan Keegan & Co. v. Louise Silverman Tr.*, No. CIV. JFM-11-2533, 2012 WL 113400, at *6 (D. Md. Jan. 12, 2012), *aff'd sub nom. Morgan Keegan & Co. v. Silverman*, 706 F.3d 562 (4th Cir. 2013) ("[F]orcing parties to arbitrate when they did not agree to arbitrate disincentivizes arbitration and lowers the public's confidence in arbitration as an avenue for dispute resolution."); *Berthel Fisher & Co. Fin. Servs. v. Larmon*, No. CIV. 11-889 ADM/JSM, 2011 WL 3294682, at *8 (D. Minn. Aug. 1, 2011), *aff'd*, 695 F.3d 749 (8th Cir. 2012) ("Public confidence in arbitration would be undermined if a party could be compelled to arbitrate without its consent.").

**\*10** Since all four factors favor preliminary injunctive relief, Starling's motion for a preliminary injunction is granted, and AT&T is enjoined from pursuing arbitration against Starling based on the arbitration agreement between AT&T and Pinn.

**CONCLUSION AND ORDER**

For the foregoing reasons, AT&T's motion to stay is DENIED. Starling's motion for a preliminary injunction is GRANTED. AT&T is hereby ENJOINED from pursuing arbitration against Starling based on the arbitration clause set forth in § 1.3.2.1 of the Consumer Service Agreement between AT&T and Pinn that became effective December 1, 2022, or § 13 of the Terms of Service Agreement between AT&T and Pinn that became effective October 18, 2019. Starling's motion for a temporary restraining order is DENIED as moot. Starling's request that the Court impose sanctions on AT&T is DENIED.

SO ORDERED.

**All Citations**

Slip Copy, 2024 WL 1258501

Footnotes

1    The parties dispute who listed Starling's number as an alternate contact number for Pinn's account. For purposes of the pending motions, that dispute is not material.

2    The Court will evaluate AT&T's motion under Section 3 of the FAA pursuant to the summary judgment standard, assessing whether there exists "a genuine issue of [material] fact about a dispute's arbitrability." *Air-Con*, 21 F.4th at 175. This standard applies to motions to compel arbitration under Section 4 of the FAA. *Id.* Although the First Circuit has not squarely held that the same standard applies to Section 3 motions, the statutory provisions "provid[e] two parallel devices for enforcing an arbitration agreement," and both "call for an expeditious and summary hearing, with only restricted inquiry into factual issues." *Moses H. Cone*, 460 U.S. at 22; *see Protostorm, LLC v. Antonelli, Terry, Stout & Kraus, LLP*, No. 08-cv-931 NGG/JO, 2010 WL 785316, at *4 (E.D.N.Y. Mar. 8, 2010) (applying the summary judgment standard to a Section 3 motion). Although the summary judgment standard requires courts to "construe the record in the light most favorable to the non-moving party and draw all reasonable inferences in its favor," *Air-Con*, 21 F.4th at 175, in this matter, all facts material to resolution of the motion are undisputed.

3    *See e.g.*, *Carson v. Home Depot, Inc.*, No. 1:21-CV-4715-TWT, 2022 WL 2954327, at *5 (N.D. Ga. July 26, 2022); *Ioane v. MRS BPO, LLC*, 484 F. Supp. 3d 888, 894 (D. Haw. 2020); *Pyciak v. Credit One Bank, N.A.*, No. 17-11415, 2018 WL 4787660, at *3 (E.D. Mich. Oct. 4, 2018); *Deosaran v. Ace Cash Express, Inc.*, No. 4:16-CV-00919-O-BP, 2017 WL 1318568, at *3 (N.D. Tex. Mar. 23, 2017), *report and recommendation adopted*, No. 4:16-CV-00919-O-BP, 2017 WL

1296453 (N.D. Tex. Apr. 7, 2017); *Brown v. Comcast Corp.*, No. EDCV1600264ABSPX, 2016 WL 9109112, at *8 (C.D. Cal. Aug. 12, 2016); *Mims v. Glob. Credit & Collection Corp.*, 803 F. Supp. 2d 1349, 1358 (S.D. Fla. 2011).

4   AT&T's assertion that Starling and Pinn have previously filed TCPA actions does not affect the analysis. *See* ECF 87, ¶¶ 4-5. AT&T has not challenged Starling's standing to sue, and the Court does not view Starling's prior efforts to vindicate a federal statutory right as direct evidence of her knowing exploitation of Pinn's Consumer Service Agreement with AT&T.

---

**End of Document**                                                                  © 2025 Thomson Reuters. No claim to original U.S. Government Works.