UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEON WEINGRAD, individually and on behalf of a class of all persons and entities similarly situation<br><br>Plaintiff,<br><br>v.<br><br>QUOTEWIZARD.COM, LLC<br><br>Defendant. | C.A. NO. 1:25-cv-00002-YK<br>Judge: Hon. Jennifer P. Wilson |

**REPLY IN SUPPORT OF DEFENDANT QUOTEWIZARD.COM, LLC'S MOTION TO COMPEL ARBITRATION**

Defendant QuoteWizard.com, LLC ("QuoteWizard") submits this Reply in support of its Motion to Compel Arbitration [ECF 5 & 11]. QuoteWizard moves this Court to compel Plaintiff Leon Weingrad's ("Plaintiff") claims to arbitration and stay this action.

1

**TABLE OF CONTENTS**

I.   ARGUMENT ....................................................................................................1

    A.   PLAINTIFF HAS FAILED TO ADDRESS HIS HISTORY OF USING FICTITIOUS NAMES, AND THEREFORE, ARBITRABILITY SHOULD APPLY ...................................................1

    B.   THE AGREEMENT TO ARBITRATE IS NOT LEGALLY DEFECTIVE AND CLEARLY LISTS QUOTEWIZARD AS THE ENTITY THAT WOULD CONTACT PLAINTIFF............................3

II.   CONCLUSION.............................................................................................10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bekele v. Lyft, Inc.*,
  199 F. Supp. 3d 284 (D. Mass. 2016), aff'd, 918 F.3d 181 (1st Cir. 2019) ......................................................................................................8

*Bradley v. DentalPlans.com*,
  No. CV 20-1094-BAH, 2024 WL 5158791 (D. Md. Dec. 18, 2024)...................6

*Conrad v. Camping World Holdings Inc.*,
  No. 4:24-CV-171-CLM (N.D. Ala. Jan 2025) ......................................................2

*Happy v. Marlette Funding, LLC*,
  No. CV 23-265, 2024 WL 3744234 (W.D. Pa. Aug. 9, 2024).............................9

*HealthplanCRM, LLC v. AvMed, Inc.*,
  458 F.Supp.3d 308 (W.D. Pa. 2020)................................................................8, 9

*Hine v. LendingClub Corp.*,
  No. 2:22-CV-00362-CRE, 2022 WL 16950409 (W.D. Pa. Nov. 15, 2022) ......................................................................................................................8

*Hobbs v. Apollo Interactive, Inc.*,
  No. 4:19-CV-57 (CDL), 2019 WL 6878863 (M.D. Ga. Dec. 17, 2019) ......................................................................................................................2

*Ins. Mktg. Coal. Ltd. v. Fed. Commc'ns Comm'n*,
  127 F.4th 303 (11th Cir. 2025) ........................................................................4, 6

**Other Authorities**

Max, Eddy, *Need to Spoof Your Location? A VPN Can Help*, PC Mag, Oct. 22, 2022 https://www.pcmag.com/how-to/need-to-spoof-your-location-a-vpn-can-help ........................................................................................2

I. **ARGUMENT**

  A. **PLAINTIFF HAS FAILED TO ADDRESS HIS HISTORY OF USING FICTITIOUS NAMES, AND THEREFORE, ARBITRABILITY SHOULD APPLY**

This Court should not consider his declaration in support of his Opposition to QuoteWizard's Motion to Compel Arbitration. Plaintiff alleges that he does not know a Gary Williams, does not know how to spoof an address, and never visited the RateKick website; therefore, he did not consent to the mandatory arbitration agreement on the RateKick website (the "Website"). However, Plaintiff's prior lack of candor suggests that the "facts" in his declaration are false. Specifically, he failed to address a central issue undermining his credibility: his history of using fictitious names in this action. When QuoteWizard contacted Plaintiff, he stated that he was not Gary Williams and that his name was Joseph Arnold. Then he told QuoteWizard he was Leon Weingrad, and when QuoteWizard asked Plaintiff to clarify his identity later in the call, he again claimed to be Joseph Arnold. *See* Declaration of Brock Thompson ("Thompson Decl.") ¶19. Plaintiff's history of lying and his use of fictitious names should wholly discredit his declaration. Rather than addressing why Plaintiff lied to QuoteWizard about his identity, Plaintiff claims that he sometimes received calls looking for an individual named Joseph Arnold. *See* Declaration of Leon Weingrad. ("Weingrad Decl.") ¶¶28-30. Similarly, while Plaintiff may claim that he does not know how to spoof his location and that he has never been to

1

Pakistan, anyone can spoof their location using a simple virtual proxy network ("VPN").[1]

Plaintiff attempts to rely on two unpublished decisions outside of the Third Circuit to conclude that QuoteWizard's Motion to Compel should be denied. Specifically, Plaintiff cites to *Hobbs v. Apollo Interactive, Inc.*, No. 4:19-CV-57 (CDL), 2019 WL 6878863 (M.D. Ga. Dec. 17, 2019) and *Conrad v. Camping World Holdings Inc.*, No. 4:24-CV-171-CLM, at *2 (N.D. Ala. Jan 2025). In *Hobbs*, the defendant did not present any evidence which suggested that the plaintiff had a history of presenting false information to the defendant, the plaintiff presented evidence that he did not own a device that used the Windows 7 operating system that was identified as having filled out the information on the defendant's website, and had provided evidence that at the time his personal information was entered into defendant's website he was driving and could not have entered his information. Here, Plaintiff has not presented any such evidence. Rather, QuoteWizard has presented proof that Plaintiff provided false information in the past, namely that he has a history of using fictitious names when dealing with QuoteWizard; therefore, this case is distinguishable from *Hobbs*. Secondly, Plaintiff's reliance on *Conrad* is distinguishable, as the defendant's arguments focused primarily on whether or not

---

[1] Max Eddy, *Need to Spoof Your Location? A VPN Can Help*, PC Mag, Oct. 22, 2022 https://www.pcmag.com/how-to/need-to-spoof-your-location-a-vpn-can-help.

the plaintiff actually controlled the number at issue during the relevant time period in the TCPA action. Here, neither party currently disputes that Plaintiff controls the phone number that QuoteWizard contacted; rather, the parties dispute whether or not Plaintiff has sufficiently demonstrated that he did not provide consent to QuoteWizard to contact him in light of his history of giving false identifying information to QuoteWizard.

      **B.    THE AGREEMENT TO ARBITRATE IS NOT LEGALLY DEFECTIVE AND CLEARLY LISTS QUOTEWIZARD AS THE ENTITY THAT WOULD CONTACT PLAINTIFF.**

Plaintiff claims that the consent form was deficient because it did not name a specific seller and seems to implicitly claim that the call was not logically connected to the consent received. As an initial matter, Plaintiff relies on unpublished case law from outside this jurisdiction and ignores appellate case law finding that the additional consent requirements imposed under 47 C.F.R. 64.1200(f)(9) exceeds the FCC's rule-making authority in an attempt to confuse the Court about the actual consent requirements imposed by the TCPA by relying on misguided district court decisions. Plaintiff improperly claims that "TCPA consent must name the company (like QuoteWizard) whose product is being sold, in addition to being logically and topically related to the product being sold." *See* Plaintiff's Opposition, at 15 [ECF 16]. However, the Eleventh Circuit, the only appellate court to rule on this issue, has emphatically rejected this requirement as beyond the FCC's rule-making

3

authority, holding that the "one-to-one consent" restriction conflicted with the ordinary meaning of prior express consent in the TCPA, and rejecting the "logically-and-topically-related" restriction holding that it conflicted with the ordinary meaning of prior express consent in the TCPA. *Ins. Mktg. Coal. Ltd. v. Fed. Commc'ns Comm'n,* 127 F.4th 303, 314-317 (11th Cir. 2025). The Eleventh Circuit found that to obtain "prior express consent to receive a robocall, one need only 'clearly and unmistakably' state, before receiving the robocall, that he is willing to receive the robocall."

*Ins. Mktg. Coal. Ltd. v. Fed. Commc'ns Comm'n*, 127 F.4th 303, 314 (11th Cir. 2025). In *Ins. Mktg. Coal*, the petitioner, similar to QuoteWizard, was a lead generation company that allowed users to consent to be contacted by the its affiliates for the purposes of obtaining quotes. The Eleventh Circuit vacated the district court's decision, finding that the petitioner was not required to obtain one-to-one consent for the purposes of satisfying the TCPA's express consent requirement and finding that there was no requirement for calls be logically and topically associated with the interaction that prompted the consent. *Id.* at 313. Since QuoteWizard received prior express consent from Plaintiff via the RateKick website prior to calling Plaintiff, QuoteWizard has satisfied its obligations to obtain express consent under the TCPA.

Secondly, even if Plaintiff's interpretation of the requirements of 47 C.F.R. 64.1200(f)(9) were correct (which it is not), QuoteWizard has satisfied the

4

obligations of listing a specific seller and having the call logically and topically associated with the interaction that prompted the consent. Even assuming, *arguendo*, that the text in the consent form is illegible (which it is not), QuoteWizard's Terms of Use reference QuoteWizard 85 times, including the following explicit consent provision:

> By submitting any Qualification Form containing your electronic signature through any of the Websites, and separately for each such request you submit, you are indicating that you desire to be contacted by Providers, and you are providing express written consent that QuoteWizard, a third party on QuoteWizard's behalf, and the Providers with whom you are matched, may deliver calls or text messages to you, including for marketing purposes, using an automatic telephone dialing system or an artificial or prerecorded voice to the phone number you have provided, even if it is a cellular phone number or other service for which the called person(s) could be charged for such call. You understand that you are providing this consent to receive such telephone calls even if your telephone number is currently listed on any federal, state, local, internal, or corporate Do-Not-Call ("DNC") Lists. You understand that you are not required to consent to receive these communications as a condition of using QuoteWizard's services.

Declaration of Brock Thompson ("Thompson Decl.") ¶11, Exhibit C RateKick's Terms of Use. The Terms of Use, which are hyperlinked and located on the "Get My Auto Quotes" submission page, names the specific seller, QuoteWizard. Moreover, to submit his number to QuoteWizard, Plaintiff was required to answer a series of questions and was required to click "Get my Auto Quotes" to finish his request to be contacted. *See* Thompson Decl., Ex. B. QuoteWizard then contacted Plaintiff concerning potential auto insurance quotes. *See* Plaintiff's Complaint, ¶¶37-48. Since the consent language specifically referenced QuoteWizard as the seller on both the RateKick website submission page and in hyperlinked Terms of Use contained on the website submission page, and since the Plaintiff's interaction

5

with the Website was specifically related to receiving auto insurance quotes, QuoteWizard was specifically included in the consent language and the calls/texts to Plaintiff were logically and topically related to Plaintiff's interaction with the Website.

Further, to the extent that Plaintiff relies upon *Bradley v. DentalPlan.com* to claim that QuoteWizard violated the TCPA by failing to comply with the E-Sign Act, such reliance is premature as the district court certified an interlocutory appeal addressing whether the E-SIGN Act's disclosure requirements apply to the TCPA. *See Bradley v. DentalPlans.com*, No. CV 20-1094-BAH, 2024 WL 5158791, at *7 (D. Md. Dec. 18, 2024) (staying the case and granting defendant's motion to certify the issue of whether the E-SIGN Act's disclosure requirements apply to the TCPA). Further, Plaintiff's reliance on 47 C.F.R. 64.1200(f)(9) to impose additional requirements for express consent is improper as the Eleventh Circuit has found the regulation was unlawful, stating that "the TCPA requires only "prior express consent"—not "prior express consent" *plus*." *Ins. Mktg. Coal. Ltd. v. Fed. Commc'ns Comm'n,* 127 F.4th 303, 312 (11th Cir. 2025). Therefore, Plaintiff's claims that QuoteWizard was required to provide additional disclosures under the E-SIGN Act is inappropriate.

Finally, Plaintiff's claim that he was not given sufficient notice of the arbitration agreement is dishonest. Again, the consent language under the "Get My

Auto Quotes" button on the Website used to submit user's information to QuoteWizard explicitly states that by clicking the "Get My Auto Quotes" button, the user has "Acknowledg[ed] that [they] have read, understand, and agree to this website's Privacy Policy and Terms of Use…" *See* Thompson Decl. ¶¶7, 9-10, Ex. B.  It bears repeating that the Terms of Use is set apart from the rest of the text of the consent language in blue hyperlinked text.  Within the Terms of Use, the arbitration provision is written conspicuously, with the entirety of the provision in capitalized letters.  Specifically, the arbitration provision appears as follows:

> **Dispute Resolution, Governing Law, Waivers and Limitations**
>
> YOU AGREE THAT ANY DISPUTE BETWEEN YOU AND US, INCLUDING WITHOUT LIMITATION DISPUTES RELATING TO THE WEBSITES, CONTENT OR SERVICES ("DISPUTE"), SHALL BE FINALLY AND EXCLUSIVELY RESOLVED BY BINDING INDIVIDUAL ARBITRATION ADMINISTERED BY THE AMERICAN ARBITRATION ASSOCIATION ("AAA") IN ACCORDANCE WITH ITS CONSUMER ARBITRATION RULES. DISPUTES WILL BE ARBITRATED AT A HEARING CONDUCTED IN CHARLOTTE, NORTH CAROLINA; THE ARBITRATOR(S) SHALL HAVE NO AUTHORITY TO DEVIATE FROM THE LAW, AND THE ARBITRATOR(S) SHALL MAKE ALL REASONABLE EFFORTS TO EXPEDITE THE ARBITRATION PROCEEDINGS AND TO LIMIT DISCOVERY. **THIS MEANS THAT YOU WILL NOT BE ABLE TO LITIGATE ANY SUCH DISPUTE IN COURT, AND THAT YOU AGREE TO WAIVE YOUR RIGHT TO A JURY TRIAL.** YOU AGREE THAT ANY DISPUTE WILL BE GOVERNED BY THE LAWS OF THE STATE OF NORTH CAROLINA WITHOUT REGARD TO ANY CONFLICTS OF LAWS PROVISIONS. IF ANY MATTER PROCEEDS IN COURT, INCLUDING POST-ARBITRATION CONFIRMATION PROCEEDINGS, YOU AGREE TO THE EXCLUSIVE PERSONAL JURISDICTION BY, AND VENUE IN, THE STATE AND FEDERAL COURTS LOCATED IN MECKLENBURG COUNTY, NORTH CAROLINA, AND YOU WAIVE ANY OBJECTION TO SUCH JURISDICTION OR VENUE.

Thompson Decl. Ex. C.  The arbitration provision states in no uncertain terms, in capitalized bold font, "**THIS MEANS THAT YOU WILL NOT BE ABLE TO LITIGATE ANY SUCH DISPUTE IN COURT, AND THAT YOU AGREE TO WAIVE YOUR RIGHT TO A JURY TRIAL**." Since the Website required users

7

to acknowledge that they had read, understood, and agreed to the Terms of Use before submitting their information to QuoteWizard, and since the Terms of Use's arbitration provision is conspicuous, Plaintiff cannot claim that he did not have notice of the binding arbitration provision. *Hine v. LendingClub Corp.,* No. 2:22-CV-00362-CRE, 2022 WL 16950409, at *4 (W.D. Pa. Nov. 15, 2022) ("While the enforceability of web-based agreements will often depend on a 'fact-intensive inquiry,' the Court may determine that a web-based agreement to arbitrate exists where notice of the agreement was reasonably conspicuous and manifestation of assent unambiguous as a matter of law."); *see also Bekele v. Lyft, Inc.*, 199 F. Supp. 3d 284, 296–97 (D. Mass. 2016), aff'd, 918 F.3d 181 (1st Cir. 2019) (an arbitration agreement was prominently communicated where it displayed on a user's screen and, on the second page of the terms of service, the arbitration provision was set off by a large bold heading). Therefore, Plaintiff was provided reasonable notice of the Terms of Use, which required the arbitration of any claims against QuoteWizard.

Moreover, it bears repeating that QuoteWizard's arbitration provision is similar to the arbitration provision in *HealthplanCRM, LLC*. In *HealthPlanCRM, LLC,* the court found an arbitration agreement contained in a browsewrap agreement was enforceable and provided conspicuous notice of the terms of the agreement where the link was under the website's login boxes and the blue hyperlink to access the full "End-User Agreement" stood out against the white background of the log-in

8

page, and appeared in a sentence which straightforwardly advised the user that "[u]se of [the website] constitutes acceptance" of the linked agreement.  *See HealthplanCRM, LLC v. AvMed, Inc.*, 458 F.Supp.3d 308, 333 (W.D. Pa. 2020).

Again, the Website's Terms of Use contains the arbitration agreement and is reasonably conspicuous.  Like the website layout in *Healthplan CRM, LLC*, the Terms of Use were in blue font against a bright white background immediately below the "Get My Auto Quotes" button.  The non-hyperlinked text uses black font making it clear that the Terms of Use were hyperlinked.  *See* Thompson Decl. ¶ 10; Decl. Exhibit B.  Plaintiff affirmatively indicated that he had read, understood, and agreed to the Website's Terms of Use by clicking "Get My Auto Quotes." *Id.*  The Terms of Use containing the arbitration agreement was not "hidden" or "buried" on another screen: the disclosure language below the "Get My Auto Quotes" button conspicuously apprised Plaintiff by clicking "Get My Auto Quotes" he "acklowledge[d] that [he] ][had] read, underst[ood], and agree[d] to this Website's Privacy Policy and Terms of Use." *See* Dec, ¶ 9.  Whether Plaintiff (or Plaintiff's counsel) actually read the Terms of Use is irrelevant in determining whether or not they are binding.  "An internet user need not actually read the terms and conditions or click on a hyperlink that makes them available as long as she has notice of their existence…whether the user actually reads the terms to which she assents is immaterial." *See Happy v. Marlette Funding, LLC,* No.  CV 23-265, 2024 WL

9

3744234, at *6 (W.D. Pa. Aug. 9, 2024)(quotations omitted). By clicking the "Get My Auto Quotes" button, Plaintiff agreed to the Terms of Use—and the agreement to arbitrate contained therein.

## II. CONCLUSION

For the foregoing reasons, QuoteWizard respectfully requests this Court compel Plaintiff's claims to arbitration.

Respectfully submitted,

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

*/s/ Elyse Cohen*
Elyse Cohen (PA Bar Id. No. 320787)
Elyse.Cohen@nelsonmullins.com
Kevin Polansky (*Pro Hac Vice* forthcoming)
kevin.polansky@nelsonmullins.com
1000 Westlakes Drive, Suite 275
Berwyn, PA 19312
(610) 943-5354

*Counsel for Defendant*
*QuoteWizard.com LLC*

Dated: March 18, 2025

## CERTIFICATE OF CONCURRENCE

This Motion was made following the conference of counsel pursuant to L.R. 7-1, on February 3, 2025, via email where <u>concurrence</u> was denied by Plaintiff's counsel.

Dated: March 18, 2025                                        */s/ Elyse Cohen*
                                                                                    Elyse Cohen

## CERTIFICATE OF WORD COUNT COMPLIANCE

This Motion complies with Local Rule 7.8(b), it contains 2,479 words.

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this date.

Dated:       March 18, 2025                                 */s/ Elyse Cohen*
                                                                                    Elyse Cohen