IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEON WEINGRAD, individually and on behalf of a class of all persons and entities similarly situated, | Civil No. 1:25-CV-00002 |
| Plaintiff, | |
| v. | |
| QUOTEWIZARD.COM, LLC, | |
| Defendant. | Judge Jennifer P. Wilson |

## ORDER

Before the court is the motion to compel arbitration filed by Defendant QuoteWizard.com LLC ("Defendant"). (Doc. 5.) Defendant argues that Plaintiff Leon Weingrad ("Plaintiff") agreed to arbitrate his claims by virtue of requesting insurance quotes from Defendant. (Doc. 11.) Plaintiff argues that there is no proof that he actually agreed to the arbitration agreement, and he, in fact, did not request insurance quotes, considering the name submitted with the request is different than his, and it was from an IP address in Islamabad, Pakistan, where he has never been. For the reasons that follow, the court will deny the motion without prejudice.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

In the complaint filed on January 1, 2025, Plaintiff Leon Weingrad alleges that he received calls from Defendant Quotewizard.com LLC even though Plaintiff's phone number is on the national Do Not Call Registry, in violation of the Telephone Consumer Protection Act ("TCPA"). (Doc. 1, ¶ 5.) Plaintiff alleges

1

that these were "highly-illegal prerecorded messages" that were "transmitted using technology capable of generating thousands of similar calls per day[.]" (*Id.* ¶¶ 5, 6.) Plaintiff proposes a class of other individuals nationwide who received similar calls. (*Id.* ¶ 6.)

More specifically to himself, Plaintiff alleges that he received text messages as well as an automated call from Defendant addressed to "Gary" as well as an automated call referencing an auto insurance request. (*Id.* ¶¶ 37, 38, 40–42.) During one automated call, Plaintiff attempted to engage with the call in order to opt out of the texts and calls. (*Id.* ¶ 43.) Plaintiff eventually spoke with a human being who inquired if he had requested a car insurance quote and if he was "Gary." Plaintiff confirmed he was not "Gary," and the human could not explain why he was getting a call for "Gary," but encouraged Plaintiff to purchase insurance anyway. (*Id.* ¶¶45–48.) Plaintiff tried to obtain more information about why he was receiving these calls he had not initiated, and the human being on the other end of the call stated "[i]t happens a lot. More than people realize." (*Id.* ¶ 49.) Plaintiff alleges these calls were unwanted and not consensual. (*Id.* ¶¶ 52, 53.) Plaintiff alleges one count of violation of the TCPA due to use of robocalls and one count of violation of the TCPA for calling individuals on the National Do Not Call Registry. (*Id.* ¶¶ 76–85.)

On February 4, 2025, Defendant filed a motion to compel arbitration, a motion to stay discovery pending resolution of the motion to compel arbitration, a motion to bifurcate discovery due to the proposed class action nature of the complaint, and an answer.  (Docs. 5, 6, 7, 8.)  On February 6, 2025, the court denied without prejudice both the motion to stay discovery and motion to bifurcate discovery pending resolution of the motion to compel arbitration.  (Doc. 10.)  Defendant filed a brief in support of its motion to compel arbitration on February 7, 2025.  (Doc. 11.)

In its brief in support of its motion, Defendant argues that Plaintiff agreed to receive phone calls from Quotewizard.com, despite being on the National Do Not Call Registry, because he requested an insurance quote from Defendant's website.  (Doc. 11, p. 6.)[1]  Defendant further argues that requesting an insurance quote from the website also included acceptance of terms of use which included an agreement to arbitrate any dispute between Plaintiff and Defendant.  (*Id.* at 7.)  Defendant argues that Plaintiff submitted a request for an insurance quote on December 13, 2024, using a fictitious name.  (*Id.* at 10.)  Defendant also states that when Plaintiff engaged with the robocall and eventually spoke to a human, he first identified himself as Joseph Arnold, then identified himself as Leon Weingrad, and ultimately stated his true name was Joseph Arnold.  (*Id.*)  Defendant argues that

---

[1] For ease of reference, the court uses the page numbers contained in the CM/ECF header.

Plaintiff is a professional plaintiff who requested an auto insurance quote using a fake name and having spoofed his IP address. (*Id.* at 24, 25.)

Plaintiff filed a brief in opposition on March 5, 2025. (Doc. 16.) Defendants filed a reply brief on March 18, 2025. (Doc. 17.) Accordingly, the motion to compel arbitration is ripe and reading for disposition.

## DISCUSSION

The Federal Arbitration Act ("FAA") provides the "body of federal substantive law establishing . . . the duty to honor agreements to arbitrate disputes." *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 522 (3d Cir. 2009). Section 2 of the FAA states that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy . . . arising out of such contract [or] transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 3 requires courts, upon motion, to stay litigation "upon being satisfied that" the issues involved are "referable to arbitration" under a written arbitration agreement. *Id.* § 3. The stay shall remain in effect until the arbitration, in accordance with the arbitration agreement, concludes. See *id.* Furthermore, under Section 4, "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written [arbitration] agreement . . . may petition any United

4

States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." *Id*. § 4.

Generally, "in deciding whether a party may be compelled to arbitrate under the FAA, [courts must] consider '(1) whether there is a valid agreement to arbitrate between the parties and, if so, (2) whether the merits-based dispute in question falls within the scope of that valid agreement.'" *Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 220 (3d Cir. 2014) (quoting *Century Indem.*, 584 F.3d at 527). The legal standard that applies to motions to compel arbitration depends on the circumstances. *HealthplanCRM, LLC v. AvMed, Inc.*, 458 F. Supp. 3d 308, 316 (W.D. Pa. 2011).

District courts review motions to compel arbitration under the rubric of either Rule 12(b)(6) or Rule 56 of the Federal Rules of Civil Procedure. In *Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764 (3d Cir. 2013), the Third Circuit explained that "when it is apparent, based on 'the face of the complaint, and documents relied upon in the complaint,' that certain of a party's claims 'are subject to an enforceable arbitration clause,' a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay." *Id*. at 776 (quoting *Somerset Consulting, LLC v. United Cap. Lenders, LLC*, 832 F. Supp. 2d 474, 482 (E.D. Pa. 2011)). Conversely, "if the complaint and its supporting documents are unclear regarding the agreement to

5

arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then 'the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question [under the Rule 56 standard].'" *Id.* (emphasis added) (first alteration in original). Thereafter, if summary judgment is not warranted, the court may proceed summarily to a trial. *Id.* (quoting 9 U.S.C. § 4).

    As noted above, Defendants argue that Plaintiff, under an assumed name and using a spoofed IP address, requested insurance quotes from Defendant's website, thus, agreeing to terms of use which included a mandatory arbitration provision. (Doc. 11, pp. 13–15.) In support of its assertions that Plaintiff, in fact, requested an insurance quote, Defendants submit the declaration of Brock Thompson, Vice President of Sales of Defendant's parent company. (Doc. 11-1.) Thompson avers that a person with the name Gary Williams, using a phone number with area code (503) requested an insurance quote from Defendant's website. (*Id.* ¶ 5.) Users of Defendant's website are advised that by clicking a "Get My Quote" button they are agreeing to receive calls and texts at the phone number submitted for marketing purposes, as well as agreeing to the website's privacy policy and terms of use. (*Id* ¶¶ 6–11.) The words "privacy policy" and "terms of use" were in a different font,

and hyperlinked to the website's full terms of use. (*Id.* ¶¶ 10, 11.) The full terms of use contain a mandatory arbitration provision. (*Id.* ¶ 12.)

Defendant uses a third-party website to record and store activity on its website. The website recorded a user submitting a specific telephone number with area code (503), using a Window's 10 operating system, and an IP address of Islamabad, Pakistan. (*Id.* ¶¶ 15, 16; pp. 6, 7.) On December 13, 2024, in response to this request for a quote, Defendant called Plaintiff at the number provided on the website, and during this call, Plaintiff initially identified himself as Joseph Arnold, then as Leon Weingrad, and finally stated his true name was Joseph Arnold. (*Id.* ¶ 19.)

With the above factual background, Defendant argues that Plaintiff entered into a valid and enforceable arbitration agreement by virtue of clicking "Get My Quotes" and agreeing to the terms of use. (Doc. 11, pp. 13–22.) Defendants argue that the arbitration provision in the terms of use delegates questions of arbitrability to the arbitrator, and thus, this case should be dismissed. (*Id.* at 14, 15.) Next, Defendants argue that, under Pennsylvania law, the arbitration clause is valid despite Plaintiff allegedly using a fictitious name because a party using a fictitious name does not void the contract. (*Id.* at 18, 19.) Defendant also argues that Plaintiff's TCPA claims are within the scope of the arbitration agreement. (*Id.* at 21, 22.) Defendants argue that the arbitration agreement contained a class action

waiver, and thus, Plaintiff's claims should proceed only on an individual basis. (*Id.* at 22, 23.) Finally, Defendant argues that Plaintiff's claims must be dismissed because he is a professional plaintiff who manufactured his own harm, as evidenced by eleven other TCPA actions filed by Plaintiff. (*Id.* at 24, 25.)

Plaintiff responds that the evidence submitted by Defendant does not prove that he visited the website, and he submits his own affidavit averring that: 1) he did not visit the website or submit his phone number; 2) he has never been to Pakistan and does not know anyone there; and 3) he does not know anyone named Gary Williams. (Doc. 16, p. 5.) Thus, according to Plaintiff, he never agreed to the arbitration agreement. (*Id.*) Plaintiff argues that Defendant cannot enforce the arbitration clause against Plaintiff because Defendant's own evidence does not connect him to requesting a quote and his own affidavit refutes Defendant's claims. (*Id.* at 8, 9.) Plaintiff cites two cases in which courts denied a motion to compel arbitration based on Plaintiff presenting evidence that refuted Defendant's claims as to whether Plaintiff agreed to the arbitration provision. (*Id.* at 10–12)(citing *Hobbs v. Apollo Interactive, Inc.*, No. 4:19-CV-57, 2019 WL 6878863 (M.D. Ga. Dec. 17, 2019) and *Conrad v. Camping World Holdings, Inc.*, No. 4:24-CV-171, 2025 WL 66689 (N.D. Ala. Jan. 9, 2025)).

Plaintiff also argues that the court need not decide the issue of arbitrability because the provision at issue here is "unenforceable both as a matter of federal

law under the TCPA and under the Federal E-SIGN Act." (*Id.* at 14.) First, Plaintiff argues that the website at issue here does not contain language sufficient for giving "prior express written consent," as is necessary for the TCPA, because it does not name QuoteWizard on the website. (*Id.* at 15.) Second, Plaintiff argues the website is deficient under the E-SIGN Act because "the legal disclosures required by the Act were not included in the websites or purported 'Terms of Use' containing the purported arbitration agreement that Defendant identified." (*Id.* at 18.) Plaintiff further relies on other cases in which other courts held that this same Defendant failed to comply with the E-SIGN act. (*Id.* at 18–21.) Finally, Plaintiff argues that the court should not dismiss this case based on him being a professional plaintiff and inflicting his own injury because that is an argument akin to a Rule 12(b)(6) motion, which would be procedurally improper considering Defendant has already answered the complaint. (*Id.* at 21–23.)

In reply, Defendant notes that "Plaintiff's prior lack of candor [i.e lying about his name, as alleged in Defendant's declaration] suggests that the 'facts' in his declaration are false." (Doc. 17, p. 4.) Defendant also distinguishes the cases holding that a motion to compel arbitration can be denied when a plaintiff brings forth evidence that he did not agree to the arbitration agreement. (*Id.* at 5.) Ultimately, Defendant concludes that "neither party currently disputes that Plaintiff controls the phone number that QuoteWizard contacted; rather, the parties dispute

9

whether or not Plaintiff has sufficiently demonstrated that he did not provide consent to QuoteWizard to contact him in light of his history of giving false identifying information to QuoteWizard." (*Id.* at 6.)  Defendant also argues that the additional consent requirements Plaintiff relies on have been ruled outside of the FCC'S rule-making authority by the Eleventh Circuit, and even if the additional requirements are enforceable, Defendant has complied with them.  (*Id.* at 6–9.)  Defendant also argues that the arbitration clause was conspicuous and provided reasonable notice. (*Id.* at 10, 11.)

    It is not clear from the face of the complaint that this action is covered by an enforceable arbitration clause.  The complaint makes no reference to any contract, nor does it mention the process outlined by Defendant as to how Plaintiff allegedly provided a telephone number to be contacted.  Further, Plaintiff has provided evidence that he did not actually agree to the arbitration provision that Defendant is seeking to enforce in the form of his affidavit.  His assertions are more than just naked assertions that he did not agree, but rather, are supported by evidence sufficient to create a genuine issue of material fact as to the existence of an agreement.  *See Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.*, 636 F.2d 51, 55 (3d Cir. 1980) and *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 161 (3d Cir. 2009).

Further factual development will assist the court or a jury in eventually resolving the issue of whether the parties agreed to arbitrate. At this juncture, the record consists of competing affidavits. Further discovery will flesh out the record and enable an eventual fact finder to reach a decision as to whether the parties here agreed to arbitrate their claims. The other arguments raised by Plaintiff, namely the sufficiency of notice of the arbitration agreement under the TCPA or E-SIGN Act, address the enforceability of the arbitration agreement. Before deciding whether the arbitration agreement is enforceable, the court must first determine whether these parties agreed to anything at all. Thus, further discovery on the issue of whether the parties agreed to arbitrate these claims is necessary.

Accordingly, under *Guidotti*, the court will deny the motion to compel arbitration without prejudice so that the parties may engage in discovery involving all factual issues that have been or could be raised regarding whether there is an agreement to arbitrate between the parties and whether it is otherwise enforceable. 716 F.3d at 776. In providing this opportunity for discovery, the court is not permitting the parties to engage in discovery on the merits of Plaintiff's TCPA claim, but rather, solely on the issue of arbitrability. After discovery is complete, Defendants may make a renewed motion to compel arbitration which will be decided under a Federal Rule of Civil Procedure Rule 56 standard. *Guidotti*, 716 F.3d at 776.

Accordingly, **IT IS ORDERED** as follows:

1. Defendant's motion to compel arbitration is **DENIED WITHOUT PREJUDICE.** (Doc. 5.)

2. The parties shall engage in further discovery regarding the issue of arbitrability in accordance with this order.

3. Defendants may file a renewed motion to compel arbitration by **September 29, 2024.**

                                              s/Jennifer P. Wilson
                                              JENNIFER P. WILSON
                                              United States District Judge
                                              Middle District of Pennsylvania

Dated: July 1, 2025